The Honorable James L. Robart

1
2
3
4
5
6

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8
9
10

MICROSOFT CORPORATION,

11

v.

UNITED STATES DEPARTMENT OF
JUSTICE, and LORETTA LYNCH, in her official
capacity as Attorney General of the United States.

12
13
14
15
16

NO. 16-cv-00538JLR

**Note on Motions Calendar:  Sept. 23, 2016**

**Oral Argument Requested**

17

# MOTION TO DISMISS PURSUANT TO

18

# FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

19
20
21
22
23
24
25
26
27
28

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20002
202-353-0533

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

STATUTORY BACKGROUND ...................................................................................... 3

ARGUMENT ................................................................................................................... 5

I.   Microsoft's Claims Should Be Dismissed for Lack of Jurisdiction ....................... 5

    A.   Article III Requires That Constitutional Claims Be Resolved
        In The Concrete Context Of An Actual Case or Controversy,
        Not In The Abstract ............................................................................... 5

    B.   Microsoft Lacks Standing to Challenge Section 2705 Because It Has Not
        Identified A Concrete And Particularized Injury Sufficient For
        Article III Jurisdiction ........................................................................... 6

    C.   Microsoft Lacks Standing to Challenge Section 2705(b) Because A
        Favorable Judgment Would Not Redress Its Alleged Injury .................... 8

    D.   Microsoft Lacks Standing to Bring Its Fourth Amendment Claims ........ 9

        1.   Microsoft's Users Have No Fourth Amendment Rights in Most Information
            Obtained Pursuant to Section 2703 ........................................... 9

        2.   Microsoft Lacks Standing To Bring Its Fourth Amendment

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 1

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20002
202-353-0533

Claims Even For Any Information Obtained Via Section 2703
To Which The Fourth Amendment Applies ....................................................10

II.     Microsoft's Complaint Should Be Dismissed on Prudential Grounds ..............................12

        A.     Comity Considerations Should Bar Microsoft's Section
               2705(b) Claims.....................................................................................12

        B.     There is No Prudential Standing for Microsoft's Fourth
               Amendment Claims ..............................................................................13

III.    Microsoft's Complaint Fails to State a First Amendment Claim for Relief.......................14

        A.     Microsoft's Overbreadth Challenge to § 2705(b) Fails to
               State a Claim ........................................................................................14

        B.     Microsoft Does Not Have An Absolute Right To Make The
               Disclosure At Issue...............................................................................15

        C.     Even If Nondisclosure Requirements In This Context Implicate
               The First Amendment, The Procedures In Place Are
               Constitutionally Sufficient ..................................................................16

        D.     The First Amendment Permits Nondisclosure Orders of
               Indefinite Duration...............................................................................18

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 2

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20002
202-353-0533

E.    The First Amendment Permits Nondisclosure Orders of
      Indefinite Duration ................................................................................20

IV.   Microsoft's Complaint Fails to State a Fourth Amendment Claim for Relief ..................21

      A.    There Is No Constitutional Right To Notice of Legal Process
            To Third Parties ................................................................................22

      B.    Even If Microsoft's Users Have a Right to Notice, Those Rights
            Have No Bearing on the Constitutionality of Section 2705(b) ..............................23

      C.    Microsoft Has Not Met the Standards for Successful
            Facial Challenge ................................................................................24

V.    Microsoft's "As Applied" First and Fourth Amendment Challenges
      Are a Nullity ................................................................................24

CONCLUSION ................................................................................24

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20002
202-353-0533

The Honorable James L. Robart

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, | NO. 16-cv-00538JLR |
| v. | **MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)** |
| UNITED STATES DEPARTMENT OF JUSTICE, and LORETTA LYNCH, in her official capacity as Attorney General of the United States. | **Noted on Motions Calendar: Sept. 23, 2016** |
| | **Oral Argument Requested** |

## INTRODUCTION

The public has a compelling public interest in keeping criminal investigations confidential when a judge has found that there is reason to believe that disclosure will endanger the life or physical safety of a person, result in the destruction of evidence, or cause serious jeopardy to a criminal investigation. In the First Amended Complaint ("FAC"), Microsoft challenges the constitutionality of 18 U.S.C. §§ 2703 and 2705(b), statutes that set forth a court-supervised process for ensuring that obtaining electronic information from companies like Microsoft does not result in such adverse consequences.[1] Microsoft's extraordinary request to facially invalidate these provisions does not set forth claims in the concrete context required for Article III jurisdiction, and ignores that these statutes provide for advance review by a neutral and detached magistrate, the cornerstone of constitutional protections in the First and Fourth Amendment context.

---

[1] Microsoft refers to these provisions as the Electronic Communications Privacy Act ("ECPA"). However, both §§ 2703 and 2705 are part of the Stored Communications Act ("SCA"), enacted as Title II of ECPA in 1986. *See* Pub. L. No. 99-508, 199 Stat. 1848 (codified in scattered sections of Title 18 of the United States Code). ECPA created or amended three separate statutes, including the SCA, that determine how the Government may obtain records and information pertaining to customers and subscribers of providers of electronic communications services and remote communications services ("ECSPs").

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 1

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

The provisions challenged by Microsoft go to the heart of the ECPA—comprehensive legislation governing the disclosure of stored records and electronic information by ECSPs that was enacted for the precise purpose of "promoting communications privacy, while protecting legitimate law enforcement needs and promoting technological innovation." *See* Sen. Report 99-541 at 4 (1986). Section 2703 sets out the legal process the Government must use to obtain information from Microsoft regarding the users of its online services, including subpoenas, court orders, and warrants, and authorizes the Government to provide notice of SCA warrants in the same way it does with respect to all other warrants (*i.e.*, as set forth in Federal Rule of Criminal Procedure 41, to Microsoft, at the place to be searched). Microsoft asserts that section 2703 violates the Fourth Amendment because the statute does not also require the Government to provide notice of those warrants to Microsoft's users. Section 2705(b) reinforces section 2703 by authorizing a court to order Microsoft not to share details of legal process "for such period as the court deems appropriate" if the court finds "there is reason to believe that [disclosure] will result in" one of five statutorily enumerated types of harm. Microsoft asserts that this section violates its First Amendment rights and the Fourth Amendment rights of users.

Microsoft lacks standing to raise any of these claims. Individual court orders, not the statute or the Government, impose the nondisclosure obligations challenged by Microsoft in its section 2705(b) claims. Microsoft's challenge effectively asks this Court to adjudicate the lawfulness of thousands of such court orders from across the United States, without regard to the basis for, and terms of, those 2705(b) orders, which necessarily vary from case to case. Microsoft does not allege any concrete injury grounded in the specific facts and circumstances of any individual order, and absent such a concrete injury, there is no "Case" or "Controversy" within the meaning of Article III of the Constitution. Further, these orders do not preclude Microsoft from speaking about the statute or its impact on the company's business operations; rather, they simply limit Microsoft from disclosing the fact of a particular request. Any injury from this narrow limitation arises only from specific orders and would not be redressable because this Court cannot relieve Microsoft from its obligation to comply with orders issued by numerous other courts.

Microsoft's Fourth Amendment claims against sections 2705(b) and 2703 also should be

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 2

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

separately dismissed for lack of jurisdiction. Microsoft does not assert its own Fourth Amendment rights, and Microsoft cannot bring a Fourth Amendment claim on behalf of others. Microsoft also cannot demonstrate that it meets the requirements for establishing third-party standing, nor does it even acknowledge that many section 2705(b) orders relate to requests for information in which there is no legitimate expectation of privacy and thus no possible Fourth Amendment injury.

Even assuming, *arguendo*, that this Court could exercise jurisdiction over Microsoft's claims, the FAC fails to state a claim upon which relief can be granted. Microsoft cannot demonstrate that any individual application of either section is unconstitutional, the standard it would have to meet to succeed in a facial challenge to a statutory provision. And Microsoft's effort to challenge the statutes "as applied" fares no better because the notice aspect of section 2703 challenged here does not apply to Microsoft, and Microsoft has not demonstrated that any application – let alone all applications – of section 2705(b) as applied to it are unconstitutional. Indeed, Microsoft cannot demonstrate any legal right that would be violated by the sections it challenges. Finally, the right that Microsoft claims—to disclose criminal process to its users—is appropriately limited in this context by a court order upon a showing of the compelling public interests set forth in section 2705(b). Finally, the procedural requirements for a court to issue a nondisclosure order satisfy the First Amendment, and the procedures for notice pursuant to section 2703 and Federal Criminal Rule 41 satisfy the Fourth Amendment. For all of these reasons, Microsoft's claims should be dismissed.

## STATUTORY BACKGROUND

Section 2703 defines how the Government obtains records and information pertaining to the users of electronic services from ECSPs, including (1) basic user information, such as subscriber name, billing records, and Internet Protocol ("IP") addresses; (2) other non-content data, such as email addresses of others with whom the user has communicated and log files showing the IP address from which those communications originated; and (3) the contents of electronic communications. *See generally* 18 U.S.C. § 2703 (a)-(c). The Government can obtain basic user information using a grand jury or trial subpoena, an administrative subpoena authorized by Federal or State statute, a court order under section 2703(d), or a search warrant. *See id.* § 2703(c)(2). Additional non-content information may be obtained by a 2703(d) order, or a search warrant

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 3

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

pursuant to Federal Criminal Rule 41 or similar state procedures. *See id.* § 2703(c)(1).[2] The Government is not required to provide notice to the user when it obtains non-content information. *See id.* § 2703(c)(3). Finally, the Government may obtain the contents of email or other stored electronic data by seeking a warrant.[3] *See id.* § 2703(a), (b)(1)(A). If the Government obtains content pursuant to a warrant following the procedures in Rule 41 or a state equivalent, section 2703 does not require notice to the user whose information is obtained. *See id.*

Section 2705(b) complements section 2703 by allowing the Government to seek a court order to prevent Microsoft from disclosing the fact it has received section 2703 process regarding a user in those circumstances where the Government is not already required to provide such notice. *Compare id.* § 2705(a) (authorizing the Government to seek an order delaying § 2703 notice) *with id.* § 2705(b). At the Government's request, a court may issue a nondisclosure order "for such period as the court deems appropriate," *id.* § 2705(b), if it "determines that there is reason to believe that notification of the existence of the [2703 process] will result" in: (1) endangerment of a person's life or physical safety; (2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5) seriously jeopardizing an investigation or unduly delaying a trial. *Id.* As the FAC acknowledges, the Government does not seek 2705(b) orders from Microsoft in every instance, but only in connection with about 54% of the legal process served on Microsoft. *See* FAC ¶ 16 (noting thousands of instances where no 2705(b) order was sought).

Section 2703 process, and related section 2705(b) orders, are employed in a wide array of contexts, often involving pre-indictment investigations that are not yet public. The Government may seek basic subscriber information at an early stage of an investigation, when investigators know nothing more than an IP or email address, and the identity of the individual is unknown, as is frequently the case in investigations involving the sexual exploitation of children. *See, e.g., U.S. v. Orisakwe,* 624 F. App'x. 149 (5th Cir. 2015). The Government may use a court order under section

---

[2] Rule 41(f)(1)C) provides several alternatives for notice (or "receipt") of a warrant, including "to the person from whom, or from whose premises, the property was taken."

[3] While section 2703(b)(1)(B) allows the Government to obtain content without a warrant, Microsoft challenges only "warranted searches," FAC ¶ 8, and the authority to obtain content without a warrant is rarely used in any event. Many ECSPs, including Microsoft, refuse to produce content without a search warrant in reliance on *U.S. v. Warshak,* 631 F.3d 266 (6th Cir. 2010), which held that obtaining the contents of emails from a commercial internet service provider using a section 2703(d) court order violates the Fourth Amendment. *See* Microsoft Transparency Hub, Principles, Policies, and Practices FAQ, *available at* https://www.microsoft.com/about/csr/transparencyhub/pppfaq/

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 4

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

2703(d) to gather further information, such as identifying information about individuals with whom a suspect is communicating, *see, e.g.*, *U.S. v. Lang*, 78 F. Supp. 3d 830, 837 (N.D. Ill. 2015), which is often important in investigations of criminal networks or potential terrorist activity. Where probable cause exists to believe user information includes evidence of a crime, warrants are sought to obtain such evidence, often before the existence of the investigation is public and therefore before law enforcement has been able to secure relevant evidence that could be destroyed. Also, there may be accomplices unknown, or against whom cases are still being built. *Cf. U.S. v. Barber*, --- F. Supp. 3d ---, 15-cr-40043 (D. Kan. Apr. 27, 2016).  In all of these situations, absent the limited secrecy provided for under the law, the ability of law enforcement to accumulate evidence and identify wrongdoers would be seriously undermined by Microsoft's decision to inform the target of process issued in a criminal investigation. *See Times Mirror Co. v. U.S.*, 873 F.2d 1210, 1215-18 (9th Cir. 1989).

## ARGUMENT

## I.  Microsoft's Claims Should Be Dismissed For Lack of Jurisdiction.

### A.  Article III Requires That Constitutional Claims Be Resolved In The Concrete Context Of An Actual Case or Controversy, Not In The Abstract.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "[T]o decide an important question of constitutional law . . . [a court] must find that the question is presented in a 'case' or 'controversy' that is, in James Madison's words, 'of a Judiciary Nature.'" *DaimlerChrysler v. Cuno*, 547 U.S. 332, 342 (2006). This jurisdictional restriction requires that the issues presented to the court must be "definite and concrete, not hypothetical or abstract." *Ry. Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945); *accord Gov't & Civic Emps. Org. Comm., CIO v. Windsor*, 353 U.S. 364 (1957) ("Federal courts will not pass upon constitutional contentions presented in an abstract rather than in a concrete form.").

The Constitution's case-or-controversy requirement is enforced, *inter alia*, by the requirements of Article III standing, which "assures an actual factual setting" in which "a court may decide the case with some confidence." *Valley Forge Christ. Coll. v. Ams. United*, 454 U.S. 464, 472 (1982). The requirement of standing must be applied "especially rigorous[ly] when reaching the merits . . . would force [the Court] to decide whether an action taken by one of the other two branches of the Federal

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 5

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

Government was unconstitutional." *Raines*, 521 U.S. at 819-20. As discussed below, Article III does not permit claims like those asserted here, in part because such claims fail to describe a concrete injury grounded in the facts of a particular controversy and because any "injury" could only arise from an order issued on review by a coordinate court, precluding redressability.[4]

### B. Microsoft Lacks Standing to Challenge § 2705 Because It Has Not Identified A Concrete And Particularized Injury Sufficient For Article III Jurisdiction.

To meet its burden to establish constitutional standing, Microsoft must satisfy three elements. First, it must identify an injury-in-fact: "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Second, Microsoft must show "a causal connection between the injury" and the challenged action. *Id.* "Third, it must be likely, as opposed to merely speculative, that the . . . injury will be redressed by a favorable decision." *Id.* at 561; *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (redressability requires "substantial likelihood" that "relief will remedy the alleged injury").

At the pleading stage, a plaintiff must "clearly . . . allege facts demonstrating" an injury in fact. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Article III's requirement of a concrete, particularized injury is intended to "assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge*, 454 U.S. at 472; *see Lujan* at 560. Microsoft has alleged only generally that courts have ordered Microsoft not to disclose certain section 2703 process, without identifying any particular order that this Court could analyze to determine the existence, nature, and extent of any injury. Article III does not permit Microsoft to abstract a generalized injury and assert it in this way, untethered from the "concrete factual context" in which individual judges entered nondisclosure orders of "appropriate" duration.

Multiple components of the FAC demonstrate the lack of a proper case or controversy here. First, because section 2705(b) authorizes courts to issue nondisclosure orders for legal process that seeks only non-content information, as well as for warrants that seek content information,

---

[4] This "fundamental limit[]" on federal judicial power" also undergirds many of the other Article III jurisdictional doctrines, including "mootness, ripeness, political question, and the like." *Allen v. Wright*, 468 U.S. 737, 750 (1984) (quoting *Vander Jagt v. O'Neill*, 699 F.2d 1166, 1178–79 (D.C. Cir. 1983) (Bork, J., concurring)).

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 6

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

Microsoft's claims fuse together dissimilar types of process seeking dissimilar information from which no common legal principle can be derived under the First and Fourth Amendments. *See* FAC ¶ 5 (alleging service of 3,250 nondisclosure orders, of which only about "650… accompanied search warrants"). As the Sixth Circuit recognized in rejecting one facial challenge to sections 2703 and 2705, the various types of applications that these statutes permit present "a legal question that may be answered differently in different settings . . . depend[ing] [on] . . . complex factual issues." *Warshak v. U.S.*, 532 F.3d 521, 528 (6th Cir. 2008); *see also In re Application . . . Pursuant To 18 U.S.C. § 2705(b)*, 131 F. Supp. 3d 1266, 1270 (D. Utah 2015) ("the balance of constitutional, commercial and governmental interests is different" across the subparts of section 2703).[5]

Second, Section 2705(b) orders are sought in a wide range of investigations and under many different circumstances, and in each instance a court has determined that the requirements of the statute are met and an order of "appropriate" duration is justified. Microsoft readily acknowledges, as it must, the constitutionality of some nondisclosure orders that specify a limited duration. *See* FAC ¶ 6. Thus, it is apparent that the determination of whether such nondisclosure orders are constitutional requires a fact-specific inquiry, as other courts to consider the lawfulness of section 2705(b) orders have recognized. *See, e.g., Matter of Application of U.S.A.*, 45 F. Supp. 3d 1, 6 (D.D.C. 2014) (considering "scope of the criminal investigation" in 2705(b) inquiry); *U.S. v. Scully*, 108 F. Supp. 3d 59, 86 (E.D.N.Y. 2015) (evaluating specific facts relied on for section 2705(b) order).

Further, Microsoft itself posits that this case should be resolved using legal tests that are context and fact-specific. *See, e.g.,* FAC ¶ 24 (Government bears "heavy burden" of showing "justification for the imposition" of section 2705(b) orders); *id.* ¶ 26 (Government may satisfy First Amendment by showing that "compelling reasons outweigh presumption of disclosure"); *id.* ¶ 34 (Constitution requires a "reasonableness inquiry under the Fourth Amendment"). The need for such individualized consideration confirms that "the operation of the statute  . . . will be better grasped when viewed in light of a particular application." *Warshak*, 532 F.3d at 528.

Finally, section 2705(b) provides for nondisclosure orders "for such period as the court deems

---

[5] Ninth Circuit case law amply demonstrates the importance of such distinctions. *Compare, e.g., U.S. v. Golden Valley Elec.*, 689 F.3d 1108 (9th Cir. 2012) (analyzing Fourth Amendment standard for administrative subpoenas) *with U.S. v. Wong*, 334 F.3d 831, 836 (9th Cir. 2003) (analyzing probable cause standard for warrants).

appropriate," not "indefinite" orders, the manner in which Microsoft chooses to characterize a subset of the orders. *See* FAC ¶¶ 5, 9. What Microsoft describes as "indefinite" includes both orders that terminate on a specific, yet indeterminate date, *e.g.*, when an indictment issues, as well as those that could last longer. Whether each of those "indefinite" orders is "appropriate" necessarily requires individualized consideration of the context, and any court policies that might govern sealing and unsealing of warrants. All of these elements demonstrate the "necessity" of deciding the legal issues raised by Microsoft in the context of a "particular case[]," *DaimlerChrysler*, 547 U.S. at 340-41, and thus, the lack of standing to challenge section 2705(b).

   C. **Microsoft Lacks Standing to Challenge Section 2705(b) Because A Favorable Judgment Would Not Redress Its Alleged Injury**.

   Redressability is also absent for Microsoft's challenge to section 2705(b), because no available relief would "remedy [the] alleged injury." *See Lujan*, 504 U.S. at 568. To the extent Microsoft has alleged a cognizable Article III injury at all, that injury is imposed by the individual nondisclosure orders issued in numerous individual cases by this and other courts. A favorable judgment in this case would not release Microsoft from those individual orders, so its alleged injury would not be remedied and redressability is therefore lacking. *See S.D. Myers v. City & Cnty. of S.F.* 253 F.3d 461, 475 (9th Cir. 2001) ("a plaintiff satisfies the redressability requirement [if] a favorable decision will relieve a discrete injury").

   Section 2705(b) does not give rise to any nondisclosure obligations absent a judicial conclusion that the standards in the statute have been met. *See* 18 U.S.C. § 2705(b). In each case where an order is requested, the court must determine that disclosure "will result in… endangering the life or physical safety of an individual[,] flight from prosecution," jeopardizing an investigation, or one of the other enumerated harms. *Id.* Microsoft has neither asked that this Court declare individual nondisclosure orders to be invalid, nor alleged that the nondisclosure orders are invalid in all circumstances. *See* FAC ¶ 6. At most, based on any order that would issue in this case, individual judges *might* revisit their earlier orders, and *might* find that in some particular cases, they had arrived at incorrect conclusions about the "appropriate" duration of a nondisclosure order. But this possibility is insufficient for Article III jurisdiction. *Lujan*, 504 U.S. at 562 (where relief from injury is dependent "on the unfettered choices made by independent actors [who] exercise [] broad and

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 8

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

1   legitimate discretion," there is no redressability); *Whitmore v. Ark.*, 495 U.S. 149, 159 (1990) (no

2   standing where it is "not possible for a litigant to prove in advance" that any particular court order

3   will issue); *Clapper v. Amnesty Int'l*, 133 S. Ct. 1138, 1149-50 (2013) (speculation about effect on future

4   court orders insufficient for standing). Moreover, courts possess inherent authority to order

5   nondisclosure of search warrants and other judicial materials, and even a broad order invalidating

6   2705(b) could not lift individual nondisclosure orders issued by other judges. *See, e.g., Matter of Sealed*

7   *Affidavit(s) to Search Warrants*, 600 F.2d 1256, 1257 (9th Cir. 1979) (citing *Nixon v. Warner Commc'ns.*,

8   435 U.S. 589, 598-99 (1978) ("Every court has supervisory power over its own records . . . the

9   decision as to access is one best left to the sound discretion of the trial court")); *accord U.S. v.*

10  *Jacobson*, 785 F. Supp. 563, 567-68 (E.D. Va. 1992) (analyzing Government's motion for

11  nondisclosure order under Court's "inherent authority"). Therefore, Microsoft's First Amendment

12  claim and its Fourth Amendment challenge to 2705(b) should be dismissed for lack of jurisdiction.

13      **D.    Microsoft Lacks Standing To Bring Its Fourth Amendment Claims.**

14          **1. Microsoft's Users Have No Fourth Amendment Rights in Most Non-Content**
15          **Information Obtained Pursuant to Section 2703.**

16      This Court also lacks jurisdiction over Microsoft's claims that sections 2703 and 2705(b)

17  violate the Fourth Amendment because Microsoft disclaims any reliance on its own Fourth

18  Amendment rights, *see* FAC ¶ 39, and its users have no Fourth Amendment rights in much of the

19  information sought. Microsoft explicitly asserts only whatever Fourth Amendment rights might

20  belong to its users. *See id.* Absent a physical trespass, a Fourth Amendment "search" occurs only

21  when "government officers violate a person's reasonable expectation of privacy." *U.S. v. Jones*, 132 S.

22  Ct. 945, 950 (2012) (quoting *Katz v. U.S.*, 389 U.S. 347, 360 (1967)). But no Fourth Amendment

23  interests of Microsoft users are implicated when the Government seeks from Microsoft most non-

24  content records and information, such as names, IP addresses, or other basic subscriber data.

25  Because a user must disclose such information in order to obtain service, it is well-established that

26  non-content information obtained under section 2703 using a subpoena or 2703(d) order is

27  information in which Microsoft's users do not have a reasonable expectation of privacy. *See U.S. v.*

28  *Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("e-mail and Internet users have no expectation of

privacy in the to/from addresses of [e-mails] or the IP addresses of the websites they visit"); *U.S. v.*

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 9

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

*Graham*, --- F.3d ---, 2016 WL 3068018, *7 (4th Cir. May 31, 2016) (en banc) (same); *U.S. v. Christie*, 624 F.3d 558, 573 (3d Cir. 2010) (collecting cases). Since Microsoft acknowledges that the majority of the orders issued during the relevant period do not relate to search warrants,[6] and, as described in note 3, *supra*, Microsoft will not disclose content without a warrant, the majority of 2705(b) orders Microsoft alleges it has received pertain to information in which its users do not have any Fourth Amendment rights. Without a legally-protected interest, there can be no constitutional injury, *see Lujan*, 504 U.S. at 560, and thus, Microsoft lacks standing to bring a Fourth Amendment challenge based on the absence of notice to its users in those situations.

## 2. Microsoft Lacks Standing To Bring Its Fourth Amendment Claims Even For Any Information Obtained Via § 2703 To Which The Fourth Amendment Applies.

### a. Microsoft Does Not Have Standing to Bring a Claim on Behalf of its Users.

Even where the Government obtains information to which the Fourth Amendment applies, Microsoft cannot establish standing because it asserts only the Fourth Amendment interests of its customers. *See* FAC ¶ 38. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. U.S.*, 394 U.S. 165, 174 (1969); *accord Steagald v. U.S.*, 451 U.S. 204, 219 (1981) ("[R]ights such as those conferred by the Fourth Amendment are personal in nature"). Accordingly, "only the person whose Fourth Amendment rights were violated can sue to vindicate those rights." *Moreland v. Las Vegas P.D.*, 159 F.3d 365, 369 (9th Cir. 1998); *see Rakas v. Illinois*, 439 U.S. 128, 134 (1978) ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person[] . . . has not had any of his Fourth Amendment rights infringed"). In *Rakas*, as in most cases addressing the personal nature of Fourth Amendment rights, a criminal defendant sought to exclude evidence obtained by a search or seizure of a third party's premises. *See* 439 U.S. at 134. While *Rakas* framed the requirement that an individual must assert his or her own Fourth Amendment rights as an issue of substantive Fourth Amendment law, *see id.* at 139-40, Microsoft's inability to bring a claim on behalf of its users is properly viewed as an absence of the personal

---

[6] The FAC alleges that out of over 3250 requests accompanied by nondisclosure orders, only "more than 650," or approximately 20%, were served with search warrants. And although the FAC does not challenge § 2703 as to non-content information obtained without a warrant, the Fourth Amendment challenge to § 2705(b) is not limited to warranted searches. *See* FAC at 18 ¶¶ (b) – (c).

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 10

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

injury required for Article III standing. *See Moreland*, 159 F.3d at 369.  Microsoft cannot establish "a personal stake or interest in the outcome of the controversy" because its Fourth Amendment rights are not at issue. *Rakas*, 439 U.S. at 132 n.2.

### b.  Microsoft Does Not Have Standing to Bring a Claim on Its Users' Behalf.

Microsoft cannot sidestep the absence of a personal injury by invoking the narrow exception for third-party standing. A "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). While the "fundamental restriction" on a court's authority to hear a claim that is based "on the legal rights or interests of third parties" is subject to "certain, limited exceptions," a plaintiff seeking such standing must satisfy "three important criteria," at least two of which are not met here. *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991).

First, Microsoft cannot allege the type of close relationship with its users that would permit it to bring this action, *id.* at 411, precisely because Fourth Amendment rights cannot be vicariously asserted. Microsoft's reliance on *In re Verizon Internet Servs.*, 257 F. Supp. 2d 244, 258 (D.D.C. 2003), *rev'd*, 351 F.3d 1229, 1239 (D.C. Cir. 2003), is unavailing in this context. Finding Verizon had standing to bring a First Amendment claim, the court relied on the Supreme Court's alteration of traditional standing rules to permit facial First Amendment overbreadth challenges by persons whose rights are not violated. *See* 257 F. Supp. 2d at 257-58. No such corollary principle exists for challenges under the Fourth Amendment. *See, e.g., Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (noting "lessening of prudential limitations on standing" in the First Amendment context);[7] *U.S. v. Salerno*, 481 U.S. 739, 745 (1987) ("we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment").[8]  Rather, *Rakas* and other authorities demonstrate that Fourth Amendment rights are inherently personal and thus cannot be asserted by third parties

---

[7] A court's standing inquiry "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth*, 422 U.S. at 498. While a plaintiff's ability to rest its claim for relief on the legal rights or interests of third parties is an element of prudential standing, *see Ray Charles Found'n v. Robinson*, 795 F.3d 1109 n.9 (9th Cir. 2015), as discussed above, an injury in fact is required to demonstrate Article III standing.

[8] The cases cited by the putative intervenors, *see* ECF No. 38 at 3, are no more helpful to Microsoft's standing. *Craig v. Boren*, 429 U.S. 190, 195 (1976), involved "a vendor with standing" itself to bring the challenge, and in *U.S. v. Westinghouse Elec.*, 638 F.2d 570, 574 (3d Cir. 1980), the company asserted not only an employer-employee relationship, but a doctor-patient relationship with regard to employee medical records. These cases do not recognize third-party standing in a commercial relationship similar to that among Microsoft and its users.

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 11

whose own privacy rights and interests are not affected by the actions alleged.

This is especially true with respect to Microsoft's challenge to section 2703, because the notice aspect of that provision does not apply to Microsoft. Rather, section 2703 determines when the Government—not Microsoft—must provide notice to the user. *See* 18 U.S.C. § 2703(b)(1).  Even if Microsoft could assert a Fourth Amendment claim on behalf of its users, which it cannot, it surely could not do so to challenge a provision that does not prescribe or otherwise affect its conduct. *See Kowalski*, 543 U.S. at 130 (noting that the Supreme Court has allowed third-party standing when "enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights") (quoting *Warth*, 422 U.S. at 510).

For similar reasons, Microsoft cannot satisfy the second *Powers* criteria:  that it independently meet the requirements of Article III standing. *See* 499 U.S. at 411; *Kowalski*, 543 U.S. at 129-30. Microsoft has not demonstrated an injury in fact with respect to its claim that section 2705(b) is unconstitutional*, see* Part I.B, *infra*, and while Microsoft claims an amorphous and abstract injury to a "business interest" in "customer trust," its failure to plead a connection between this alleged harm and its economic performance leaves this allegation too ethereal to confer Article III standing. *See MAI Sys. v. UIPS*, 856 F. Supp. 538 (N.D. Cal. 1994) (abstract theory of "economic injury" did not satisfy Article III); *Spokeo*, 136 S. Ct. at 1548 (a "concrete" injury must "actually exist" and be "real").[9] Moreover, any allegation that section 2705(b) affects user behavior requires speculation that a particular user decision was caused by the fact that the user did not receive notice of legal process, as opposed to the fact that the Government obtained the user's information. Such conjectural allegations, premised on the supposed actions of third party users, do not demonstrate the requisite injury, causation, or redressability for Article III standing. *See Lujan*, 504 U.S. at 560-62.

## II.   Microsoft's Complaint Should Be Dismissed on Prudential Grounds.

### A.   Comity Considerations Should Bar Microsoft's Section 2705(b) Claims.

Microsoft's First and Fourth Amendment challenges to section 2705(b) should also be dismissed on comity grounds. It is a settled principle that a challenge to an order of a coordinate court may not be heard by a different court. *See Lapin v. Shulton*, 333 F.2d 169, 172 (9th Cir. 1964)

---

[9] Microsoft does not elaborate on the manner in which this alleged harm to "customer trust" becomes a concrete injury to the company, and it is Microsoft's burden to do so. *Lujan*, 504 U.S. at 561.

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 12

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

1    ("[I]t is clear, as a matter of comity and of the orderly administration of justice, that [a] court should

2    refuse to exercise its jurisdiction to interfere with the operation of a decree of another federal

3    court."); *Treadaway v. Acad. of Motion Picture Arts & Scis.*, 783 F.2d 1418, 1422 (9th Cir. 1986) ("When

4    a court entertains an independent action for relief from the final order of another court, it interferes

5    with and usurps the power of the rendering court just as … if it were reviewing that court's equitable

6    decree."). Because, as discussed above, adjudicating Microsoft's section 2705(b) claims requires

7    second-guessing the orders of other, coordinate courts, comity strongly suggests that dismissal of

8    Microsoft's section 2705(b) claims is appropriate here.[10] *See Delson Group, Inc. v. GSM Ass'n*, 570 F.

9    Appx. 690 (9th Cir. 2014) (upholding dismissal on comity grounds).

10   Comity likewise precludes a declaratory judgment or other equitable relief if it would conflict

11   with the orders of co-equal courts. "[W]hen exercising its equitable powers . . . [a] [c]ourt[] ordinarily

12   should not award injunctive relief that would cause substantial interference with another court's

13   sovereignty." *U.S. v. AMC Entm't*, 549 F.3d 760, 770 (9th Cir. 2008). This is because "a court must

14   be mindful of any effect its decision might have outside its jurisdiction," particularly to the decisions

15   of coordinate courts. *Id.* The same analysis strongly counsels against exercise of the Court's

16   discretionary jurisdiction under the Declaratory Judgment Act to review the effects of section

17   2705(b) orders of other courts. *See Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998)

18   (Declaratory Judgment Act "is deliberately cast in terms of permissive, rather than mandatory,

19   authority"); *FDIC v. Aaronian*, 93 F.3d 636, 639 (9th Cir. 1996) (constitutional challenge to foreign

20   judgment is "disfavored"). Nor does judicial efficiency favor an exercise of jurisdiction here; to the

21   contrary, the volume of orders likely affected enhances the need for judicial comity. For these

22   reasons, the Court should not exercise discretionary jurisdiction here.[11]

23   **B.   There is No Prudential Standing for Microsoft's Fourth Amendment Claims**.

24   Prudential considerations also warrant the dismissal of Microsoft's Fourth Amendment claims

---

25   [10] There is no redressability here because Microsoft has not pleaded that any particular court order is invalid, *see* Part I.C,
26   and the comity principles described herein demonstrate that the FAC should not be read to include such challenge.
     [11] The analysis is no different as to the propriety of second-guessing decisions made by other judges of this Court, rather
27   than those in other jurisdictions. *See* Wright, Miller & Cooper, 18B Federal Practice and Procedure § 4478, at 637 ("The
     courts are reluctant to open a ruling once made. This general reluctance is augmented by comity concerns when one
     judge or court is asked to reconsider the ruling of a different judge or court."); *accord Long v. Dick*, 38 F. Supp. 214, 218
28   (S.D. Cal. 1941) ("The general rule is that a matter which is decided by any District Judge within the District should be,
     as a matter of comity without re-examination by another judge, so decided").

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 13

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

because Microsoft's interests here are not within the zone of interests protected by the Fourth Amendment. *See City of L.A. v. Cty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009) (discussing prudential standing). "[T]he zone of interests test, which governs claims under the Constitution," counsels against a court's exercise of jurisdiction "if the plaintiff's interests are . . . marginally related to or inconsistent with the purposes implicit in the relevant constitutional provision."[12] *Id.* at 846-47. Microsoft's commercial interest in attracting users to its various types of services, FAC ¶ 39, is not related to the purpose of the Fourth Amendment, which concerns "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Therefore, Microsoft cannot show that it has prudential standing to raise its Fourth Amendment claim as to section 2703 or 2705(b). *See Kern*, 581 F.3d at 848 (recyclers lacked prudential standing to raise Commerce Clause claim because interest in shipping waste intrastate was not even "marginally related" to the chief, interstate, purpose of the Clause).

### III. Microsoft's Complaint Fails to State a First Amendment Claim For Relief.

#### A. Microsoft's Overbreadth Challenge To § 2705(b) Fails To State A Claim.

"As-applied challenges are the basic building blocks of constitutional adjudication," *Gonzales v. Carhart*, 550 U.S. 124, 168 (2007), and, as a party subject to numerous section 2705(b) orders, Microsoft is wrong to suggest that it may seek invalidation of that section pursuant to the "overbreadth doctrine." *See* FAC ¶ 23. This is particularly true where, as here, Microsoft's challenge arises only from the application of section 2705(b) by individual courts, not the text of the statute.

The overbreadth doctrine is not an always-available exception to the rule that constitutional challenges be assessed in the context of a particular case. *See* FAC ¶ 23. To the contrary, "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Parker v. Levy*, 417 U.S. 733, 759 (1974). Here, "the lawfulness of the particular application[s] of the law[] should ordinarily be decided first." *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 485 (1989). The Supreme Court elaborated:

---

[12] The Ninth Circuit has not addressed whether the Supreme Court's recent holding in *Lexmark Int'l v. Static Control*, that "'prudential standing' is a misnomer as applied to the zone-of-interests analysis" for statutory claims, 134 S. Ct. 1377, 1387 (2014), impacts its zone of interests jurisprudence for a claim arising under the Constitution.

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 14

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

> It is not the usual judicial practice, however, nor do we consider it generally desirable, to proceed to an overbreadth issue unnecessarily-that is, before it is determined that the statute would be valid as applied. Such a course would convert use of the overbreadth doctrine from a necessary means of vindicating the plaintiff's own right not to be bound by a statute that is unconstitutional into a means of mounting gratuitous wholesale attacks upon state and federal laws.

*Id.* at 484-85. Microsoft's reliance on the overbreadth doctrine is precisely what the Supreme Court forbade: an effort to avoid adjudication of Microsoft's "right not to be bound" in particular instances in favor of a "gratuitous wholesale attack[]" on the law. *Id.* at 485.

Further, absent an inquiry into the actual circumstances in which section 2705(b) orders have been issued, it is simply not possible to determine that *any* application of section 2705(b) is unconstitutional, let alone a "substantial number." *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988). As the Supreme Court observed, in an overbreadth challenge, a plaintiff "must demonstrate from the text of [the law] and from actual fact that a substantial number of instances exist in which the Law cannot be applied constitutionally." *Id.* Yet the only fact alleged by Microsoft to support its facial challenge is the number of purportedly "indefinite" orders, FAC ¶ 26, which says nothing about whether the application has been applied constitutionally in those instances. Indeed, the need to consider Microsoft's claims in context is especially acute given Microsoft's focus on orders of "indefinite" duration, since "indefinite" appears nowhere in the text of 2705(b).  Given the wide range of circumstances to which 2705(b) may be applied, it is insufficient for Microsoft merely to hypothesize scenarios in which an order might potentially be unconstitutional and assert that those scenarios appear on the statute's face. *See Parker*, 417 U.S. at 760.

**B.   Microsoft Does Not Have An Absolute Right To Make The Disclosures At Issue.**

Microsoft's First Amendment claim also fails because the First Amendment does not authorize one to share information obtained solely as part of involvement in a confidential, judicially-supervised investigatory process. For example, in *Butterworth v. Smith*, the Supreme Court, enumerating some limits on grand-jury nondisclosure orders, distinguished two types of information: that "which [a witness] was in possession before he testified," and that he "obtained as a result of his participation in the proceedings." 494 U.S. 624, 632 (1990); *see id.* at 636 (Scalia, J., concurring) ("[q]uite a different question is presented . . . by a witness' disclosure of the grand jury proceedings, which is knowledge he acquires not 'on his own' but only by virtue of being made a

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 15

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

witness."); *In re Subpoena*, 864 F.2d 1559, 1562 (11th Cir. 1989) (same). Restrictions on information not "possessed prior to becoming" part of the proceeding are not subject to the same type of constitutional scrutiny. *Hoffmann-Pugh v. Keenan*, 338 F.3d 1136, 1140 (10th Cir. 2003). This principle has been extended to confidential judicial misconduct investigations, *see Kamasinski v. Judicial Review Council*, 44 F.3d 106 (2d Cir. 1994), as well as to nondisclosure orders issued in civil discovery. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984) (noting that parties "gained the information they wish to disseminate only by virtue of the trial court's discovery processes"). Because section 2705(b) nondisclosure orders restrict *only* a limited category of information (*i.e.*, the existence of legal process regarding a particular user), and this is information Microsoft learned only through its receipt of judicially-authorized legal process, Microsoft may be constitutionally prohibited from disclosing this information. *Butterworth*, 494 U.S. at 632.

Significantly, nondisclosure orders issued pursuant to section 2705 do not limit Microsoft's ability to disseminate information to the public at large about, *inter alia*, the fact of receipt of an order, the time or place in which the order was received, or the total number of orders it receives, *i.e.*, the "matters of public concern" at the apex of First Amendment protection. *U.S. v. Richey*, 924 F.2d 857, 860 (9th Cir. 1991); *compare Snyder v. Phelps*, 562 U.S. 443, 452 (2011) ("where matters of purely private significance are at issue, First Amendment protections are often less rigorous").  Thus, as Microsoft has done in its pleadings, Microsoft or other service providers may freely discuss their experience with section 2703 legal process requiring the disclosure of user identities or information, and section 2705(b) orders protecting the confidentiality of such process. This reinforces the conclusion that Microsoft may be restrained from disclosing limited information about confidential criminal investigations without offending the First Amendment.

### C.     Even If Nondisclosure Requirements In This Context Implicate The First Amendment, The Procedures In Place Are Constitutionally Sufficient.

In light of the reduced First Amendment interests in information obtained only through participation in investigative processes, courts have rejected claims that such limits constitute a prior restraint subject to extraordinary standards of First Amendment review. *See* FAC ¶ 24. For example, courts have concluded that nondisclosure requirements issued in conjunction with national security letters ("NSLs") (a type of administrative subpoena issued in national security investigations) are not

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 16

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

"typical prior restraints" subject to such heightened scrutiny. *Doe v. Mukasey*, 549 F.3d 861, 863, 877 (2d Cir. 2008); *In re NSLs*, 930 F. Supp. 2d 1064, 1071 (N.D. Cal. 2013). This is true even though such nondisclosure orders are issued solely on the initiative of the Executive Branch, without prior judicial review as required by § 2705(b). *E.g.*, 18 U.S.C. § 2709; 12 U.S.C. § 3414; 15 U.S.C. § 1681v.

Even if Microsoft were correct that the nondisclosure orders here constitute prior restraints, however, the substantive basis and procedural safeguards provided by section 2705(b) are sufficient to satisfy even the most searching First Amendment inquiry imposed in the prior restraint context. In *Freedman v. Maryland*, 380 U.S. 51 (1965), the Supreme Court examined an exceptionally burdensome prior restraint on political and artistic expression: a "censorship statute" that made it unlawful to exhibit any film unless it was first "duly approved and licensed by" a state Board of censors. 380 U.S. at 52 n.1. *Freedman* set forth a series of procedural safeguards necessary to validate such a prior restraint, and section 2705's procedures are sufficient to satisfy the *Freedman* standards for the narrow restrictions on speech at issue here.

As elaborated in *Thomas v. Chicago Park Dist.*, 534 U.S. 316 (2002), *Freedman* requires that "'(1) any [administrative] restraint prior to judicial review can be imposed only for a specified brief period . . . (2) expeditious judicial review [] must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court.'" *Id.* at 321. Here, each criterion is met. First, there is *no* restraint imposed "prior to judicial review." *Id.* Rather, section 2705(b) provides for advance judicial authorization of any nondisclosure requirement – even where the legal process is of a form, such as a subpoena, that could be served on Microsoft without advance judicial involvement. The Government "bear[s] the burden of going to court" in advance of any nondisclosure order, and such advance review is, by definition, expeditious. *Id.* By requiring that the Government persuade the court that there is "reason to believe" one of five enumerated harms "will result" absent a nondisclosure order, section 2705(b) also satisfies the requirement that the Government "bear the burden of proof."

Nor has Microsoft demonstrated any likelihood that the judicially-approved 2705(b) orders to which it is subject would fail the substantive First Amendment requirements for content-based restrictions on speech. *See U.S. v. Playboy Entm't Grp.*, 529 U.S. 803, 813 (2000) (a statute must be

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 17

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

"narrowly tailored to promote a compelling" interest and be "the least restrictive means" of doing so). Here, nondisclosure orders are imposed in criminal investigations for the purposes of ensuring that the subject of the investigation does not flee, intimidate witnesses, threaten others, destroy evidence, or change his or her behavior to thwart the investigation, thereby leading to the subject remaining a threat to public safety. It is well-established that this interest in protecting the integrity of a criminal investigation and thereby assuring public safety is a compelling one.[13] *See Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 579 (4th Cir. 2004); *Schall v. Martin*, 467 U.S. 253, 264 (1984).

The limits on what the recipient of investigative process may disclose are also tailored narrowly to the Government's interests. Section 2705(b) is limited in reach to facts about the existence of particular 2703 process, the precise information Congress concluded could create the requisite harm, leaving Microsoft free to speak on other matters of public importance. Further, by placing the question of the "appropriate" length of nondisclosure order in the hands of a court, Congress has provided a procedure to tailor the duration of 2705(b) orders narrowly to the circumstances. *See ACLU v. Holder*, 673 F.3d 245, 257 (4th Cir. 2011) (statute authorizing sealing was narrowly-tailored where sealing order stemmed from "federal court's independent decision" on the basis for secrecy).[14] Thus, section 2705(b) satisfies the relevant First Amendment legal standards.

### D. The First Amendment Permits Nondisclosure Orders Of Indefinite Duration

Microsoft's First Amendment claims are premised on an assertion that the First Amendment bars "indefinite" nondisclosure orders. This contention is without merit, particularly with regard to

---

[13] To be sure, the Government's reasons for seeking nondisclosure orders may, in many cases, be described generally, but this is to be expected: the manner in which these harms inure from disclosure in one case may parallel another. *See Scully*, 108 F. Supp. 3d at 86-87 (noting that the "general [] nature" of harms supporting a section 2705(b) request does not "suggest that the non-disclosure order was based on an overly broad affidavit"). For example, because: (1) requests for information under 2703 are often made at early stages of a case (in many instances, before the identity of the target is known), and (2) the evidence involved is electronic and therefore can be altered, or destroyed easily, it is unsurprising that the Government frequently may point to destruction of evidence as a likely outcome if an order is disclosed to a user. *See id.* ("legitimate basis . . . for the seal and order of nondisclosure" where law enforcement officer explained that drug traffickers "actively search for criminal affidavits and search warrants via the internet, and disseminate them to other criminals"). In light of the compelling Government interests in avoiding these harms, the absence of case "specific facts applicable to the particular request," FAC ¶ 20, particularly early in an investigation, does not indicate an absence of narrow tailoring. *But cf. In re Fifteen Subpoenas* at 8 (concluding that a fact-specific showing is a requirement of the statute).
[14] Here, where determining the appropriate duration requires predictions about the future course of an investigation and future law enforcement harms, narrow tailoring does not require that these predictions be perfect. *See Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1671 (2015) ("narrowly tailored" does not equal "perfectly tailored"); *cf. First Am. Coalition*, 784 F.2d 479 (similarly relying on predictive judgments about future harms). This is particularly true at early stages of a multi-step investigation, and Congress has provided courts with the discretion to assess whether the proffered predictions are persuasive and to determine the appropriate duration of secrecy.

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 18

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

criminal warrants and other elements of confidential investigations. For example, in the grand jury context, the Federal Rules of Criminal Procedure require that "[r]ecords, orders, and subpoenas … must be kept under seal… *as long as necessary* to prevent the unauthorized disclosure of a matter occurring before a grand jury," Fed. R. Crim. Proc. 6 (emphasis added), and this Rule does not violate the First Amendment. *See Hoffmann-Pugh*, 338 F.3d at 1140. As the Supreme Court has explained, grand jury nondisclosure requirements may properly outlive a particular grand jury, because the "effects of disclosure" may include "effect[s] [on] the functioning of future grand juries." *Douglas Oil Co. of Calif. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)).

In *Times Mirror*, the Ninth Circuit explained that the "polic[ies] behind grand jury secrecy apply with equal force to warrant proceedings," and those interests include preventing those "under suspicion of criminal activity [from] destroy[ing] evidence [or] flee[ing]" and assuring "that persons who are accused but exonerated . . . will not be held up to public ridicule."[15] 873 F.2d at 1215-16, 1221 ("The district courts' orders maintaining the warrant materials *under indefinite seal* are affirmed") (emphasis added); *cf. Certain Interested Indivs. v. Pulitzer Publ'g.*, 895 F.2d 460, 466 (8th Cir. 1990) (appropriate to continue nondisclosure of warrants to protect personal privacy when no indictments have issued). And courts have found that enduring Government interests may authorize perpetual nondisclosure requirements in other contexts. *See First Am. Coalition v. Judicial Inquiry & Review Bd.*, 784 F.2d 467, 468, 478-79 (3d Cir. 1986) (provision of Pennsylvania Constitution permanently barring "public access to records" in cases where judicial discipline did not ensue "does not violate the [U.S.] constitution"). Therefore, it is not the case that orders that do not contain a definite end date are unconstitutional in a substantial number of cases, especially given the procedural protections and substantive standards set forth in sections 2703 and 2705.[16]

Finally, a nondisclosure order with no fixed end date "does not constitute a permanent bar on

---

[15] *U.S. v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1194-96 (9th Cir. 2011) (cited at FAC ¶ 26) held that there is a common law right of access to warrants *after an investigation is finished*, but that, even at that point in time, warrants may remain sealed if there is "both a compelling reason and a factual basis" for doing so.

[16] The cases Plaintiff cites also recognize that lasting nondisclosure orders may be warranted by individualized circumstances, if confined to narrow categories of information. *See, e.g., In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 895 (S.D. Tex. 2008) (some "[l]egitimate confidentiality interests" may need to be "accommodated by redacting the troublesome words or passages"); *In re Search Warrant for [Redacted]@hotmail.com*, 74 F. Supp. 3d 1184, 1186 (N.D. Cal. 2014) ("If the court were dealing with a grand jury subpoena . . . perhaps an infinite period of Microsoft silence would be appropriate"). Section 2705(b) meets this standard.

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 19

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

. . . disclosure," as long as the recipient can "challenge the nondisclosure order again in the future." *Doe v. Holder*, 665 F. Supp. 2d 426, 433 (S.D.N.Y. 2009) (applying First Amendment on remand from *Mukasey*). This legal principle refutes Microsoft's claim that an order with "no time limit" constitutes a "forever [] bar[]" on disclosure, FAC ¶ 16, because Microsoft can request that the court lift a section 2705(b) order at any time.  For these reasons, Microsoft must challenge specific applications of the statute rather than asserting that indefinite section 2705(b) orders are *per se* unlawful.

## E.   Microsoft's Other First Amendment Theories Are Without Merit.

Microsoft's Complaint also briefly sketches out several other possible First Amendment legal theories, all of which can be summarily dismissed for the same reasons as the principal First Amendment claims addressed above. First, Microsoft contends that "the public and the press" are harmed by section 2705(b) orders because they lack the information needed to ensure "openness of government records." FAC ¶ 26. However, as explained above, Microsoft may challenge the continued need for secrecy at any time, and therefore lacks standing to raise the claims of those who lack the information to challenge nondisclosure. Further, the standard of review under this aspect of the First Amendment is no higher than the standards described above, so this claim should be dismissed for the same reasons as Microsoft's other First Amendment claims. *See, e.g., First Amend. Coalit.*, 784 F.2d at 479; *cf. Microsoft Corp. v. Motorola*, 2012 WL 5476846, at *1-*2 (W.D. Wash. Nov. 12, 2012) (post-trial sealing granted where "documents contain sufficiently confidential information to outweigh the public's interest in access to public records").

Second, Microsoft asserts that the "reason to believe" standard in section 2705(b) is unconstitutional because it need not be "grounded in the specific facts of a particular investigation, as distinct from the government's overall experiences." FAC ¶ 29. But the Supreme Court and Ninth Circuit have confirmed that "the possible effect upon the functioning of future" investigations is a valid basis for deciding whether nondisclosure orders are proper in the grand jury context. *Douglas Oil*, 441 U.S. at 222; *In re Grand Jury Proceedings*, 62 F.3d 1175, 1179 n.2 (9th Cir. 1995). There is no basis for imposing a different standard on secrecy for investigations where the need for secrecy "appl[ies] with equal force." *Times Mirror*, 873 F.2d at 1215; *see Matter of EyeCare Physicians of Am*, 100 F.3d 514, 519 (7th Cir. 1996). Moreover, it is impossible for this court to judge

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 20

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

whether the rationale for any given order is sufficiently specific, given that Microsoft has not placed a particular order before the court.

Nor is it the case that the judicial standard in section 2705(b), requiring a court to have "reason to believe" that disclosure "will result in" one of the specified enumerated harms, is constitutionally inadequate. For a nearly-identical list of potential harms in the grand jury context, the Ninth Circuit has concluded that, even where the risk of such harm is "slight," nondisclosure is warranted unless the "need for disclosure is greater than the need for continued secrecy." *In re Grand Jury Proceedings*, 62 F.3d at 1179 & n.2. In other contexts, courts also have held that "good reason" to believe a harm will occur is the standard that adequately protects First Amendment rights. *See McGehee v. Casey*, 718 F.2d 1137, 1148 (D.C. Cir. 1983); *Doe*, 549 F.3d at 874. 2705(b) satisfies either of these standards, and thereby ensures that the Government "bear the burden of proof." *Thomas*, 534 U.S. at 321.

Finally, there is no merit to Microsoft's contention that the Government does not have sufficiently-important interests in avoiding "undu[e] delay [of] a trial" or "serious[] jeopard[y] [to] an investigation." FAC ¶ 30 (quoting section 2705(b)). To the contrary, any disclosure that "will result" in undercutting an investigation implicates compelling interests in public safety and "protecting the community from crime." *Schall*, 467 U.S. at 264; *accord Salerno*, 481 U.S. at 745. The Supreme Court has likewise recognized the "compelling interest in prompt trials," an interest that stems from the "Sixth Amendment's guarantee of a Speedy Trial." *Flanagan v. U.S.*, 465 U.S. 259, 264-65 (1984). Far from being a "catch-all," FAC ¶ 30, this provision—like the other enumerated harms in §2705(b) — extends nondisclosure only to circumstances where critical Government interests are at stake.

## IV.   Microsoft's Complaint Fails To State A Fourth Amendment Claim For Relief.

Microsoft's claims that sections 2703 and 2705(b) are "facially unconstitutional under the Fourth Amendment," FAC ¶ 35, are without merit. Microsoft challenges only the provisions of section 2703 authorizing "warranted searches", *id.* at 18, and any challenge to section 2705(b) is necessarily limited to orders issued in connection with information in which Microsoft users have a Fourth Amendment interest. [17] This Court should reject Microsoft's attempt to frame its challenge

---

[17] Many section 2705(b) nondisclosure orders are issued to keep confidential efforts to procure non-content information, most of which is not protected by the Fourth Amendment and for which the Constitution does not require a warrant. *See, e.g.*, *In re Fifteen Subpoenas*, No. 16-mc-1300 (E.D.N.Y. May 12, 2016). No Fourth Amendment right to notice can possibly exist for material outside the Fourth Amendment's protections.

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 21

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

to these sections as violating its users' Fourth Amendment privacy interests, *id.* ¶ 37, because every 2703 warrant and 2705(b) order is issued by a "neutral magistrate," the core "safeguard" of the Fourth Amendment, *U.S. v. Gooch*, 506 F.3d 1156, 1159 (9th Cir. 2007). Moreover, these statutes were enacted "to ensure the continuing vitality of the [F]ourth [A]mendment" by *extending* privacy protections, not diminishing them. S. Rep. 99-541 at *5; *see Graham*, 2016 WL 3060818, at *11.

### A.   There Is No Constitutional Right to Notice of Legal Process To Third Parties.

Microsoft's Fourth Amendment claim relies on its allegation that its users have a Fourth Amendment right to notice of legal process issued to Microsoft, FAC ¶ 38, but no such right is established in the law. Microsoft ignores that the provisions they challenge accord the privacy interests of its users the highest protection available under the Fourth Amendment by providing for advance review by a neutral magistrate, the principal means of protecting privacy interests against governmental intrusion. *See Riley v. California*, 134 S. Ct. 2473, 2493 (2014) (reaffirming the basic principle that a warrant suffices to protect privacy interests in electronically stored data); *U.S. v. Grubbs*, 547 U.S. 90, 99 (2006) ("The Constitution protects property owners . . . by interposing, ex ante, the deliberate, impartial judgment of a judicial officer ... between the citizen and the police").

In essence, Microsoft asks that a *new* Fourth Amendment right to notice be created due to the choice by its users to store some data in places "owned [and controlled] by third parties." FAC ¶¶ 2-5. But the scope of criminal process *has* historically extended to obtaining evidence from third parties (such as communications companies) without recognition of a right to notice to the "target" in such circumstances. *See Newfield v. Ryan*, 91 F.2d 700 (5th Cir. 1937) (subpoenas issued to Western Union for telegrams); *In re Horowitz*, 482 F.2d 72, 75-80 (2d Cir. 1973) (Friendly, J.) (subpoena to accountant for client records); Postal Laws and Regulations of 1913 § 522 ("[s]ealed matter not to be opened *except on warrant*") (emphasis added). This is reflected in the fact that—with the Fourth Amendment in mind—Congress decided not to require notice to a user when the Government obtains a section 2703 warrant using the procedures described in Federal Criminal Rule 41.  Rule 41(f)(1)(C) provides several alternatives for notice, including "to the person from whom, or from whose premises, the property was taken," – here, Microsoft. *See U.S. v. Bansal*, 663 F.3d 634, 662-63 (3d Cir. 2011) (defendant could not argue that evidence from his email accounts should be suppressed on the grounds that he was not given a copy of the warrant, where notice was provided

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 22

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

1   to service provider in conformance with Rule 41); *Scully*, 108 F. Supp. 3d at 83-89 (rejecting claim

2   based on Rule 41 and the Fourth Amendment on similar grounds); *see also SEC v. O'Brien*, 467 U.S.

3   735, 743 (1984) (prior Supreme Court rulings "disable respondents from arguing that notice of

4   subpoenas issued to third parties is necessary to allow a target to prevent an unconstitutional search

5   or seizure of his papers"). Nor does *U.S. v. Freitas*, 800 F.2d 1451, 1456 (9th Cir. 1986), establish a

6   right to user notice. *Freitas* addressed only the right of a defendant to notice of a warrant authorizing

7   a surreptitious search of his own home, rather than a warrant issued to a third party, and "the

8   Fourth Amendment draws a firm line at the entrance to the house." [18] *Kyllo v. U.S.*, 533 U.S. 27, 40

9   (2001). The core safeguard of the Fourth Amendment is review by a neutral and detached

10  magistrate, and such review is provided here. Therefore, Microsoft's Fourth Amendment claim fails.

11  **B. Even if Microsoft's Users Have a Right to Notice, Those Rights Have No Bearing
    on the Constitutionality of Section 2705(b).**

12

13       Moreover, even if the Fourth Amendment entitles Microsoft's users to notice of legal process

14  issued to Microsoft, those rights would have no bearing on the constitutionality of section 2705(b).

15  "The central purpose of the Fourth Amendment is to safeguard the privacy and security of

16  individuals against arbitrary invasions by *government* officials." *S. Dakota v. Opperman*, 428 U.S. 364,

17  377 (1976) (Powell, J., concurring) (emphasis added); *accord Olmstead v. U.S.*, 277 U.S. 438, 478 (1928)

18  (Brandeis, J., dissenting) ("The protection guaranteed by the [Fourth and Fifth] amendments is

19  [from] . . . unjustifiable intrusion by the government"). The Government is subject to the notice

20  requirements in section 2703, and 2705(b) does not separately operate on the Government.

21  Therefore, any decision by this Court as to the constitutionality of section 2705(b) will only affect

22  Microsoft, not require the *Government* to provide notice of legal process. Nor could any hypothetical

23  Fourth Amendment right require that Microsoft provide such notice. Any Fourth Amendment

24  rights of Microsoft's users must run against the Government, not against Microsoft. [19]

25  [18] The Supreme Court has never explicitly held that there is any right to *notice* under the Fourth Amendment. *Wilson v.*

26  *Ark.*, 514 U.S. 927, 934 (1995), did not address a right to notice per se, but rather spoke to whether "unannounced entry
    into a home" is reasonable. A home is "the center of our privacy interest." *Freitas*, 800 F.2d at 1456; *see also Katz*, 389

27  U.S. n.16 (contrasting reasons for a rule that officers must knock and announce their identity and purpose before entry
    to home with issues presented by notice of judicially authorized surveillance); *Hudson v. Mich.*, 547 U.S. 586, 593 (2006).
    [19] The logical extension of Microsoft's argument would be that users' Fourth Amendment rights turn on a particular

28  ECSP's policy regarding the provision of notice to users, and thus, that a user's Fourth Amendment rights are violated
    when service providers do not provide notice. But the Fourth Amendment does not regulate private parties in this way.

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 23

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

### C.        Microsoft Has Not Met the Standards for a Successful Facial Challenge.

Microsoft's Fourth Amendment claims also fail to meet the standard for a valid facial challenge. Such challenges are "the most difficult . . . to mount successfully," *Salerno*, 481 U.S. at 745, because the plaintiff must show that "there are no circumstances under which the… provision may be constitutionally applied," *Patel v. City of L.A.*, 738 F.3d 1058, 1065 (9th Cir. 2013), and federal statutes challenged under the Fourth Amendment have a "strong presumption of constitutionality." *U.S. v. Watson*, 423 U.S. 411, 416 (1976). Microsoft cannot show that there are no circumstances under which sections 2703 and 2705(b) can be constitutionally applied. As discussed above, there is no reasonable expectation of privacy in most non-content information, such as the "to/from" addresses of e-mails. *See Forrester*, 512 F.3d at 510. Thus, in cases where the Government obtains such information pursuant to section 2703 and obtains a 2705(b) order, the Fourth Amendment is not implicated as a matter of law. Further, as Microsoft acknowledges, contemporaneous notice is not necessarily required even when the Fourth Amendment applies. *See* FAC ¶ 33; *Dalia v. U.S.*, 441 U.S. 238, 246 (1979) (not the case that "the Fourth Amendment prohibits covert entry of private premises in all cases, irrespective of the reasonableness of the entry"); *Wilson*, 415 U.S. at 936 ("although a search or seizure of a dwelling might be constitutionally defective … without prior announcement, law enforcement interests may also establish the reasonableness of an unannounced entry"); *Freitas*, 800 F.2d at 1456 ("the Fourth Amendment does not prohibit all surreptitious entries").[20] Therefore, sections 2703 and 2705(b) are not facially invalid. *See Patel*, 738 F.3d at 1065.

## V.    Microsoft's "As Applied" First and Fourth Amendment Challenges Are a Nullity.

Finally, the FAC purports to assert "as-applied" challenges alongside each of its facial claims. But Microsoft's invocation of this phrase is inapposite here, where Microsoft has not pleaded a concrete challenge based on a specific instance. "When faced with a claim that application of a statute renders it unconstitutional, a court must analyze the statute as applied to the particular case, *i.e.*, how it operates in practice against the particular litigant and under the facts of the instant case."

---

[20] Further, in assessing the reasonableness of a particular search, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tenn. v. Garner*, 471 U.S. 1, 8 (1985). This balancing is inherently an individualized inquiry based on the facts of the search at issue, and the Government's interests may dominate in many cases such as those enumerated in 2705(b), including threats of violence, flight, or to the integrity of evidence. *See Wilson*, 514 U.S. at 936.

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 24

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

*Wal-Mart v. City of Turlock*, 483 F. Supp. 2d 987, 996-97 (E.D. Cal. 2006). As noted above, however, Microsoft has not provided specific facts about any instance of the application of sections 2703 and 2705(b) in support of its claims "as applied to Microsoft." Instead, the only "fact" alleged in support of Microsoft's "as applied" allegation is the total number of orders to it, *see* FAC ¶ 32, which provides no information about any particular instance or order. Necessarily, "[a]s-applied challenges . . . are fact-specific in nature," *ProtectMarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 840 (9th Cir. 2014), and "[a]n as-applied challenge goes to the nature of the application rather than the nature of the law itself." *Desert Outdoor Advert. v. Oakland*, 506 F.3d 798, 805 (9th Cir. 2007). Thus, Microsoft's effort to rely on "the same reasons" (as in its purported facial challenges) for claiming that sections 2703 and 2705(b) are unconstitutional as applied, *see* FAC ¶ 40, fails to state a claim for relief.

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion to dismiss all claims.


Dated:  July 22, 2016

Respectfully submitted,


BENJAMIN C. MIZER                           ANNETTE L. HAYES
Principal Deputy Assistant                  United States Attorney
Attorney General                            Western District of Washington


ANTHONY J. COPPOLINO                         HELEN J. BRUNNER
Deputy Director                             Appellate Chief
Federal Programs Branch

                                            KERRY KEEFE
                                            Civil Chief

  */s/ ERIC J. SOSKIN*
ERIC J. SOSKIN, PA Bar #200663
JENNIE L. KNEEDLER
Trial Attorneys
U.S. Department of Justice
Civil Division
Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
(202) 353-0533 (telephone)
Eric.Soskin@usdoj.gov

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 25

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

1

## **CERTIFICATE OF SERVICE**

2

3        I hereby certify that, on this 22nd day of July, I electronically filed Defendants' Motion to

4

Dismiss with the Clerk of the Court using the CM/ECF system which will send notification of such

5

filing to the attorneys of record who are registered as such on the CM/ECF system.  I also certify

6

7   that I have caused to be mailed by the U.S. Postal Service the document to Stephen P. Wallace, 1116

8   Sheffer Road – Apt. F, Aurora, IL 60505, who is a non CM/ECF participant.

9

10  Dated:  July 22, 2016                                    */s/ Eric J. Soskin*

11                                                          ERIC J. SOSKIN

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss - 26

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

The Honorable James L. Robart

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION,                          NO. 16-cv-00538JLR

v.

UNITED STATES DEPARTMENT OF
JUSTICE, and LORETTA LYNCH, in her official
capacity as Attorney General of the United States.

# [PROPOSED] ORDER

Upon consideration of Defendants' Motion to Dismiss and any responses and replies

thereto, the Court ORDERS that the motion is granted and the above-captioned action is

dismissed with prejudice.

IT IS SO ORDERED

DATED this _____ day of June, 2016

_____

Hon. James L. Robart

United States District Judge

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20002
202-353-0533

1

Presented by:

2

U.S. Department of Justice, Civil Division

3

Attorneys for Defendants

4

5

*/s/ ERIC J. SOSKIN*

6

ERIC J. SOSKIN, PA Bar #200663
JENNIE L. KNEEDLER

7

Trial Attorneys

8

U.S. Department of Justice
Civil Division

9

Federal Programs Branch
P.O. Box 883

10

Washington, D.C. 20044

11

(202) 353-0533 (telephone)
Eric.Soskin@usdoj.gov

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Motion to Dismiss

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20002
202-353-0533