The Honorable James L. Robart

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

MICROSOFT CORPORATION,

10

Plaintiff,

11

v.

12

THE UNITED STATES DEPARTMENT OF
JUSTICE, and LORETTA LYNCH, in her

13

official capacity as Attorney General of the
United States,

14

15

Defendants.

16
17
18
19
20
21
22
23
24
25
26
27

No. 2:16-cv-00538-JLR

MICROSOFT'S OPPOSITION TO
GOVERNMENT'S MOTION TO
DISMISS [DKT. 38]

*Noted on Motion Calendar*:
September 23, 2016

**ORAL ARGUMENT
REQUESTED**

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 1
DWT 30231615v7 0025936-002444

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ...........................................................................................1

II.    LEGAL STANDARD.....................................................................................2

III.   ARGUMENT ..................................................................................................3

       A.    Microsoft Has Stated a Claim That Section 2705(b) Violates the
             First Amendment. ..................................................................................3

             1.    Microsoft Has Standing to Assert Its First Amendment Claim. ...............3

                   a.    Microsoft Has Suffered an Injury in Fact. .....................................3

                   b.    A Favorable Ruling Would Redress Microsoft's Injury..............5

             2.    Microsoft Has Stated a First Amendment Claim.....................................7

                   a.    Microsoft Has Adequately Alleged the Overbreadth
                         Doctrine Applies to Section 2705(b). ...........................................7

                   b.    Microsoft Has Adequately Alleged Secrecy Orders Are
                         Prior Restraints and Content-Based Restrictions on
                         Speech Subject to Strict Scrutiny....................................................8

                   c.    Microsoft Has Adequately Alleged Section 2705(b)
                         Fails to Satisfy Strict Scrutiny. ...................................................11

             3.    Microsoft Has Properly Alleged Both Facial and As-Applied
                   First Amendment Challenges to Section 2705(b)...................................16

       B.    Microsoft Has Stated a Claim that Sections 2703 and 2705(b)
             Violate the Fourth Amendment. ..........................................................16

             1.    Microsoft Has Standing to Assert a Fourth Amendment Claim
                   on Behalf of its Customers....................................................................16

             2.    Microsoft's Customers Have a Fourth Amendment Right to
                   Notice.....................................................................................................20

             3.    The Government's Arguments as to the Form of Microsoft's
                   Fourth Amendment Challenge Lack Merit.............................................23

IV.    CONCLUSION.............................................................................................24

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Am. Immigration Lawyers Ass'n v. Reno*,
　199 F.3d 1352 (D.C. Cir. 2000) .................................................................................20

*Ariz. Right to Life Political Action Comm. v. Bayless*,
　320 F.3d 1002 (9th Cir. 2003) ...............................................................................3, 6

*Ashcroft v. Free Speech Coalition*,
　535 U.S. 234 (2002) .................................................................................................7

*Balt. Sun Co. v. Goetz*,
　886 F.2d 60 (4th Cir. 1989) ....................................................................................13

*Barrows v. Jackson*,
　346 U.S. 249 (1953) ..........................................................................................17, 19

*Berger v. New York*,
　388 U.S. 41 (1967) ........................................................................................5, 21, 22

*Biodiversity Legal Found. v. Badgley*,
　309 F.3d 1166 (9th Cir. 2002) .................................................................................8

*Board of Trustees v. Fox*,
　492 U.S. 469 (1989) .................................................................................................8

*Borough of Duryea v. Guarnieri*,
　564 U.S. 379 (2011) ...............................................................................................10

*Brown v. Entm't Merchs. Ass'n*,
　564 U.S. 786 (2011) .................................................................................................9

*Butterworth v. Smith*,
　494 U.S. 624 (1990) ..........................................................................................10, 12

*Citizens United v. Fed. Election Comm'n*,
　558 U.S. 310 (2010) ..........................................................................................16, 24

*City of Los Angeles v. Patel*,
　135 S. Ct. 2443 (2015) ...........................................................................................23

*Clapper v. Amnesty Int'l, USA*,
　133 S. Ct. 1138 (2013) .............................................................................................3

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - iii

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
    657 F.3d 936 (9th Cir. 2011) (en banc) ...............................................................7, 11

*Craig v. Boren*,
    429 U.S. 190 (1976)..........................................................................................17, 18

*Dalia v. United States*,
    441 U.S. 238 (1979)...............................................................................................20

*Desert Outdoor Advert., Inc. v. City of Moreno Valley*,
    103 F.3d 814 (9th Cir. 1996) .................................................................................3

*Doe v. Holder*,
    665 F. Supp. 2d 426 (S.D.N.Y. 2009)...................................................................13

*Doe v. Mukasey*,
    549 F.3d 861 (2d Cir. 2008)........................................................................11, 12, 15

*Dombrowski v. Pfister*,
    380 U.S. 479 (1965)................................................................................................6

*Elrod v. Burns*,
    427 U.S. 347 (1976)................................................................................................4

*Free Speech Coalition, Inc. v. Attorney Gen.*,
    825 F.3d 149 (3d Cir. 2016)..................................................................................23

*Freedman v. Maryland*,
    380 U.S. 51 (1965)..................................................................................................9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)................................................................................................6

*Frisby v. Schultz*,
    487 U.S. 474 (1988)..............................................................................................14

*Gen. Elec. Co. v. Jackson*,
    610 F.3d 110 (D.C. Cir. 2010) ...............................................................................6

*Get Outdoors II, LLC v. City of San Diego*,
    506 F.3d 886 (9th Cir. 2007) ..............................................................................3, 6

*Guerra v. Sutton*,
    783 F.2d 1371 (9th Cir. 1986) ................................................................................6

*Hewitt v. Helms*,
    482 U.S. 755 (1987)................................................................................................6

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*In re App. of Newsday, Inc.*,
   895 F.2d 74 (2d Cir. 1990).................................................................................................13

*In re Directives Pursuant to Section 105b of the Foreign Intelligence Surveillance Act*,
   551 F.3d 1004 (FISA Ct. Rev. 2008)...............................................................................18

*In re Fifteen Subpoenas*,
   No. 16-MC-1300, slip op. (E.D.N.Y. May 12, 2016), ECF No. 2...........................................14

*In re Grand Jury Proceedings*,
   62 F.3d 1175 (9th Cir. 1995) ............................................................................................15

*In re Grand Jury Subpoena*,
   __ F.3d __, 2016 WL 3745541 (9th Cir. July 13, 2016).................................................16

*In re Grand Jury Subpoena for: [Redacted]@yahoo.com*,
   79 F. Supp. 3d 1091, 1091 (N.D. Cal. 2015) ..............................................................12, 13

*In re Horowitz*,
   482 F.2d 72 (2d Cir. 1973)................................................................................................22

*In re Nat'l Sec. Letters*,
   No. 11-cv-2173, slip op. (N.D. Cal. Mar. 29, 2016)..........................................................11

*In re Nat'l Sec. Letters*,
   No. 16-518, slip op. (D.D.C. July 25, 2016).....................................................................14

*In re Sealing and Non-Disclosure of Pen/Trap/2703(D) Orders* (*In re Sealing*),
   562 F. Supp. 2d 876 (S.D. Tex. 2008) .......................................................................9, 10, 12

*In re Search Warrant for: [Redacted]@hotmail.com*,
   74 F. Supp. 3d 1184 (N.D. Cal. 2014) .............................................................................12

*In re Up N. Plastics, Inc.*,
   940 F. Supp. 229 (D. Minn. 1996)....................................................................................22

*In re Verizon Internet Servs., Inc.*,
   257 F. Supp. 2d 244 (D.D.C. 2003), *rev'd on other grounds*, 351 F.3d 1229
   (D.C. Cir. 2003) ................................................................................................................18

*Inst. of Cetacean Research v. Sea Shepherd Conserv. Soc'y*,
   2016 WL 3227930 (W.D. Wash. June 13, 2016)................................................................2

*Isaacson v. Horne*,
   716 F.3d 1213 (9th Cir. 2013) ..........................................................................................16

*Kolender v. Lawson*,
   461 U.S. 352 (1983)...........................................................................................................3

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - v

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*Kyllo v. United States*,
   533 U.S. 27 (2001)................................................................................22

*Larson v. Valente*,
   456 U.S. 228 (1982)................................................................................7

*Levine v. U.S. Dist. Ct.*,
   764 F.2d 590 (9th Cir. 1985) ................................................................9

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
   416 F.3d 940 (9th Cir. 2005) ................................................................2

*Lynch v. [Under Seal]*,
   No. 15-1180, slip op. (D. Md. Sept. 17, 2015), ECF No. 26-10.............14

*Massachusetts v. EPA*,
   549 U.S. 497 (2007)................................................................................7

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ..............................................................5

*Microsoft Corp. v. United States*,
   __ F.3d __, 2016 WL 3770056 (2d Cir. Jul. 14, 2016)..........................18

*Mills v. Alabama*,
   384 U.S. 214 (1966)..............................................................................10

*Muslim Cmty. Ass'n of Ann Arbor v. Ashcroft*,
   459 F. Supp. 2d 592 (E.D. Mich. 2006)................................................5

*N.Y. State Club Ass'n, Inc. v. City of New York*,
   487 U.S. 1 (1988)..................................................................................8

*NAACP v. Alabama ex rel. Patterson*,
   357 U.S. 449 (1958)..............................................................................20

*Neb. Press Ass'n v. Stuart*,
   427 U.S. 539 (1976)..........................................................................9, 16

*Newfield v. Ryan*,
   91 F.2d 700 (5th Cir. 1937) ................................................................22

*Org. for a Better Austin v. Keefe*,
   402 U.S. 415 (1971)..........................................................................9, 13

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co. (AZ)*,
   632 F.3d 1111 (9th Cir. 2011) ..............................................................7

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*Parker v. Levy*,
   417 U.S. 733 (1974) ................................................................................7, 8

*Powers v. Ohio*,
   499 U.S. 400 (1991) ..............................................................................17, 19

*Preminger v. Peake*,
   552 F.3d 757 (9th Cir. 2008) .......................................................................4

*Rakas v. Illinois*,
   439 U.S. 128 (1978) ....................................................................................19

*Red Eye Jacks Sports Bar Inc. v. City of San Diego*,
   2015 WL 4192787 (S.D. Cal. July 10, 2015) ...........................................23

*Riley v. California*,
   134 S. Ct. 2473 (2014) .....................................................................17, 18, 21

*San Diego Cnty. Gun Rights Comm. v. Reno*,
   98 F.3d 1121 (9th Cir. 1996) .......................................................................4

*Sec'y of State v. Joseph H. Munson Co.*,
   467 U.S. 947 (1984) ......................................................................................4

*Singleton v. Wulff*,
   428 U.S. 106 (1976) ....................................................................................19

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ..................................................................................3

*Times Mirror Co. v. United States*,
   873 F.2d 1210 (9th Cir. 1989) ...................................................................12

*United States v. $100,348 of U.S. Currency*,
   354 F.3d 1110 (9th Cir. 2004) ...................................................................18

*United States v. Apollomedia Corp.*,
   2000 WL 34524449 (5th Cir. June 2, 2000) ............................................12

*United States v. Bansal*,
   663 F.3d 634 (3d Cir. 2011)........................................................................22

*United States v. Bus. of Custer Battlefield Museum & Store*,
   658 F.3d 1188 (9th Cir. 2011) ...................................................................12

*United States v. Cotterman*,
   709 F.3d 952 (9th Cir. 2013) (en banc) ........................................1, 17, 21

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*United States v. Davis*,
   785 F.3d 498 (11th Cir. 2015) ............................................... 21

*United States v. Freitas*,
   800 F.2d 1451 (9th Cir. 1986) ........................................... 1, 20, 21, 22, 24

*United States v. Gigliotti*,
   No. 15-204, slip op. (E.D.N.Y. Dec. 23, 2015), ECF No. 114 ................ 10

*United States v. Johns*,
   851 F.2d 1131 (9th Cir. 1988) ............................................. 21

*United States v. Jones*,
   132 S. Ct. 945 (2012) ................................................... 17, 21

*United States v. Playboy Entm't Grp.*,
   529 U.S. 803 (2000) ....................................................... 9

*United States v. Salerno*,
   481 U.S. 739 (1987) ....................................................... 5

*United States v. Scully*,
   108 F. Supp. 3d 59 (E.D.N.Y. 2015) ...................................... 22

*United States v. Stevens*,
   559 U.S. 460 (2010) ...................................................... 10

*United States v. Warshak*,
   631 F.3d 266 (6th Cir. 2010) ........................................... 16, 22

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
   454 U.S. 464 (1982) ....................................................... 5

*Virginia Department of State Police v. Washington Post*,
   386 F.3d 567 (4th Cir. 2004) ............................................. 15

*Warshak v. United States*,
   532 F.3d 521 (6th Cir. 2008) .............................................. 5

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ............................................. 3

*Wilson v. Arkansas*,
   514 U.S. 927 (1995) ...................................................... 20

*Wolfson v. Brammer*,
   616 F.3d 1045 (9th Cir. 2010) ............................................. 7

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
   135 F.3d 658 (9th Cir. 1998) ................................................. 2


**Federal Statutes**

18 U.S.C. § 2703 ................................................................... *passim*

18 U.S.C. § 2703(b)(1)(B) ......................................................... 13

18 U.S.C. § 2705(a) .................................................................. 13

18 U.S.C. § 2705(b) .............................................................. *passim*

18 U.S.C. § 3103a .................................................................... 13

18 U.S.C. § 3103a(b)(1) ............................................................ 24

18 U.S.C. § 3103a(b)(3) ............................................................ 24

18 U.S.C. § 3103a(d) ................................................................ 13

Declaratory Judgment Act ........................................................... 8

Electronic Communications Privacy Act, 18 U.S.C. §§ 2703 and 2705(b) ........... *passim*

Wiretap Act ......................................................................... 20


**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................ 2

Fed. R. Civ. P. 12(b)(6) ......................................................... 2, 14

Fed. R. Crim. P. 41 ................................................................ 22

Fed. R. Crim. P. 41(f)(1)(C) ...................................................... 22


**Constitutional Provisions**

First Amendment ................................................................. *passim*

Fourth Amendment ............................................................... *passim*

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

## I.      INTRODUCTION

People have the right to know when the Government searches for and seizes their private papers.  "[S]urreptitious searches and seizures of intangibles strike at the very heart of the interests protected by the Fourth Amendment."  *United States v. Freitas*, 800 F.2d 1451, 1456 (9th Cir. 1986).  The advent of cloud computing cannot diminish this right.  Rather, the protection of private papers and effects necessarily extends to the digital world, as people now store online "the same kind of highly sensitive data one would have in 'papers' at home," in file cabinets or personal computers.  *United States v. Cotterman*, 709 F.3d 952, 965 (9th Cir. 2013) (en banc).

Nevertheless, thousands of times in the last two years the Government has invoked two provisions of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2703 and 2705(b), to justify secret searches and seizures of Microsoft's customers' private information stored online, while barring Microsoft from telling anyone what the Government has done.  The Government claims the public interest compels this secrecy.  MTD 1:16-19.  In fact, settled constitutional precepts—which embody the public interest—allow the Government to proceed in secrecy and suppress speech *only* to the extent (and for as long as) necessary, based on the facts of the particular case.  A statute that authorizes more sweeping restraints, as Sections 2703 and 2705(b) do, violates the Constitution.  Microsoft merely asks the Court to enforce limits on secret Government action that have long constrained law enforcement in the physical world.  Microsoft has stated justiciable claims under the First Amendment and the Fourth Amendment:

*First Amendment*.  Even through Microsoft has been subjected to thousands of secrecy orders under Section 2705(b), and can expect thousands more, the Government argues Microsoft and its customers lack standing to challenge the statute.  But the Government never seriously contests that Microsoft's speech has been curtailed under authority of Section 2705(b), and a favorable outcome here would redress its injuries by stopping the Government from seeking more unconstitutional orders.  The Government's insistence that Microsoft separately challenge each of thousands of orders ignores the reality that *all* of the orders silence Microsoft, and *all* were issued under the same defective statutory framework.  This injury is sufficient to confer standing on

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 1

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Microsoft.  On the merits, Microsoft has stated a First Amendment claim.  Microsoft alleges Section 2705(b) allows the Government to restrict Microsoft's speech far more than necessary, i.e., by imposing content-based restrictions having no end-date, not grounded in case-specific facts, and without a rigorous showing that silence is necessary to protect constitutionally sufficient government interests.  On the facts alleged, Section 2705(b) cannot survive strict scrutiny, regardless of whether one characterizes Microsoft's challenge as facial or as-applied.

*Fourth Amendment*.  Microsoft has standing to pursue a Fourth Amendment challenge to Sections 2703 and 2705(b) on its customers' behalf.  The fact that customers have entrusted Microsoft with their most sensitive papers ensures the issues will be concrete and sharply presented, the primary concern in third-party standing cases.  Further, Microsoft's customers cannot protect themselves:  Section 2703, when combined with Section 2705(b), keeps customers from knowing about, and thus guarding against, Government violations of their rights.  On the merits, the Ninth Circuit has held the Constitution requires the Government to provide reasonable notice to an owner when it searches and seizes papers at the owner's home—or even in storage.  Because the same principles apply to papers in the cloud, the Government must provide notice to Microsoft's customers when it searches their private files stored in the cloud.

## II.   LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), the Court must construe Microsoft's allegations in the light most favorable to Microsoft as the nonmoving party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc*., 416 F.3d 940, 946 (9th Cir. 2005).  Accordingly, the Court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in Microsoft's favor.  *See Wyler Summit P'ship v. Turner Broad. Sys., Inc*., 135 F.3d 658, 663 (9th Cir. 1998).  Similarly, when a defendant challenges subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) on the face of the complaint, as the Government does here, "[t]he court accepts the factual allegations in the complaint as true, and the nonmoving party is entitled to have those facts construed in the light most favorable to it."  *Inst. of Cetacean Research v. Sea Shepherd Conserv. Soc'y*, 2016 WL 3227930, at *3 (W.D. Wash. June 13, 2016) (citation omitted).

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 2

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

### III.     ARGUMENT

**A.     Microsoft Has Stated a Claim That Section 2705(b) Violates the First Amendment.**

**1.     Microsoft Has Standing to Assert Its First Amendment Claim.**

"Constitutional challenges based on the First Amendment present unique standing considerations." *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003).  As the Ninth Circuit has explained,

> the Supreme Court has endorsed … a "hold your tongue and challenge now" approach rather than requiring litigants to speak first and take their chances with the consequences.  Were it otherwise, free expression—of transcendent value to all society, and not merely to those exercising their rights—might be the loser.

*Id.* (citations omitted).  For this reason, "when the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing." *Id.*  Microsoft plainly satisfies settled standing requirements in this Circuit:  its "allegations establish[] 'a likelihood of future injury' sufficient to give [it] standing to seek declaratory ... relief." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted); *see also Kolender v. Lawson*, 461 U.S. 352, 355 n.3 (1983) (plaintiff detained 15 times for loitering faced "credible threat" of being detained again sufficient to confer standing to challenge ordinance) (dicta).

**a.     Microsoft Has Suffered an Injury in Fact.**

To establish standing, a plaintiff must have suffered a "concrete, particularized, and actual or imminent" injury. *Clapper v. Amnesty Int'l, USA*, 133 S. Ct. 1138, 1147 (2013).  "For an injury to be particularized, it must affect the plaintiff in a personal and individual way"; to be "concrete ... it must actually exist." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quotation marks omitted).

Here, Microsoft alleges ***thousands*** of concrete, particularized injuries, both actual and imminent:  the secrecy orders to which Microsoft has been subject since 2014, issued at a pace of over 100 a month, all restraining its speech pursuant to a constitutionally defective statute.  FAC ¶ 16.  These applications of the statute cause Microsoft to suffer "actually exist[ing]" and "personal" injuries. *See Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 892 (9th Cir. 2007) (plaintiff had standing to challenge statute applied to restrict its speech); *Desert Outdoor*

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*Advert., Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996) (same).  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

The Government acknowledges that the thousands of secrecy orders it obtained actually harm Microsoft.  MTD 8:11-13 (any "injury is imposed by the individual nondisclosure orders").  Nevertheless, the Government asserts Microsoft's injury is too "generalized" to satisfy Article III because Microsoft has not "identif[ied] any particular order that this Court could analyze to determine the existence, nature, and extent of any injury."  MTD 6:19-21.  But *every* 2705(b) order silences Microsoft and thereby injures it.  Starting from its erroneous premise, the Government argues a court must decide the constitutionality of every restraint case-by-case because:  (i) the secrecy orders involve "dissimilar types of process seeking dissimilar information," *id*. 7:1; (ii) "a fact specific inquiry" must precede "the determination of whether ... nondisclosure orders are constitutional," *id*. 7:14-15; and (iii) the tests for deciding constitutionality "are context and fact-specific," *id*. 7:19-20.  But these arguments do not bear on whether suppression of its speech *injures* Microsoft; rather, they preview the Government's flawed merits argument that Section 2705(b) passes constitutional muster, just because *some* 2705(b) orders must be constitutional.  "[W]hether [a] harm constitutes injury in fact is entirely distinct from the question whether that harm amounts to a violation of the First Amendment." *Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008); *see also Sec'y of State v. Joseph H. Munson Co.*, 467 U.S. 947, 958-59 (1984) (government's argument plaintiff had not shown overbreadth of statute was "substantial" and thus lacked standing to challenge it was "properly reserved for the determination of [his] First Amendment challenge on the merits").

Section 2705(b) also inflicts economic injury on Microsoft by eroding customer confidence in its cloud services.  FAC ¶¶ 5, 39.  "Economic injury is clearly a sufficient basis for standing."  *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996).  Although the Government argues this injury is too "ethereal to confer Article III standing," MTD 12:15, "[a]t the pleading stage, general factual allegations of injury ... may suffice, for on a

motion to dismiss [courts] 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

In short, contrary to the Government's assertion, this case does *not* arise "in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." MTD 6:16-19 (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)). The case has nothing in common with the cases on which the Government relies, like *Warshak v. United States*, 532 F.3d 521, 528 (6th Cir. 2008). *See* MTD 7:4-7. In *Warshak*, the Sixth Circuit found a criminal defendant's challenge to aspects of Section 2703 was not ripe because the defendant might never be subjected to another email search, making future injury speculative and transforming the challenge into "litigation by hypothetical." *Id.* at 525-29. By contrast, Microsoft belongs to the discrete class of providers (i.e., "electronic communication services" and "remote computing services" providers) Section 2705(b) expressly targets; Microsoft has already been injured by thousands of secrecy orders; and the Government *never* suggests the pace of orders will slow, much less stop. These facts place this dispute in a sufficiently "concrete factual context," sharpening the issues for judicial resolution. *See Valley Forge*, 454 U.S. at 472.

### b. A Favorable Ruling Would Redress Microsoft's Injury.

The Government urges that declaring Section 2705(b) unconstitutional would not redress Microsoft's injury, arguing that statutes authorizing court orders may be challenged only by attacking particular orders—requiring repetitive, order-by-order litigation. MTD 8:10-17. If that were true, courts could *never* entertain facial challenges to such statutes. But in fact, the Supreme Court *has* entertained facial challenges without suggesting the courts' role in issuing individual orders renders plaintiffs' injuries non-redressable. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739 (1987) (not questioning redressability in facial challenge to bail statute); *Berger v. New York*, 388 U.S. 41 (1967) (same in facial challenge to statute governing wiretap orders); *see also Muslim Cmty. Ass'n of Ann Arbor v. Ashcroft*, 459 F. Supp. 2d 592, 596-601 (E.D. Mich. 2006) (same in facial challenge to FISA provision authorizing issuance of court orders to providers).

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 5

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1  This challenge is no different.

2         In contesting redressability, the Government also mischaracterizes Microsoft's claims.  It

3  asserts a favorable ruling would not redress Microsoft's injuries because the ruling "would not

4  release Microsoft from [the] individual orders" that bind it today.  MTD 8:14-15.  But Microsoft

5  is not asking this Court to "release" it from secrecy orders; rather, it seeks a declaration that

6  Section 2705(b) violates the First Amendment, relief that would prevent the Government from

7  continuing to rely on the statute to restrain Microsoft's speech in the future.[1]  A declaration will

8  redress Microsoft's injury because it "settl[es] … some dispute *which affects the behavior of the*

9  *defendant towards the plaintiff*."  *Hewitt v. Helms*, 482 U.S. 755, 761 (1987).[2]  Injury from the

10  repetitive issuance of orders pursuant to a challenged statute is "redressible [sic] by a declaratory

11  judgment finding such practices unconstitutional."  *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 127

12  (D.C. Cir. 2010) (declaratory judgment could redress injury from 60 orders under EPA-

13  administered statute).  "It can scarcely be doubted that, for a plaintiff who ... faces the threat of

14  future injury due to illegal conduct ongoing at the time of suit, [relief] that effectively abates that

15  conduct and prevents its recurrence provides a form of redress."  *Friends of the Earth, Inc. v.*

16  *Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185-86 (2000).

17         The Government ignores these principles.  Instead, it suggests a declaratory judgment can

18  do nothing more than encourage other courts to revisit earlier orders.  MTD 8:24-26.  But

19  Microsoft asks the Court to grant relief against the Government, the party that requests Section

20  2705(b) orders, ***not*** against courts.  That relief will prevent the Government from continuing to

21  seek secrecy orders of indefinite duration or based on constitutionally insufficient grounds—and

22  preclude the Government from opposing any motions by Microsoft to lift improper secrecy

23

24  [1] It makes no difference that Microsoft has not yet received these future orders, for no case or legal principle requires that it risk prosecution or contempt to establish injury-in-fact.  *See Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965) ("Because of the sensitive nature of constitutionally protected expression, we have not required that all of those subject to overbroad regulations risk prosecution to test their rights.").  It is enough that Microsoft was "forced to modify its speech and behavior to comply with the statute."  *Bayless*, 320 F.3d at 1006.  Indeed, the "*threat* of the prior restraint itself constitutes [an] injury-in-fact."  *Get Outdoors II*, 506 F.3d at 895.

26  [2] The Government's prudential, comity-based argument, MTD 12-13, fails for the same reason.  Microsoft is not bringing a collateral attack on other courts' orders; rather, it seeks a judgment that will be binding on the Government when it seeks secrecy orders in other courts.  *See Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986) ("The only persons bound by any declarations would be the [governmental] defendants themselves.").

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 6

orders.  *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co. (AZ)*, 632 F.3d 1111, 1123 (9th Cir. 2011) (declaratory judgments are "legally binding on the parties").  This relief redresses Microsoft's injury, particularly as a "plaintiff ... need not show that a favorable decision will relieve his *every* injury."  *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982).  "A plaintiff meets the redressability requirement if it is likely, although not certain, that his injury can be redressed by a favorable decision."  *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010); *see also Massachusetts v. EPA*, 549 U.S. 497, 526 (2007) (injury redressable where risk of harm "would be reduced **to some extent**" if petitioners prevailed) (emphasis added).  In short, telling the Government what the Constitution requires it to do will provide Microsoft redress.

### 2.      Microsoft Has Stated a First Amendment Claim.

The Government also argues Microsoft has failed to state a claim on which relief may be granted.  The Constitution "gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere."  *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002).  Microsoft has adequately alleged that Section 2705(b) is overbroad because it imposes prior restraints and content-based restrictions on protected speech without, in a substantial number of instances, satisfying the constitutionally required strict scrutiny.

### a.      Microsoft Has Adequately Alleged the Overbreadth Doctrine Applies to Section 2705(b).

A "law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011) (en banc) (quotation marks omitted).  "The party challenging the law need not necessarily introduce admissible evidence of overbreadth, but generally must at least describe the instances of arguable overbreadth of the contested law."  *Id.*  Quoting *Parker v. Levy*, 417 U.S. 733, 759 (1974), the Government argues Microsoft cannot invoke the overbreadth doctrine because "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the court."  MTD 14:20-26.  But *Parker* recognized that "[i]n the First Amendment context, attacks

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 7

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

have been permitted on overly broad statutes with **no** requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity."  417 U.S. at 759 (emphasis added) (quotation marks omitted).  Even if *Parker* held what the Government claims, its argument ***still*** fails:  Microsoft does not (and need not) rely on the unconstitutional application of Section 2705(b) "to others," *id.*; instead, it bases its allegations on the thousands of unconstitutional secrecy orders that stifle ***its own*** speech.[3]

The Government also argues that since every Section 2705(b) order must be different, the Court cannot analyze the statute's overbreadth as a whole.  MTD 15:8-20.  But the Government identifies no support for this assertion, and it makes no sense.  If two orders share the same constitutional defect, the fact that the underlying cases differ in other ways is irrelevant.  For example, Microsoft has alleged the Government routinely uses Section 2705(b) as the basis for secrecy orders of limitless duration, which are constitutionally infirm on their face.  FAC ¶ 16; *infra* at III.A.2.c(1).  Microsoft has also alleged that two other constitutional defects in Section 2705(b)—the vague and unduly permissive "reason to believe standard" and undefined catch-all for "otherwise seriously jeopardizing an investigation or unduly delaying a trial"—are apparent on the face of the statute.  *Id.* ¶¶ 29-30.  If any one of these provisions is invalid, the statute is unconstitutional on its face; Microsoft need not allege more to state an overbreadth claim.  *See N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988) (overbreadth can be demonstrated "from the text of [the law] and from actual fact that a substantial number of instances exist in which the Law cannot be applied constitutionally").[4]

> **b.**  **Microsoft Has Adequately Alleged Secrecy Orders Are Prior Restraints and Content-Based Restrictions on Speech Subject to Strict Scrutiny.**

Microsoft has alleged that secrecy orders are prior restraints and content-based restrictions

---

[3] The Government's reliance on *Board of Trustees v. Fox*, 492 U.S. 469, 485 (1989), is equally unavailing.  In *Fox*, the plaintiffs challenged two applications of a statute, only one of which applied to the plaintiffs.  *Id.* at 483-84.  The Court held the overbreadth doctrine allowed the plaintiffs to raise a facial challenge based on the second application, but that it made sense first to decide plaintiffs' as-applied challenge.  *Id.*  Here, again, each unconstitutional aspect of Section 2705(b) of which Microsoft complains has been applied to Microsoft.

[4] The Government suggests Microsoft must instead bring exactly the same constitutional challenge to each secrecy order it receives, but Congress passed the Declaratory Judgment Act precisely to avoid this sort of burden on the courts:  the Act facilitates the "adequate, expedient, and inexpensive" resolution of disputes, thereby avoiding a "multiplicity of actions."  *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1172 (9th Cir. 2002).

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

on speech.  FAC ¶¶ 24-25.  The Government does not (and cannot) dispute either proposition.[5]

Secrecy orders are clearly prior restraints because they represent "predetermined judicial

prohibition[s] restraining specific expression," and they are content-based restrictions because

they "effectively preclude speech on an entire topic—the electronic surveillance order and its

underlying criminal investigation."  *In re Sealing and Non-Disclosure of Pen/Trap/2703(D)*

*Orders* (*In re Sealing*), 562 F. Supp. 2d 876, 881-82 (S.D. Tex. 2008).

      The Government also does not dispute that prior restraints and content-based restrictions

are each subject to strict scrutiny, meaning the Government must establish, among other things,

the restrictions are "narrowly tailored" and there is no "less restrictive alternative."  *United States*

*v. Playboy Entm't Grp.*, 529 U.S. 803, 813 (2000) (*cited at* MTD 17:28-18:1); *Levine v. U.S. Dist.*

*Ct.*, 764 F.2d 590, 595 (9th Cir. 1985) (same for prior restraints).[6]  Strict scrutiny is an exacting

standard, and "[a]ny prior restraint on expression comes to [the] Court with a 'heavy

presumption' against its constitutional validity."  *Org. for a Better Austin v. Keefe*, 402 U.S. 415,

419 (1971); *see also Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) (prior restraints are

"the most serious and the least tolerable infringement on First Amendment rights").  Similarly,

"[i]t is rare that a regulation restricting speech because of its content will ever be permissible."

*Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 799 (2011) (quotation marks omitted).

      Rather than directly challenge the applicability of strict scrutiny, the Government argues

that Microsoft's speech rights are merely confined because the company ***may*** discuss aggregate

information about secrecy orders and is gagged only from disclosing "limited information" about

specific cases.  MTD 16:20-22.  But "[t]he First Amendment's guarantee of free speech does not

extend only to categories of speech that survive an ad hoc balancing of relative social costs and

---

[5] The Government does question whether Section 2705(b) imposes "typical prior restraints."  MTD 16:24-17:4 (quoting *Doe v. Mukasey*, 549 F.3d 861, 863, 877 (2d Cir. 2008)).  But its ensuing argument (17:5-25) focuses on the procedural safeguards for prior restraints, articulated in *Freedman v. Maryland*, 380 U.S. 51 (1965), which apply only to "censorship statutes" that (unlike the law here) impose prior restraints without judicial involvement.

[6] For content-based restrictions, strict scrutiny requires that the restriction must be "narrowly tailored to promote a compelling Government interest."  *Playboy Entm't*, 529 U.S. at 813.  For prior restraints, strict scrutiny imposes an even greater burden on the Government, i.e., it must show that "the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest."  *Levine*, 764 F.2d at 595.  Section 2705(b) fails even the less exacting test, as discussed below.

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 9

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

benefits"; instead, "[t]he First Amendment itself reflects a judgment by the American people that the benefits of its restrictions on the Government outweigh the costs." *United States v. Stevens*, 559 U.S. 460, 470 (2010). Here, both categories of speech—aggregate numbers and case-specific facts—concern core governmental activity, and "there is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs." *Mills v. Alabama*, 384 U.S. 214, 218-19 (1966).

Further, the Government is wrong to cast Microsoft's customer communications as having "purely private significance." MTD 16:17. If Microsoft cannot tell its customers they are subject to government surveillance, "the individual targets may never learn that they had been subjected to such surveillance, and this lack of information will inevitably stifle public debate about the proper scope and extent of this important law enforcement tool." *In re Sealing*, 562 F. Supp. 2d at 882.[7] Indeed, in many instances, *only* the customer will be able to grasp the significant public import of the Government's surveillance activity—as when the Government collects information on a whistleblower or members of the media, or engages in impermissible profiling.

Finally, the Government tries to avoid strict scrutiny on the theory that Microsoft becomes aware of the legal process "only through participation in investigative process" and therefore has no right to discuss it, analogizing to grand jury and judicial misconduct proceedings. MTD 15:22-16:11; 16:24-25. The Government gives short shrift, however, to the First Amendment protections afforded in such proceedings. *See Butterworth v. Smith*, 494 U.S. 624, 635-36 (1990) (sustaining First Amendment right of grand jury witness to speak publicly about his own grand jury testimony); *see also United States v. Gigliotti*, No. 15-204, slip op. at 8 (E.D.N.Y. Dec. 23, 2015), ECF No. 114 (expressing "serious concern" over "improper directions to [grand jury] subpoena recipients" not to disclose existence of subpoena). In addition, as the Second Circuit recognized in a challenge to national security letters ("NSLs"), the analogy founders on the

---

[7] Barring Microsoft from notifying its customers also inhibits customers from suing the Government over its searches and seizures, i.e., "[l]itigation on matters of public concern [that] may facilitate the informed public participation that is a cornerstone of democratic society." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 390, 397 (2011) (petitioning the Government for redress may "take[] the form of a lawsuit against the government"). Further, Microsoft has third-party standing to assert the First Amendment rights of its customers, who receive no notice and therefore cannot exercise their own First Amendment rights to speak out about the government scrutiny. *See infra* at 16-20.

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 10

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

different interests at stake.  In grand jury and judicial misconduct proceedings, the "interests in secrecy arise from the nature of the proceeding," such as the interest in "enhancing the willingness of witnesses to come forward," and restrictions on speech are temporally limited to the period of the proceeding.  *Doe*, 549 F.3d at 876-77.  In contrast, Section 2705(b) orders often *lack* temporal limitations, FAC ¶16, and are not supported by the same interests.  *See also In re Nat'l Sec. Letters*, No. 11-cv-2173, slip op. at 21 (N.D. Cal. Mar. 29, 2016) (rejecting same analogies for NSLs).  On the facts Microsoft alleges, strict scrutiny applies to Section 2705(b).[8]

### c. Microsoft Has Adequately Alleged Section 2705(b) Fails to Satisfy Strict Scrutiny.

Microsoft's has identified three unconstitutional aspects of Section 2705(b):  the allowance of indefinite orders, the "reason to believe" standard, and the overbroad catch-all provision.  FAC ¶¶ 28-30.  Microsoft has sufficiently alleged that a substantial number of Section 2705(b)'s applications cannot survive strict scrutiny.  *Comite de Jornaleros*, 657 F.3d at 944.

### (1) Section 2705(b) allows unnecessarily long and indefinite secrecy orders.

Section 2705(b) does not prohibit indefinite orders or prescribe any mechanism for periodic review, as other statutes do.  As a result, nearly two-thirds of the secrecy orders Microsoft has received in the last two years (including almost *all* of the orders in this District) are indefinite.  FAC ¶¶ 5, 16.  Even though the word "'indefinite' appears nowhere in the text of 2705(b)," as the Government says, MTD 15:16-17, Microsoft received more than 2,000 secrecy orders between September 2014 and May 2016 (more than four every working day) with *no time limitation* at all.  FAC ¶ 16.  In this District alone, Microsoft received at least 63 orders, which almost without exception contain no time limit—so they continue to bind Microsoft to silence.  *Id.*  And contrary to what the Government claims, these numbers do *not* include "orders that terminate on a specific, yet indeterminate date, e.g., when an indictment issues," MTD 8:2-4; instead, they continue *in perpetuity* unless lifted by another order.

---

[8] The Government equates secrecy orders to "nondisclosure orders issued in civil discovery."  MTD 16:5.  But "[t]he concerns that justif[y] restrictions on a civil litigant's pre-trial right to disseminate confidential business information obtained in discovery … are manifestly not the same as the concerns raised in this case.  Here, the concern is the government's ability to prevent individuals from speaking out about the government's use of [secrecy orders], a subject that has engendered extensive public and academic debate."  *In re NSL*, slip op. at 20-21 (addressing NSLs).

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 11

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

"As a rule, sealing and non-disclosure of electronic surveillance orders must neither be permanent nor, what amounts to the same thing, indefinite." *In re Sealing*, 562 F. Supp. 2d at 895. Indefinite secrecy orders, such as the thousands at issue here, fail strict scrutiny because, by definition, they are not narrowly tailored, i.e., they necessarily extend beyond the time needed to serve any government interest (even assuming the interest is compelling). *See In re Grand Jury Subpoena for: [Redacted]@yahoo.com*, 79 F. Supp. 3d 1091, 1091 (N.D. Cal. 2015) (refusing indefinite order because it "would amount to an undue prior restraint of Yahoo!'s First Amendment right to inform the public of its role in searching and seizing its information"); *In re Search Warrant for: [Redacted]@hotmail.com*, 74 F. Supp. 3d 1184, 1186 (N.D. Cal. 2014) (construing Section 2705(b) to require fixed end date given the "First Amendment rights of both Microsoft and the public"); *In re Sealing*, 562 F. Supp. 2d at 895 (setting default length of 2705(b) orders at 180 days); *United States v. Apollomedia Corp.*, 2000 WL 34524449, at *3 (5th Cir. June 2, 2000) (observing "substantial constitutional questions raised by a nondisclosure order without any limitation as to time"). Worse yet, publicly available information (which Microsoft expects discovery will supplement) shows the Government commonly leaves secrecy orders in force long after the grounds for secrecy disappear—a practice with no constitutional justification.

Although the Government claims courts have upheld indefinite gag orders in other contexts, it invokes only inapposite examples. It cites grand jury secrecy rules, MTD 18:18-19:8, but those rules are justified by different interests than Section 2705(b) orders, *Doe*, 549 F.3d at 876-77, and even in the grand jury context, courts have found indefinite restraints on speech unconstitutional. *Butterworth*, 494 U.S. at 635-36; *see also In re Grand Jury Subpoena for: [Redacted]@yahoo.com*, 79 F. Supp. 3d at 1094 (holding *Butterworth* weighs against permitting indefinite orders under Section 2705(b)). And *Times Mirror Co. v. United States*, 873 F.2d 1210, 1214-16 (9th Cir. 1989), addressed the public's right to access sealed warrant materials, ***not*** a restriction on speech—let alone the content-based restriction at issue here.[9]

---

[9] Even in the context of warrant materials, the Government is wrong to suggest that courts uphold indefinite sealing orders. In *Times Mirror*, the Ninth Circuit "held that the public has no qualified First Amendment right of access to warrant materials during the pre-indictment stage of an ongoing criminal investigation, but [the court] expressly reserved whether the public has a constitutional right of access after an investigation has been terminated." *United*

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 12

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

At the same time, the Government ignores analogous statutory frameworks—including within ECPA—that forbid it from keeping customers in the dark indefinitely. For some forms of legal process, ECPA requires the Government itself to notify the customer. *See* 18 U.S.C. § 2703(b)(1)(B). In those instances, the Government may delay notice if it makes a showing based on the same five considerations set out in Section 2705(b)—but ***only*** for renewable 90-day periods. 18 U.S.C. § 2705(a). This framework sets forth a congressionally determined "less restrictive alternative," imposing a lesser burden on speech while satisfying exactly the same Government interests. Similarly, the "sneak and peek" warrant statute, 18 U.S.C. § 3103a— which permits surreptitious physical searches—presumes notice will be provided to the target "within a reasonable period not to exceed 30 days," absent case-specific facts justifying a longer period. And because surreptitious searches are so exceptional, the statute requires courts to "report to the Administrative Office of the United States Courts" and provide detailed information about ***any*** "warrant authorizing delayed notice." 18 U.S.C. § 3103a(d).[10]

Finally, the Government argues that indefinite orders do not mean what they say, and are not really permanent bars on disclosure, because Microsoft can challenge an order at any time. MTD 19:23-20:6. But "nothing in the statute suggests putting the burden on the provider to guess that circumstances might have changed so that a request to lift the order is warranted." *In re Grand Jury Subpoena for: [Redacted]@yahoo.com*, 79 F. Supp. 3d at 1094. To the contrary, ***the Government*** bears "a heavy burden of showing justification for the imposition of such a restraint." *Keefe*, 402 U.S. at 419. The Government cites *Doe v. Holder*, 665 F. Supp. 2d 426, 433 (S.D.N.Y. 2009), to argue that private companies carry this burden in the NSL context. MTD

___

*States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1194-95, 1196 (9th Cir. 2011). Many courts have recognized a First Amendment ***and*** common law right of access once an investigation ends. *See In re App. of Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990); *Balt. Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989). Apart from unconstitutionally restraining providers' speech, Section 2705(b) infringes the right of access because the public and press may have no idea a warrant has issued and thus no basis to move for unsealing matters of public interest.

[10] The most recent federal report on Section 3103a "sneak and peek" warrants shows the average period of delay before notice is only 65 days. *See* 2014 Report of the Dir. of the Admin. Office of the U.S. Courts on Applications for Delayed-Notice Search Warrants and Extensions, at 3 (reporting average delay for "all circuits"), *available at* http://www.uscourts.gov/statistics-reports/analysis-reports/delayed-notice-search-warrant-report. Further, based on patterns in orders it has received—most still under seal—Microsoft has reason to believe it is standard practice in a few of the largest federal districts to include definite time limits in Section 2705(b) orders. These district-specific practices, which Microsoft expects discovery will corroborate, show the Government can live with less restrictive restraints on providers' speech while still protecting the integrity of its investigations.

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 13

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

20:1-2.  But more recent NSL decisions put the burden on the Government to review the necessity of such restraints periodically.  *See In re Nat'l Sec. Letters*, No. 16-518, slip op. (D.D.C. July 25, 2016) (requiring review every three years); *Lynch v. [Under Seal]*, No. 15-1180, slip op. at 4 (D. Md. Sept. 17, 2015), ECF No. 26-10 (requiring review every 180 days).

### (2)   Section 2705(b)'s "reason to believe" standard and catch-all category fail to ensure orders are narrowly tailored.

"A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy."  *Frisby v. Schultz*, 487 U.S. 474, 485 (1988).  Section 2705(b) falls short of this standard because it authorizes gag orders without requiring a constitutionally sufficient showing of case-specific facts to justify a content-based prior restraint.

Section 2705(b) requires a court to enter a secrecy order if it determines there is "reason to believe" disclosure would result in one of four enumerated adverse events—or result in "otherwise seriously jeopardizing an investigation or unduly delaying a trial."  Invoking this standard, the Government has justified secrecy orders by alleging generically that (1) not all targets are aware of the underlying investigation and (2) some relevant evidence is stored electronically; such "boilerplate applications" have been "routinely granted for a long time."  *In re Fifteen Subpoenas*, No. 16-MC-1300, slip op. at 2-3, 8 n.7 (E.D.N.Y. May 12, 2016), ECF No. 2.  Through discovery, Microsoft intends to show how commonly the Government has succeeded with this sort of Section 2705(b) application.[11]  But allowing secrecy orders predicated on these assertions, which apply to almost any investigation, makes secrecy the impermissible rule, not the constitutionally delimited exception.  *See id.* (rejecting 15 "identical" boilerplate applications).

Ignoring Microsoft's allegations (FAC ¶ 29, 30), the Government asks the Court to find as a factual matter on this Rule 12 Motion that its use of boilerplate is excusable, arguing secrecy orders *may* seek to prevent common harms and so the reasons for an order can be "described generally."  MTD 18:20-26 n.13.  But boilerplate assertions make it "impossible [for the court] to

---

[11] These generic assertions, and similar boilerplate, appear in a significant number of the secrecy order applications Microsoft has received, which it intends to produce in discovery.  In addition, Microsoft intends to introduce evidence showing that, of the more than 3,250 secrecy orders it received in the 20-month period ending in May 2016, more than 95% relied, at least in part, on the catch-all provision.

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 14

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

make the factual determination necessary for a non-disclosure order," *In re Fifteen Subpoenas*, slip op. at 7-8, all the more so because providers typically do not see, and thus cannot contest, the applications. Further, if the Government fails to justify its nondisclosure requests using case-specific facts, courts cannot narrowly tailor secrecy orders, as the Constitution requires. For this reason, courts require case-specific showings even in areas where the First Amendment demands less scrutiny, such as in cases restricting public access to court records. The Government quotes, for example, *Virginia Department of State Police v. Washington Post*, 386 F.3d 567, 579 (4th Cir. 2004), for the "principle that a compelling governmental interest exists in protecting the integrity of an ongoing law enforcement investigation." MTD 18:5-7. But the Fourth Circuit continued:

> [I]t is not enough simply to assert this general principle without providing **specific underlying reasons** for the district court to understand how the integrity of the investigation reasonably could be affected by the release of such information. Whether this general interest is applicable in a given case will depend on **the specific facts and circumstances** presented in support of the effort to restrict public access.

386 F.3d at 579 (emphasis added). So too here.

Further, Section 2705(b)'s "reason to believe" standard offers no guidance as to the evidentiary burden the government bears in justifying a secrecy order. Rather than defend this standard, the Government cites **other** standards that, it argues, pass constitutional muster. MTD 21:3-11. It points to right-of-access cases, for example, where nondisclosure is warranted unless the "need for disclosure is greater than the need for continued secrecy." *In re Grand Jury Proceedings*, 62 F.3d 1175, 1179 (9th Cir. 1995). Setting aside that these cases do not involve strict scrutiny, the balancing standard in *In re Grand Jury Proceedings* provides **more** guidance than the mere "reason to believe" standard in Section 2705(b). Similarly, even in the national security context, courts construe "reason to believe" as "**good** reason to believe" to address First Amendment concerns. *Doe*, 549 F.3d at 876 (construing nondisclosure standard in NSL statute) (emphasis added). The Government's examples only underscore the constitutional infirmities with Section 2705(b)'s "reason to believe" standard.

The catch-all category in Section 2705(b) compounds the constitutional defect. Microsoft does not dispute that delay of a trial or jeopardy to an investigation may, in rare cases, provide a compelling reason to require secrecy. But Section 2705(b)(5) is not narrowly tailored to these

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

circumstances, requiring no consideration of less restrictive means than secrecy orders to address those interests.  As written, the catch-all and lax "reason to believe" standard may be (and have been) applied in many instances to allow secrecy orders that fall outside the "narrowly defined exceptions to the prohibition against prior restraints."  *Neb. Press Ass'n*, 427 U.S. at 592.

### 3.    Microsoft Has Properly Alleged Both Facial and As-Applied First Amendment Challenges to Section 2705(b).

Microsoft adequately alleges that these defects make Section 2705(b) unconstitutional on its face.  But Microsoft's complaint also adequately claims that the provision is unconstitutional as applied to Microsoft.  The distinction between facial and as-applied challenges "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010).  "The substantive legal tests used in facial and as-applied challenges are 'invariant'"; the difference between the claims "affect[s] the breadth of the relief to which plaintiffs are entitled," but not the court's "jurisdiction to entertain the suit or the constitutional standards" it applies.  *Isaacson v. Horne*, 716 F.3d 1213, 1230 (9th Cir. 2013).  Here, Microsoft alleges it has been subject to thousands of unconstitutional Section 2705(b) orders, and it needs declaratory relief to redress the Government's conduct.  FAC ¶ 16.  These allegations state both facial and as-applied claims; the only difference between the theories is the ultimate "remedy employed by the Court." *Citizens United*, 558 U.S. at 331.

### B.    Microsoft Has Stated a Claim that Sections 2703 and 2705(b) Violate the Fourth Amendment.

### 1.    Microsoft Has Standing to Assert a Fourth Amendment Claim on Behalf of its Customers.

The Government concedes Microsoft's customers have a Fourth Amendment privacy interest in the contents of information stored in the cloud—just as they would in materials stored in home file cabinets.  MTD 9:16-10:8.  "[E]mail requires strong protection under the Fourth Amendment; otherwise, the Fourth Amendment would prove an ineffective guardian of private communication, an essential purpose it has long been recognized to serve." *United States v. Warshak*, 631 F.3d 266, 286 (6th Cir. 2010).  "Personal email can, and often does, contain all the information once found in the 'papers and effects' mentioned explicitly in the Fourth Amendment." *In re Grand Jury Subpoena*, __ F.3d __, 2016 WL 3745541, at *5 (9th Cir. July

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 16

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

13, 2016).  The same principles apply to other content stored in the cloud—what the Supreme

Court has recognized as "the sum of an individual's private life."  *Riley v. California*, 134 S. Ct.

2473, 2489, 2491 (2014); *see also United States v. Cotterman*, 709 F.3d 952, 965 (9th Cir. 2013)

(en banc).  Sections 2703 and 2705(b) threaten these Fourth Amendment interests by providing a

vehicle for the Government to search protected customer content under a shroud of secrecy.[12]

Although it concedes the Fourth Amendment applies to customer content in the cloud, the

Government argues Microsoft lacks standing to vindicate its ***customers'*** Fourth Amendment right

to reasonable notice of a search and seizure.  MTD 11:5-14.  But the rule against third-party

standing is simply a "'rule of self-restraint' designed to minimize unwarranted intervention into

controversies where the applicable constitutional questions are ill-defined and speculative."

*Craig v. Boren*, 429 U.S. 190, 193-94 (1976).  The policies underlying that "rule of practice" are

"outweighed by the need to protect … fundamental rights" when "it would be difficult if not

impossible for the persons whose rights are asserted to present their grievance before any court."

*Barrows v. Jackson*, 346 U.S. 249, 257 (1953).  Thus, a litigant may assert another's rights

> provided three important criteria are satisfied:  [1] The litigant must have suffered an
> "injury in fact," thus giving him or her a "sufficiently concrete interest" in the
> outcome of the issue in dispute; [2] the litigant must have a close relation to the third
> party; and [3] there must exist some hindrance to the third party's ability to protect
> his or her own interests.

*Powers v. Ohio*, 499 U.S. 400, 411 (1991) (internal citations omitted).  The Government concedes

*Powers* controls, MTD 11:8-11, and *Powers* authorizes Microsoft's Fourth Amendment claim.

***Injury in Fact***.  Sections 2703 and 2705(b) "erod[e] the customer trust that encourages

individuals and businesses to migrate their technological infrastructure to Microsoft's cloud."

FAC ¶ 39.  As explained above, Microsoft suffers business injury as a result of being conscripted

to facilitate the Government's secret surveillance of its customers.  *Supra* at 4-5.  Microsoft also

"faces an injury in the nature of the burden that it must shoulder to facilitate the government's

---

[12] The Government argues customers lack a Fourth Amendment privacy interest in ***non***-content information such as "names, IP addresses, or other basic subscriber data."  MTD 9:21-28 (citing *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008)).  But the degree to which users have a protectable interest in non-content information is a matter of debate.  *See United States v. Jones*, 132 S. Ct. 945, 957 (2012) (Sotomayor, J., concurring).  Because the Government concedes customers' privacy interest in content information, the Court need not now decide whether customers have a protectable privacy interest in non-content information:  either way, the case should proceed.

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 17

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1   surveillances of its customers." *In re Directives Pursuant to Section 105b of the Foreign*

2   *Intelligence Surveillance Act*, 551 F.3d 1004, 1008 (FISA Ct. Rev. 2008).

3       ***Close Relation***.  The "close relationship" requirement "is not formidable."  *United States*

4   *v. $100,348 of U.S. Currency*, 354 F.3d 1110, 1127-28 (9th Cir. 2004).  Courts find

5   constitutionally sufficient relationships to include vendor-client, physician-patient, attorney-

6   client, employee-employer, electoral candidate-voter, and school board-student.  *Id*.  In *Craig*, for

7   example, the Supreme Court found a liquor store owner had standing to assert equal protection

8   rights of underage males to whom she wanted to sell 3.2% beer.  429 U.S. at 195.

9       Microsoft's relationship with its customers easily passes muster.  Unlike *Craig*'s underage

10  beer purchasers, Microsoft's customers entrust a "cache of sensitive personal information" to

11  Microsoft.  *See Riley*, 134 S. Ct. at 2490.  The Government ignores the intimate nature of the

12  relationship between an ISP and its customer, purporting to distinguish *In re Verizon Internet*

13  *Servs., Inc.*, 257 F. Supp. 2d 244 (D.D.C. 2003), *rev'd on other grounds*, 351 F.3d 1229 (D.C.

14  Cir. 2003), on the ground that it supposedly turned on unique aspects of First Amendment law.

15  MTD 11:15-19.  But *Verizon* was not so limited:  "The relationship between an Internet service

16  provider and its subscribers is the type of relationship courts have found will ensure that issues

17  will be 'concrete and sharply presented.'"  257 F. Supp. 2d at 258.  Just as "Verizon ha[d] a

18  vested interest in vigorously protecting its subscribers' First Amendment rights, because a failure

19  to do so could affect Verizon's ability to maintain and broaden its client base," *id*., Microsoft has

20  a vested interest in protecting its subscribers' Fourth Amendment rights, because a failure to do

21  so threatens the integrity of Microsoft's cloud business.  FAC ¶ 39.

22      ECPA's structure recognizes "the special role of the service provider vis-à-vis the content

23  that its customers entrust to it."  *Microsoft Corp. v. United States*, __ F.3d __, 2016 WL 3770056,

24  at *18 (2d Cir. Jul. 14, 2016).  The violation of customers' constitutional rights in Section 2703

25  sets the stage—indeed, it is the necessary predicate—for the violation of Microsoft's rights under

26  Section 2705(b).  Section 2703(b)(1)(A) allows the Government to obtain the contents of

27  communications from a provider "without required notice to the ... customer, if the governmental

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 18

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure." This allows the Government to keep a customer in the dark. But ECPA recognizes that providers, because of their close relationship with customers, might tell customers about warrants, negating the Government's desire for secrecy. As a result, under Section 2705(b), if the Government "is not required to notify the ... customer under section 2703(b)(1) ... [it] may apply to a court" for an order preventing the provider from disclosing the warrant. Section 2703's authorization of a search and seizure without notice is thus the first step in violating a provider's First Amendment rights under Section 2705(b): if the Government *complied* with its Fourth Amendment obligation to notify the customer, it would have no basis to gag the provider.

Section 2703 therefore undeniably "affect[s Microsoft's] conduct," contrary to what the Government argues. MTD 12:4-6. Given this statutory structure, "[t]he closeness of the relationship is patent[.]" *Singleton v. Wulff*, 428 U.S. 106, 117 (1976) (holding providers seeking Medicaid reimbursement for abortion services could assert patients' constitutional arguments against restrictions on reimbursement). The Government cites no case to the contrary.[13]

***Hindrance to Customers' Ability to Protect Their Interests***. Having vigorously contested the right of the ACLU to intervene as a Microsoft customer, *see* Dkt. 33, the Government cannot (and does not) deny "it would be difficult if not impossible for the persons whose rights are asserted [i.e., Microsoft's customers] to present their grievance before any court." *Barrows*, 346 U.S. at 257. "Sections 2703 and 2705(b) combine to thwart any effort by Microsoft's customers to protect their own Fourth Amendment rights." FAC ¶ 39. The Government is not required to give notice under Section 2703, and Microsoft is barred from giving notice under Section 2705(b)—so customers may never know the Government has violated their rights. The "constitutional rights of persons who are not immediately before the Court could not be

---

[13] The Government also argues Fourth Amendment rights cannot be "vicariously asserted" because they are "personal rights." MTD 10:11-11:3 (citations omitted). But as the Supreme Court explained in *Rakas v. Illinois*, 439 U.S. 128, 133 (1978), the cases articulating this principle focus not on "standing" in the Article III sense, but rather on "the substantive question of whether or not the proponent of the motion to suppress has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge." The Government cites no case involving a constitutional challenge in which a litigant invokes third-party standing under *Powers*, where the absent party is hindered from protecting its Fourth Amendment interests.

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 19

1   effectively vindicated except through an appropriate representative before the Court."  *NAACP v.*

2   *Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958).[14]

3          **2.     Microsoft's Customers Have a Fourth Amendment Right to Notice.**

4          The Government declares that Microsoft's customers have no "Fourth Amendment right

5   to notice of legal process issued to Microsoft."  MTD 22:7-9.  Its argument, however, cites no

6   case for that proposition, and it misstates Ninth Circuit law.  In the Ninth Circuit, "the absence of

7   any notice requirement in [a] warrant casts strong doubt on its constitutional adequacy."  *United*

8   *States v. Freitas*, 800 F.2d 1451, 1456 (9th Cir. 1986) (citing *Berger*, 388 U.S. at 60).  The court

9   in *Freitas* explained:

10          [S]urreptitious searches and seizures of intangibles strike at the very heart of the
           interests protected by the Fourth Amendment.  The mere thought of strangers walking
11          through and visually examining the center of our privacy interest, our home, arouses
           our passion for freedom as does nothing else.  That passion, the true source of the
12          Fourth Amendment, demands that surreptitious entries be closely circumscribed.

12  *Id.  Freitas* therefore held that a warrant allowing a surreptitious search of a home was

13  "constitutionally defective in failing to provide explicitly for notice within a reasonable, but short

14  [i.e., not to exceed seven days], time subsequent to the surreptitious entry."  *Id.*[15]

15         The Government seeks to avoid *Freitas* by casting it as a case about the surreptitious

16  search of a ***home***, not files in the cloud, observing "the Fourth Amendment draws a firm line at

17  the entrance to the house."  MTD 23:6-8 (quoting *Kyllo v. United States*, 533 U.S. 27, 40 (2001)).

18  But the Supreme Court adopted that firm line not to make fair game of anything outside the

19

20  _____

21  [14] The Government also urges prudential considerations warrant dismissal of Microsoft's Fourth Amendment claim
    because "Microsoft's interests here are not within the zone of interests protected by the Fourth Amendment."  MTD
    14:1-2.  But this misses the point.  "[I]f the litigant asserts only the rights of third parties, then he may satisfy the
22  zone of interests requirement by reference to the third parties' interest if the court determines both that the litigant has
    third party standing and that the third parties' interests fall within the relevant zone of interests."  *Am. Immigration*
    *Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1357 (D.C. Cir. 2000) (citation omitted).  Microsoft's ***customers'*** right to
23  notice of searches and seizures plainly falls within the Fourth Amendment's zone of interests.

    [15] The Government's argument against a constitutional notice requirement appears primarily in a footnote, where it
24  declares that "[t]he Supreme Court has never ***explicitly*** held that there is any right to *notice* under the Fourth
    Amendment."  MTD 23:25-26 n.18 (citing *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995) (first emphasis added)).
25  But *Wilson* holds that the reasonableness of a search and seizure "may depend in part on whether law enforcement"
    gives prior notice before executing the search, *id.* at 931, so execution of a warrant without prior notice "might be
    unreasonable under the Fourth Amendment, *id.* at 934.  Nothing in *Wilson* suggests it would be proper to execute a
26  warrant without ***ever*** providing notice to the target—as Section 2703 allows.  Indeed, notice is so fundamental that
    courts addressing the issue do not ask ***whether*** notice is required—but only ***when*** and ***how*** it must be given.  *See*
27  *Dalia v. United States*, 441 U.S. 238, 248 (1979) (Wiretap Act "provided a constitutionally adequate substitute for
    advance notice by requiring that once the surveillance operation is completed the authorizing judge must cause notice
    to be served on those subjected to surveillance.").  And in this Circuit, *Freitas* controls on the notice issue.

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 20

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

home; instead, the Fourth Amendment protects the home because it has been regarded as central to "the privacies of life."  *Berger*, 388 U.S. at 58; *see also Freitas*, 800 F.2d at 1456 (calling home "the center of our privacy interest").  The Fourth Amendment "protects people, not places." *Jones*, 132 S. Ct. at 950 (citations and quotation marks omitted).  Where a person's "privacies of life" lie outside the home, the Government must give notice when it searches them.  *United States v. Johns*, 851 F.2d 1131, 1134-35 (9th Cir. 1988) (applying *Freitas* to storage unit).

 *Freitas* thus establishes that people who store files at home have a right to notice of a warrant for those files, and *Johns* extends the principle to files in a rented storage unit.  Without citing authority, however, the Government argues a homeowner has no right to notice of a warrant for ***electronic*** files stored in the cloud.  This distinction makes no sense:  the cloud functions as an extension of the home or office, where individuals and businesses in modern life store intimate personal and professional details.  "[I]ndividuals increasingly keep their emails and documents on remote servers owned by third parties," and businesses "have ... migrated their information technology infrastructure to servers hosted by providers such as Microsoft, which offer ... the ability to access correspondence and other documents from any device."  FAC ¶ 3. People use the cloud to store "the privacies of life," *Riley*, 134 S. Ct. at 2495 (quotation marks omitted), which in the past would have resided in a file cabinet (or on a computer) in a person's home or office.  "In the 'cloud,' a user's data, including the ***same kind of highly sensitive data one would have in 'papers' at home***, is held on remote servers rather than on the device itself.  The digital device is a conduit to retrieving information from the cloud, akin to a key to a safe deposit box."  *Cotterman*, 709 F.3d at 965 (emphasis added).

 The fact that individuals and businesses now store their most private papers on "remote servers rather than on" personal computers or in file cabinets "does not make the information any less worthy of the protection for which the Founders fought."  *Riley*, 134 S. Ct. at 2491, 2495. "As for documents that we store in the Cloud, our privacy interest there is the same as that recognized in documents and other items maintained in a rented office or residence, or a hotel room during a paid visit."  *United States v. Davis*, 785 F.3d 498, 530 (11th Cir. 2015)

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 21

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

(Rosenbaum, J. concurring).  To ignore this shift in the locus of the privacies of life, as the Government urges, would violate the principle that "the Fourth Amendment must keep pace with the inexorable march of technological progress, or its guarantees will wither and perish." *Warshak*, 631 F.3d at 285; *see also Kyllo*, 533 U.S. at 34 (evolving technology must not be permitted to "erode the privacy guaranteed by the Fourth Amendment").

The Government never comes to grips with these principles, intoning instead that the Constitution has been satisfied because the Government obtained a warrant from an independent magistrate based on a showing of probable cause.  MTD 22:7-15.  To be sure, these safeguards are bedrock protections of the Fourth Amendment, but they do not cure the Government's failure to provide notice.  Indeed, both *Berger* and *Freitas* found warrants issued by magistrates lacking for failure of notice.  *Berger*, 388 U.S. at 59-60; *Freitas*, 800 F.2d at 1455-56.

The Government fares no better with the cases it cites, which either have nothing to do with surreptitious government activity or apply the wrong law.  In *Newfield v. Ryan*, 91 F.2d 700, 701 (5th Cir. 1937), and *In re Horowitz*, 482 F.2d 72, 75-80 (2d Cir. 1973) (*cited at* MTD 22:20-22), customers of a telegraph company and an accountant, respectively, *had* notice of subpoenas seeking their records; indeed, the customers appeared and moved to quash those subpoenas.  The Rule 41 cases on which the Government relies, *United States v. Bansal*, 663 F.3d 634, 662-63 (3d Cir. 2011), and *United States v. Scully*, 108 F. Supp. 3d 59, 83-89 (E.D.N.Y. 2015), likewise have no bearing.  In *Bansal*, the court did not discuss whether the Fourth Amendment requires notice of a warrant.[16]  And in *Scully*, the court noted the Second Circuit does *not* follow *Freitas* in requiring notice under the Fourth Amendment.  *Scully*, 108 F. Supp. 3d at 88 (declining to follow *Freitas* because "the Second Circuit has declined to engraft a notice requirement onto the Fourth Amendment").  In this Circuit, *Freitas* governs, and it mandates notice to Microsoft's customers.

---

[16] Even if Rule 41(f)(1)(C)'s requirement of a "receipt" could be satisfied by leaving a copy of the warrant with a provider like Microsoft, *Freitas* holds the Fourth Amendment requires notice to the *owner* of the private papers and files the government has searched.  Without notice, customers have no way to assert their constitutional rights in the face of Government intrusion.  *See In re Up N. Plastics, Inc.*, 940 F. Supp. 229, 232 (D. Minn. 1996) (Fourth Amendment "is meaningless without some way for targets of the search to challenge the lawfulness of that search").

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 22

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Finally, the Government attacks a straw man when it argues that customers' Fourth Amendment right to notice has "no bearing on the constitutionality of Section 2705(b)." MTD 23:12-14. Microsoft agrees Section 2705(b) alone would not violate the Fourth Amendment. But it combines with Section 2703 to make it possible for the Government to keep Microsoft's customers (and the public) in the dark about surreptitious law enforcement activity, allowing it to access private content without notice to the owners of that content. Section 2705(b) "exacerbates the constitutional injury because ... it permits secrecy orders that prohibit providers from telling customers when the government has accessed their private information and data." FAC ¶ 35.

### 3. The Government's Arguments as to the Form of Microsoft's Fourth Amendment Challenge Lack Merit.

The Government attacks the form of Microsoft's pleading, asserting its Fourth Amendment claims "fail to meet the standard for a valid facial challenge" and that its as-applied challenge is "a nullity" because "Microsoft has not pleaded a concrete challenge based on a specific instance." MTD 24:2-3, 24:20-23. Neither argument withstands close examination.

Contrary to the Government's implication, "facial challenges under the Fourth Amendment are not categorically barred or especially disfavored." *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2449 (2015). Indeed, the Supreme Court has declared laws facially invalid where they authorize unreasonable searches and seizures. *Id*. at 2450 (citing cases). And a party need not show a statute is unconstitutional "in all applications" to sustain a facial challenge, as the Government suggests—without discussing the Supreme Court's decision in *Patel*. *See* MTD 24:4-5 (relying on the Ninth Circuit decision in *Patel*). Rather, a statute authorizing searches and seizures in violation of the Fourth Amendment may be invalid on its face even if it encompasses some conduct that might satisfy the Constitution. *Patel*, 135 S. Ct. at 2450-51; *Red Eye Jacks Sports Bar Inc. v. City of San Diego*, 2015 WL 4192787, at *7 (S.D. Cal. July 10, 2015) (applying Ninth Circuit law and rejecting "no set of circumstances" standard for facial challenges). Any other approach "would preclude facial relief in every Fourth Amendment challenge to a statute authorizing warrantless searches." *Patel*, 135 S. Ct. at 2451; *see also Free Speech Coalition, Inc. v. Attorney Gen.*, 825 F.3d 149, 164-65 (3d Cir. 2016) (applying *Patel*).

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 23

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Microsoft properly alleges that Section 2703 is invalid on its face because it allows ***every*** warranted search and seizure under Section 2703(b)(1) to proceed without notice to the target—regardless of the circumstances and without requiring a magistrate to dispense with (or delay) notice.  *See* FAC ¶ 35.  The Government, however, argues the statute cannot be facially invalid because "Microsoft acknowledges [that] contemporaneous notice is not necessarily required even when the Fourth Amendment applies."[17]  MTD 24:12-14.  In fact, Microsoft recognizes only that another statute authorizes surreptitious searches while including Fourth Amendment protections lacking in Section 2703:  the "sneak-and-peek" statute allows the Government to secretly inspect physical property but ***requires*** notice to the target "within a reasonable period not to exceed 30 days after" executing the warrant, 18 U.S.C. § 3103a(b)(3), allowing a ***court*** to delay notice only on "find[ing] reasonable cause to believe that providing immediate notification of the execution of the warrant may have an adverse result."  18 U.S.C. § 3103a(b)(1); FAC ¶ 22; *see* note 10, *supra* (average delay in notice of 65 days).  Section 2703 lacks these safeguards.  The fact that Congress ***could*** have created a constitutionally sufficient framework for judicially determining whether (and for how long) to defer notice is no basis to dismiss Microsoft's facial challenge.

Finally, the Government's assertion that Microsoft failed to plead an as-applied claim under the Fourth Amendment is no more convincing than its assertion that Microsoft failed to plead an as-applied First Amendment claim, discussed above at 16.  In due course, Microsoft will present evidence of the Government's misuse of Sections 2703 and 2705(b) in violation of the Fourth Amendment.  When the Court fashions a remedy, it may invalidate Sections 2703 and 2705(b) on their face—or employ a narrower remedy tailored to reflect the actual application of the statutes to Microsoft's customers.  But those labels have no bearing on whether Microsoft has stated justiciable claims upon which relief may be granted.  *See Citizens United*, 558 U.S. at 331.

## IV.    CONCLUSION

Microsoft asks the Court to deny the Government's Motion to Dismiss in its entirety.

---

[17] The Government's reference to "contemporaneous notice," MTD 24:12-14, is plainly designed to gloss over one of Section 2703's major flaws:  it authorizes the Government to rummage through the private digital papers of Microsoft's customers without *ever* providing notice, even long after execution of the warrant—in square violation of the rule the Ninth Circuit laid down in *Freitas*.

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 24

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

DATED this 26th day of August, 2016.

Davis Wright Tremaine LLP

By s/ Stephen M. Rummage
    Stephen M. Rummage, WSBA #11168
    Ambika K. Doran, WSBA #38237
    1201 Third Avenue, Suite 2200
    Seattle, WA  98101-3045
    Telephone: 206-757-8136
    Fax: 206-757-7136
    E-mail: steverummage@dwt.com
             ambikadoran@dwt.com

Laura Handman*
Davis Wright Tremaine LLP
1919 Pennsylvania Ave NW #800
Washington, DC 20006
Telephone: (202) 973-4200
Fax: (202) 973-4429
E-mail: laurahandman@dwt.com

James M. Garland*
Alexander A. Berengaut*
Katharine R. Goodloe*
Covington and Burling LLP
One CityCenter
850 10th St., N.W.
Washington, DC 20001
Tel: (202) 662-6000
Fax: (202) 662-6291
E-mail: jgarland@cov.com,
aberengaut@cov.com, kgoodloe@cov.com

Bradford L. Smith
David M. Howard
Jonathan Palmer
Microsoft Corporation
One Microsoft Way
Redmond, WA 98052

*Admitted pro hac vice

Attorneys for Microsoft Corporation

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.  I further hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participant:

Stephen P. Wallace
1116 Sheffer Road – Apt. F
Aurora, IL 60505

DATED this 26th day of August, 2016.

Davis Wright Tremaine LLP
*Attorneys for Microsoft Corporation*

By *s/ Stephen M. Rummage*
Stephen M. Rummage, WSBA #11168
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
Telephone:  (206) 622-3150
Fax:  (206) 757-7700
E-mail:  steverummage@dwt.com

MICROSOFT'S OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 26