1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

MICROSOFT CORPORATION,

Plaintiff,

v.

UNITED STATES DEPARTMENT
OF JUSTICE, et al.,

Defendants.

CASE NO. C16-0538JLR

ORDER ON MOTIONS TO
INTERVENE

## I.   INTRODUCTION

16

17

18

19

20

21

22

Before the court are two motions to intervene:  (1) Stephen P. Wallace's

Emergency Motion to Intervene for Declaratory Judgment Under "Bivens Claim"

Violations (Wallace Mot. (Dkt. # 12)) and (2) the American Civil Liberties Union

Foundation and the American Civil Liberties Union (collectively, "the ACLU")'s Motion

to Intervene (ACLU Mot. (Dkt. #13)).  Microsoft Corporation ("Microsoft") opposes Mr.

Wallace's motion (Microsoft Resp. I (Dkt. # 19)), but does not oppose the ACLU's

motion (Microsoft Resp. II (Dkt # 34)).  Defendant United States Department of Justice ("the DOJ") opposes the ACLU's motion (DOJ Resp. (Dkt. # 33)), but did not respond to Mr. Wallace's motion (*see generally* Dkt.).  Both Mr. Wallace and the ACLU filed reply briefs in support of their motions to intervene.  (Wallace Reply (Dkt. # 32)); (ACLU Reply (Dkt. # 37)).  The court has considered the motions, all related submissions, the balance of the record, and the applicable law.  Being fully advised,[1] the court DENIES the motions to intervene and GRANTS the ACLU amicus curiae status.[2]

## II.  BACKGROUND

This case is about whether the Constitution allows the government to collect a person's electronically stored information from the person's service provider without giving notice to the affected person.  It is also about whether the Constitution permits court orders forbidding service providers from notifying their customers of the government's information requests.  The statutes that allow for these actions—which Microsoft challenges—are part of the Electronic Communications Privacy Act of 1986 ("ECPA").

//

//

----

[1] Although the ACLU requests oral argument on its motion to intervene, the court finds that oral argument is unnecessary to the court's disposition of the motion.  (*See* ACLU Mot. at 1); Local Rules W.D. Wash. LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument.").

[2] On August 26, 2016, the ACLU filed an opposition to the DOJ's pending motion to dismiss.  (*See* Resp. (Dkt. # 43).)  The ACLU requests leave to file its opposition brief as amicus curiae if the court denies the ACLU's motion intervene.  (*Id.* at 1 n.1.)

**A.     ECPA**

ECPA "addresses various areas of electronic surveillance, including wiretaps, tracking devices, stored wire and electronic communications, pen registers, and trap and trace devices." *See United States v. Anderson*, Case No. 2:15-cr-00200-KJD-PAL, 2016 WL 4191045, at *7 (D. Nev. Apr. 27, 2016). ECPA focuses on "two types of computer services" in terms of government surveillance: "electronic communications services (e.g., the transfer of electronic messages, such as email, between computer users) and remote computing services (e.g., the provision of offsite computer storage or processing of data and files)." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1103 (9th Cir. 2014). Accordingly, an electronic communications service provider ("ECS provider") is an entity that provides "any service which provides to users thereof the ability to send or receive wire or electronic communications," 18 U.S.C. § 2510(15), and a remote computing service provider ("RCS provider") is an entity that provides "to the public . . . computer storage or processing services by means of an electronic communications system," 18 U.S.C. § 2711(2). A subscriber is a person who uses those services. *See, e.g.*, *In re Application of the U.S. for an Order Pursuant to 18 U.S.C. § 2705(b)*, 131 F. Supp. 3d 1266, 1268 (D. Utah 2015) (discussing subscribers as those individuals who use electronic communications and remote computing services).

1.   The Stored Communications Act

Title II of ECPA—the Stored Communications Act ("SCA")—governs the government's access to "electronic information stored in third party computers." *In re Zynga*, 750 F.3d at 1104. Two SCA statutes, 18 U.S.C. § 2703 and 18 U.S.C. § 2705,

1    "regulate relations between a government entity which seeks information; a service

2    provider which holds information; and the subscriber of the service who owns the

3    information and is therefore a target of investigation." *In re Application of the U.S.*, 131

4    F. Supp. 3d at 1268.  The information sought from ECS and RCS providers "may contain

5    content or . . . non-content metadata." *Id.*

6              *a.  Section 2703 of the SCA*

7              Section 2703 authorizes the government to acquire a subscriber's information

8    from a service provider when the subscriber is a "target" of the government's information

9    request.  *See* 18 U.S.C. § 2703.  The provision "establishes a complex scheme pursuant to

10   which a governmental entity can, after fulfilling certain procedural and notice

11   requirements, obtain information from [a service provider] via administrative subpoena

12   or grand jury or trial subpoena." *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965,

13   974-75 (C.D. Cal. 2010) (citing 18 U.S.C. § 2703(b)).  Section 2703 requires the

14   government to give notice to subscribers that it has obtained their information from a

15   service provider in some circumstances, but not in others.  *See* 18 U.S.C. § 2703(a)-(c)

16   (describing various notice requirements for communication contents and records in

17   electronic storage and remote computing services).

18             *b.  Section 2705 of the SCA*

19             Section 2705 addresses when the government may withhold notice that is

20   otherwise required under Section 2703.  *See* 18 U.S.C. § 2705(a)-(b); *In re Application of

21   the U.S.*, 131 F. Supp. 3d at 1268.  Under Section 2705(a), the government may delay

22   giving notice to the subscriber that the government has collected the subscriber's

1   information if certain requirements are met; under Section 2705(b), the government may

2   apply for "a preclusion-of-notice order," which "command[s] a provider of electronic

3   communications service or remote computing service not to notify any person of the

4   existence of a grand jury subpoena [or other acceptable court order under the SCA] which

5   the Government has served on the provider." *Id*. at 1267.  A court can issue such a

6   "preclusion-of-notice order" if the court

> determines that there is reason to believe that notification of the existence
> of the warrant, subpoena, or court order will result in (1) endangering the
> life or physical safety of an individual; (2) flight from prosecution; (3)
> destruction of or tampering with evidence; (4) intimidation of potential
> witnesses; or (5) otherwise seriously jeopardizing an investigation or
> unduly delaying a trial.

10  18 U.S.C. § 2705(b).  "The combined effect of [§§ 2703] and 2705(b) is that the

11  subscriber may never receive notice of a warrant to obtain content information from a

12  remote computing service and the government may seek an order under § 2705(b) that

13  restrains the provider indefinitely from notifying the subscriber." *In re Application of the*

14  *U.S.*, 131 F. Supp. 3d at 1271.

15  **B.    Microsoft's Suit**

16          On April 14, 2016, Microsoft, a service provider under ECPA,[3] filed a complaint

17  against the DOJ seeking declaratory relief (Compl. (Dkt. # 1)), and later amended its

18  complaint on June 17, 2016 (Am. Compl. (Dkt. # 28)).  The gravamen of Microsoft's

19  complaint is that Section 2705(b) is unconstitutional under the First and Fourth

---

21          [3] Microsoft is both an ECS provider and an RCS provider.  *See Crispin*, 717 F. Supp. 2d

22  at 978 (citing *United States v. Weaver*, 636 F. Supp. 2d 769, 770 (C.D. Ill. 2009)).

1  Amendments and that Section 2703 is unconstitutional under the Fourth Amendment "to

2  the extent it permits warranted searches and seizures without the government providing

3  notice to the person whose communications are being searched and seized." (*Id.*)

4       In Microsoft's view, "the government has increasingly adopted the tactic of

5  obtaining the private digital documents of cloud[4] customers not from the customers

6  themselves, but through legal process directed at online cloud providers like Microsoft."

7  (*Id.* ¶ 4. (footnote added))  The government then "seeks secrecy orders under 18 U.S.C.

8  § 2705(b) to prevent Microsoft from telling its customers (or anyone else) of the

9  government's demands" for that information.  (*Id.*)  According to Microsoft, "[t]he vast

10  majority of these secrecy orders relate[] to consumer accounts and prevent Microsoft

11  from telling affected individuals about the government's intrusion into their personal

12  affairs; others prevent Microsoft from telling business customers that the government has

13  searched and seized the emails of individual employees of the customer."  (*Id.* ¶ 16.)

14  Microsoft alleges that federal courts have issued "more than 3,250 secrecy orders" over a

15  20-month period ending May 2016.  (*Id.* ¶ 5.)  Nearly two-thirds of the orders are

16  allegedly for an indefinite length of time.  (*Id.*)

17  //

18

19

20

21

22

<hr />

[4] The "cloud" is "a metaphor for the ethereal internet." *In re U.S.'s Application for a Search Warrant to Seize & Search Elec. Devices from Edward Cunnius*, 770 F. Supp. 2d 1138, 1144 n.5 (W.D. Wash. 2011) (internal quotations omitted) (quoting David A. Couillard, *Defogging the Cloud: Applying Fourth Amendment Principles to Evolving Privacy Expectations in Cloud Computing*, 93 Minn. L. Rev. 2205, 2216 (2009)). "An external cloud platform is storage or software access that is essentially rented from (or outsourced to) a remote public cloud service provider, such as Amazon or Google." *Id.*

Microsoft contends that Section 2705(b) is unconstitutional on its face and as applied because it violates the First Amendment right of a business to "talk to [the business's] customers and to discuss how the government conducts its investigations." (*Id.* ¶ 1.)  Specifically, Microsoft contends that Section 2705(b) is overbroad; imposes impermissible prior restraints on speech, imposes impermissible content-based restrictions on speech, and improperly inhibits the public's right to access search warrants.  (*Id.* ¶¶ 23-26.)

Microsoft also alleges that Sections 2705(b) and 2703 are unconstitutional on their faces and as applied because they violate the Fourth Amendment right of "people and businesses . . . to know if the government searches or seizes their property."  (*Id.* ¶ 33.) Microsoft contends that the statutes are facially invalid insofar as they allow the government to forgo giving notice of its searches and seizures, and to obtain secrecy orders that "prohibit providers from telling customers when the government has accessed their private information" without constitutionally sufficient proof and without sufficient tailoring.  (*Id.* ¶ 35.)  Microsoft further alleges that Sections 2703 and 2705(b) are unconstitutional as applied because "[t]he absence of a government notice obligation, combined with the imposition of secrecy orders on Microsoft, has resulted, and will continue to result, in unconstitutional delay of notice to Microsoft's customers, in violation of their Fourth Amendment rights."  (*Id.* ¶ 40.)  Microsoft asserts that it has third-party standing to "vindicate" its customers' rights to notice of search and seizure under the Fourth Amendment.  (*Id.* ¶¶ 38-39.)

1    **C.    Mr. Wallace's Motion**

2        Mr. Wallace filed his *pro se* "emergency motion" to intervene on May 17, 2016.[5]

3    (*See generally* Wallace Mot.)  In his motion, Mr. Wallace contends that he and his sister

4    are victims of embezzlement and conversion of their "$40+ million Irrevocable

5    Spendthrift Trust Estate" (*id.* at 1), and that two federal judges have "hack[ed] ALL of

6    [Mr. Wallace's] private Microsoft E-Mail Accounts" (*id.* at 2 (emphasis in original

7    omitted)).  In addition, Mr. Wallace attaches a number of documents to his "emergency

8    motion," which appear to be primarily about prior—and unrelated—litigation in which

9    Mr. Wallace was involved.  (*See id.* at 3-45.)

10       Microsoft opposes Mr. Wallace's motion to intervene, arguing that Mr. Wallace

11   does not satisfy the standards under Federal Rule of Civil Procedure 24 for either

12   intervention as of right or permissive intervention.  (Microsoft Resp. I at 1-2); *see also*

13   Fed. R. Civ. P. 24.  Mr. Wallace also filed a "supplement/amended memorandum" in

14   which he "asserts his Standing as Private Attorney General," reiterates his allegations of

15   embezzlement and fraud, and further discusses unrelated litigation in which he was

16   involved.  (Reply (Dkt. # 32) at 1-6.)  The court construes Mr. Wallace's

17   "supplement/amended memorandum" as a reply brief in support of his "emergency

18   //

19

20       [5] The court construes Mr. Wallace's "emergency motion" to intervene as a Federal Rule

21   of Civil Procedure 24 motion to intervene as of right or, in the alternative, permissively.  (*See*
     Wallace Mot.)  Mr. Wallace is proceeding *pro se* and therefore the court must liberally construe

22   his filings.  *See Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013).

1  motion" to intervene.[6]  *See Blaisdell*, 729 F.3d at 1241.  The DOJ did not respond to Mr.

2  Wallace's intervention motion.  (*See generally* Dkt.)

3  **D.     The ACLU's Motion**

4  The ACLU moved to intervene in this matter on May 26, 2016.  (*See generally*

5  ACLU Mot.)  The ACLU is a Microsoft customer that relies "on Microsoft Corporation's

6  email and cloud-computing services to store and transmit sensitive records and

7  communications."  (*Id.* at 1.)  As a Microsoft customer, the ACLU argues that it has "an

8  acute interest in ensuring that the government's demands for the records of Microsoft's

9  customers are constitutional."  (*Id.*)  It seeks to intervene "to vindicate [its] Fourth

10  Amendment right to notice of searches and seizures that implicate their constitutionally

11  protected privacy interests.  Specifically, [the ACLU] seeks to ensure that the government

12  . . . will notify [the ACLU] in the event it obtains [the ACLU's] communications from

13  Microsoft."  (*Id.*)  The ACLU further contends that intervening may be its only way to

14  challenge the constitutionality of Section 2703 because "customers deprived of notice

15  are, by definition, unaware of the government's secret searches of their communications,

16  but once customers learn of a search, they no longer need the notice that the government

17  failed to provide."  (*Id.* at 2.)  The ACLU argues that it may intervene as of right, but, if

18  //

19

20  [6] Mr. Wallace also filed an "objection" to Microsoft's counsel apparently in response to Microsoft's opposition to his motion and a "notice of spoliation of evidence in victim's supplemental memorandum."  (*See* Obj. (Dkt. # 21); Not. (Dkt. # 36).)  Mr. Wallace's "objection" and "notice" are unrelated to any of the issues Mr. Wallace raises in his motion to intervene or any of the issues Microsoft raises in its opposition to Mr. Wallace's motion.  (*See* Obj.; Not.)  Accordingly, the court has not considered them in ruling on Mr. Wallace's motion to intervene.

1  the court finds that it may not, asks that the court exercise its discretion to nevertheless

2  permit the ACLU to intervene.  (*Id.* at 4, 11.)

3        Microsoft does not oppose the ACLU's motion to intervene.  (Microsoft Resp. II

4  at 1 ("Microsoft has no objection to entry of an Order granting the ACLU's Motion and

5  allowing the filing of the ACLU's proposed Complaint in Intervention for Declaratory

6  and Injunctive Relief.").)  The DOJ, on the other hand, argues that the ACLU cannot

7  establish that it is entitled to intervene as a matter of right or that the court may exercise

8  its discretion to permit the ACLU to intervene.[7]  (*See* DOJ Resp. at 7-12.)  Specifically,

9  the DOJ contends that the ACLU has not met the four requirements to intervene as of

10  right.  (*Id.* at 7-11.)  The DOJ also argues that permissive intervention should not be

11  granted because the "ACLU's speculative claims . . . would not provide the Court with

12  additional concrete context for the constitutional challenges here."  (*Id.* at 12.)

13                    **III.    ANALYSIS**

14  **A.  Standards to Intervene**

15        1.  <u>Intervention as of Right</u>

16        Federal Rule of Civil Procedure 24 provides for two types of intervention:

17  intervention as of right and permissive intervention.  Under Rule 24(a), a prospective

18  intervenor may intervene as of right when a federal statute confers an unconditional right

19  to intervene or when the prospective intervenor claims an interest that may, as a practical

20  ───────────────

21  [7] The DOJ also argues that the ACLU may not intervene because the ACLU lacks
   independent standing or standing derived from another party.  (*See id.* at 4-7.)  The court
   declines to decide that issue at this time, however, because it has determined that the ACLU has
22  not met the requirements to intervene as of right or permissively.

matter, be impaired by disposition of the pending action and that interest is not

adequately represented by existing parties.  *See* Fed. R. Civ. P. 24(a).  The Ninth Circuit

has held that to intervene as of right, a prospective intervenor must:  (1) file a timely

motion; (2) identify a significant protectable interest related to the subject matter of the

action; (3) suffer practical impairment of an interest if intervention is not granted; and (4)

be inadequately represented by existing parties.  *Arakaki v. Cayetano*, 324 F.3d 1078,

1083 (9th Cir. 2003), *as amended* (May 13, 2003).  Failure to satisfy any of these

requirements is fatal to a motion to intervene, and the court "need not reach the remaining

elements if one of the elements is not satisfied."  *Perry v. Proposition 8 Official*

*Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).  The court, however, construes Rule 24(a)

broadly in favor of intervention, *id.*, and must accept as true the nonconclusory

allegations of the motion and proposed answer, *Sw. Ctr. for Biological Diversity v. Berg*,

268 F.3d 810, 819 (9th Cir. 2001).   The party seeking to intervene bears the burden of

showing that all of the requirements for intervention have been met.  *United States v.*

*Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

    2.  Permissive Intervention

    A proposed intervenor may also intervene by seeking the court's permission under

Rule 24(b).  Fed. R. Civ. P. 24(b).  The Ninth Circuit has held that a court may

permissively allow intervention when the prospective intervenor meets three threshold

requirements:  (1) files a timely application; (2) shares a common question of law or fact

with the main action; and (3) demonstrates that the court has an independent basis for

jurisdiction over the intervenor's claims.  *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th

Cir. 1998).  Unlike intervention as of right, even if all three requirements are satisfied, the district court has considerable discretion to deny permissive intervention.  *Id.* at 412; Fed. R. Civ. P. 24(b).  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3); *see also Donnelly*, 159 F.3d at 412.  The court should also consider whether the interests of the proposed intervenor are adequately represented in the proceedings already, *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989), and whether the party seeking intervention "will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal issues presented," *Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

   3.   Notice and Pleading Requirements for Motion to Intervene

In addition, Rule 24(c) provides that a motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."  Fed. R. Civ. P. 24(c) (stating notice and pleading requirements).  The Ninth Circuit has approved motions to intervene without a pleading or with some other technical defect, but only "as long as the prospective intervenor fully states the legal and factual grounds for intervention."  *S.E.C. v. Small Bus. Capital Corp.*, No. 5:12-CV-03237-EJD, 2014 WL 3749900, at *7 n.2 (N.D. Cal. July 29, 2014) (citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992) ("Courts, including this one, have approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion.")).

ORDER- 12

**B. Mr. Wallace's Motion**

Even liberally construing Mr. Wallace's *pro se* motion as the court must, *see Blaisdell*, 729 F.3d at 1241, Mr. Wallace's motion and the documents accompanying it do not adequately state grounds to intervene in this matter.  (*See* Mot. at 1-2 (stating general allegations of conversion, embezzlement, and email hacking).)  Given that Mr. Wallace alleges embezzlement, fraud, and hacking of his email by federal judges, the court cannot ascertain on what legal basis Mr. Wallace is moving to intervene.  Accordingly, his motion to intervene is denied.

However, even if Mr. Wallace had adequately stated grounds to intervene, the court finds that he may not intervene as of right or permissively.  First, he has not identified a legally protectable interest related to the subject matter of the action that would allow him to intervene as of right.  *See Arakaki*, 324 F.3d at 1083.  Assuming that Mr. Wallace has identified a legally protectable interest through his allegations of conversion, embezzlement, and email hacking, those interests are not related to the subject matter of this action—that Sections 2703 and 2705(b) are unconstitutional under the First and Fourth Amendments.[8]  *Id.*  For the same reason, the court declines to permit Mr. Wallace to intervene because his proposed claims do not share a common question of law or fact with Microsoft's First and Fourth Amendment claims.  *See Donnelly*, 159 F.3d at 412 (holding that a proposed intervenor must meet three threshold requirements).

---

[8] Because the court has found that Mr. Wallace fails to meet this element, which is fatal to his motion to intervene, it will not further analyze the other elements.  *See Perry*, 587 F.3d at 950.

ORDER- 13

Thus, Mr. Wallace has not established that he is entitled to intervene as of right, and the court will not allow Mr. Wallace to intervene permissively, given that the allegations in his motion have no nexus to this case.

**C.     The ACLU's Motion**

1.   Intervention as of Right

The ACLU has not established that it may intervene in this case as of right. Where, as here, a party and the proposed intervenor share the same ultimate objective, the court presumes that the party will adequately represent the proposed intervenor's interests. *See Perry*, 587 F.3d at 951 (internal quotation marks and citations omitted). The ACLU has not presented the court with compelling reasons to overcome that presumption. Because the court's finding that the ACLU has not established this element is fatal to the ACLU's motion to intervene as of right, the court does not address the other elements required for intervention as of right. *See id.* at 950.

*a.  Adequate Representation*

It is well established that "[w]here the party and the proposed intervenor share the same ultimate objective, a presumption of adequacy of representation applies, and the intervenor can rebut the presumption only with a compelling showing to the contrary." *Id.* at 951 (internal quotation marks and citations omitted). "Divergence of tactics and litigation strategy is not tantamount to divergence over the ultimate objective of the suit." *Id.* at 949. In determining whether a would-be intervenor's interests will be adequately represented by an existing party, the court considers: (1) whether the interest of a present party is such that it will undoubtedly make all of the intervenor's arguments; (2) whether

1   the present party is capable of and willing to make such arguments; and (3) whether the

2   would-be intervenor would offer any necessary elements to the proceedings that other

3   parties would neglect.  *Berg*, 268 F.3d at 822.  The most important factor is "how the

4   interest compares with the interests of existing parties."  *Arakaki*, 324 F.3d at 1086.  The

5   proposed intervenor "bears the burden of demonstrating that the existing parties may not

6   adequately represent its interest."  *Berg*, 268 F.3d at 822-23.  Even though the burden is

7   "minimal," it is "not without teeth."  *Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir.

8   2006).

9        The ACLU contends that Microsoft may not adequately represent its interests in

10   this litigation because the ACLU's interests "are sufficiently different from Microsoft's."

11   (ACLU Mot. at 9.)  Specifically, the ACLU identifies three purportedly distinct interests:

12   (1) as a customer, the ACLU is "uniquely positioned to articulate the necessity of

13   government-provided notice"; (2) the ACLU seeks "to enforce solely the government's

14   constitutional obligation to provide notice" under the Fourth Amendment, while

15   Microsoft's "primary focus" is on communicating with its customers about the

16   government's searches and seizures; and (3) the ACLU can better provide "the factual

17   context" necessary to help the court understand why a customer's right to notice under

18   the Fourth Amendment is important.  (*Id.* at 9-10.)  These interests are not sufficiently

19   different—and therefore do not present sufficiently compelling reasons—to overcome the

20   presumption that Microsoft will adequately represent the ACLU's interests.

21        First, the ACLU contends that, as a Microsoft customer, it is uniquely situated in

22   relationship to Microsoft's position "[a]s a public company" whose "interests are

ORDER- 15

1  diverse" and whose "ultimate responsibility is to its shareholders." (ACLU Mot. at 14.)

2  But both parties challenge Section 2703 as unconstitutional to the extent it allows the

3  government to obtain communications without providing notice to subscribers, and there

4  is no indication that Microsoft's challenge to Section 2703 is somehow significantly

5  different because Microsoft is a public company with "diverse" interests. (*Compare*

6  ACLU Mot. at 11 (seeking "a declaration that 18 U.S.C. § 2703 is unconstitutional to the

7  extent it permits the government to obtain electronic communications without providing

8  notice to the Microsoft customers or subscribers whose communications it has obtained")

9  *with* Am. Compl. at 18 (seeking a declaration "that 18 U.S.C. § 2703 is unconstitutional

10 under the Fourth Amendment, at least to the extent it permits warranted searches and

11 seizures without the government providing notice to the person whose communications

12 are being searched and seized").) Put simply, the ACLU and Microsoft share the same

13 ultimate objective—they want the court to find that Section 2703 violates the Fourth

14 Amendment's notice requirement. Merely pointing to the different roles they occupy—

15 the ACLU as customer and Microsoft as a public company—does not explain why

16 Microsoft will not adequately represent the ACLU's interests, particularly when they

17 share this same objective.

18      Second, the court finds the ACLU's argument that Microsoft will somehow

19 inadequately litigate the issue of whether the government must provide notice under the

20 Fourth Amendment because Microsoft also asserts that it has the right to notify customers

21 of government searches and seizures to be unpersuasive. (*See* ACLU Mot. at 15.)

22 Microsoft's claim that Section 2703 is unconstitutional because it allows the government

ORDER- 16

1    to refrain from providing notice to subscribers is the same claim that the ACLU seeks to

2    bring.  (*Compare* ACLU Mot. at 11 (seeking "a declaration that 18 U.S.C. § 2703 is

3    unconstitutional to the extent it permits the government to obtain electronic

4    communications without providing notice to the Microsoft customers or subscribers

5    whose communications it has obtained") *with* Am. Compl. at 18 (seeking a declaration

6    "that 18 U.S.C. § 2703 is unconstitutional under the Fourth Amendment, at least to the

7    extent it permits warranted searches and seizures without the government providing

8    notice to the person whose communications are being searched and seized").)  The fact

9    that Microsoft also has other claims does not mean that it will necessarily give short shrift

10   to the one the ACLU champions.  In addition, Microsoft asserts that it has third-party

11   standing "to vindicate its customers' Fourth Amendment rights to notice" (Am. Compl.

12   ¶ 38), which further demonstrates its intent to fully pursue this claim.  Accordingly, the

13   court has no reason to believe that Microsoft will not or is unable to fully litigate its claim

14   that Section 2703 is unconstitutional insofar as it allows the government to refrain from

15   giving notice to subscribers.  *See Berg*, 268 F.3d at 822.

16        Finally, the court finds that the ACLU is not in a better position to provide "factual

17   background" in this case and therefore would not offer any necessary elements that

18   Microsoft would neglect.  *Id.*  The ACLU's conclusory statement that its "participation

19   will ensure that the interests of Microsoft's customers are directly before the [c]ourt"

20   (ACLU Mot. at 16) does not tell the court what "factual background" the ACLU would

21   bring to bear in this matter.  The ACLU does not contend that the government has

22

1   obtained its information from Microsoft without notice,[9] so it is unclear what factual

2   information the ACLU could provide that Microsoft will not.  This is all the more true

3   because Microsoft has allegedly been required to turn over subscribers' information in

4   thousands of cases and, in some of those cases, required to stay silent.  (*See generally*

5   Am. Compl.)  Therefore, Microsoft, not the ACLU, is in the best position to provide the

6   court with factual background to advance the argument that Section 2703 is

7   unconstitutional.

8       The reasons the ACLU advances for why it is entitled to intervene are not

9   sufficiently compelling to overcome the presumption that Microsoft will adequately

10  represent their shared interests.  Thus, the ACLU is not entitled to intervene as a matter of

11  right.

12      2.  Permissive Intervention

13      The court also declines to exercise its discretion to permit the ACLU to intervene

14  in this case.  Assuming that the ACLU establishes the three threshold requirements for

15  permissive intervention and that there would be no undue delay or prejudice in allowing

16  the ACLU to intervene, *see Donnelly*, 159 F.3d at 412, the court finds that other

17  considerations counsel against allowing intervention, *see id.* (stating that a

18  court has broad discretion to deny permissive intervention even if a proposed intervenor

19  establishes the threshold requirements).

20  _____

21      [9] The Court acknowledges the ACLU's contention that the ACLU may not know if the
    government has obtained its information because Section 2703 allows the government to

22  withhold notice in some instances (*see* ACLU Mot. at 7), but that contention does not bolster the
    ACLU's argument that it has helpful "factual background" such that it is entitled to intervene.

1   First, the ACLU's interests are adequately represented by Microsoft for the

2   reasons discussed above.  *See Venegas*, 867 F.2d at 530 (holding that a court may

3   consider whether the proposed intervenor's interests are already adequately represented

4   in exercising the court's discretion).  The ACLU and Microsoft have the same ultimate

5   objective—a determination that Section 2703 is unconstitutional.  Accordingly, the court

6   presumes that Microsoft will adequately represent the ACLU's interests in this case.  *See*

7   *Perry*, 587 F.3d at 951 ("[A] presumption of adequacy of representation applies" where

8   "the party and the proposed intervenor share the same ultimate objective.")  The ACLU

9   has offered no compelling justification to rebut that presumption because it has not

10   demonstrated that Microsoft is incapable or unwilling to make all available arguments in

11   support of the objectives it holds in common with the ACLU, or that the ACLU will

12   contribute some element necessary to the adjudication of this case that would otherwise

13   be omitted.  *See Berg*, 268 F.3d at 822 (listing factors to consider in determining whether

14   a proposed intervenor's interests would be adequately represented by an existing party).

15   For this reason, the court declines to permit the ACLU to intervene.

16   Second, the ACLU will not significantly contribute to the "full development of the

17   underlying factual issues in the suit."  *Spangler*, 552 F.2d at 1329.  Even though the

18   ACLU is a Microsoft customer, the ACLU has not, as far as it knows, been deprived of

19   government notice based on the government obtaining its information from Microsoft

20   under Section 2703.  It is therefore unlikely to be able to provide any helpful background

21   information in this matter.

22

ORDER- 19

1        Finally, if the court were to allow the ACLU to intervene, there would be no

2    principled basis for denying intervention to any other Microsoft customer, absent an

3    untimely request to do so.[10]  *See Venegas*, 867 F.3d at 531 (holding that "judicial

4    economy is a relevant consideration" in exercising direction on motion to permissively

5    intervene).  In seeking to intervene, the ACLU focuses on the fact that it is an

6    organization that "rel[ies] on Microsoft Corporation's email and cloud-computing

7    services to store and transmit sensitive records and communications," and that it

8    "agree[s] with Microsoft that [Microsoft's] customers have a Fourth Amendment right to

9    notice."  (ACLU Mot. at 6.)  The ACLU's position does not appear to be meaningfully

10   different from any other Microsoft customer that contends that the government must

11   notify it if the government obtains its information from Microsoft.  The court therefore

12   concludes that, to effectively manage its docket and prevent undue delay in the

13   disposition of this case, it will not permit the ACLU to intervene.

14       3.  Amicus Curiae Status

15       The court has "broad discretion" to appoint amicus curiae.  *Hoptowit v. Ray*, 682

16   F.2d 1237, 1260 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515

17   U.S. 472 (1995).  The ACLU filed a brief in opposition to the DOJ's pending motion o

18   dismiss and asked the court to grant the ACLU leave to file it as an amicus curiae brief

19   should the court deny the ACLU's motion to intervene.  (Resp. at 1 n.1.)  Because the

20   _____

21       [10] Whether a motion to intervene is timely is determined by three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3)

22   the reason for and length of the delay."  *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002).

1  ACLU has expressed its desire to weigh in on this litigation and believes that it has a

2  particular perspective that may not otherwise be before the court, the court GRANTS the

3  ACLU amicus curiae status and GRANTS the ACLU's request to file its opposition to

4  the DOJ's motion to dismiss as an amicus curiae brief.[11]

5       In the absence of local rules governing the role of amicus curiae, the court will

6  adhere to the applicable rules found in the Federal Rules of Appellate Procedure.

7  Accordingly, the ACLU must in the future file any memorandum commenting on a

8  party's memorandum no later than seven days after "the principal brief of the party being

9  supported is filed." *See* Fed. R. App. P. 29(e).  Further, any amicus curiae brief filed by

10  the ACLU will be limited to no more than one-half the maximum length authorized by

11  this court's local rules for a party's principal brief.  (*See* Dkt. # 40); Fed. R. App. P.

12  29(d).  The ACLU shall not file reply memoranda or participate in oral argument unless

13  authorized in advance by the court.  *See* Fed. R. App. P. 29(f), (g).

14  **IV.   CONCLUSION**

15       For the foregoing reasons, the court DENIES the motions to intervene (Dkt. ## 12,

16  13) and GRANTS the ACLU amicus curiae status (Dkt. # 43).

17       Dated this 29th day of August, 2016.

18

19  _____

20  JAMES L. ROBART
United States District Judge

21  _____

22  [11] The court therefore considers the ACLU's opposition to the DOJ's motion to dismiss, which the ACLU filed on August 26, 2016 (*see generally* Resp.), as an amicus curiae brief.