The Honorable James L. Robart

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION,

v.

UNITED STATES DEPARTMENT OF
JUSTICE, and LORETTA LYNCH, in her official
capacity as Attorney General of the United States.

NO. 16-cv-00538JLR

**REPLY SUPPORTING
MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1)
AND 12(B)(6)**

**Noted on Motions Calendar:
Sept. 23, 2016**

**Oral Argument Requested**

## INTRODUCTION

Microsoft's opposition to Defendants' Motion to Dismiss presents a series of remarkable arguments, none of which have merit. Microsoft contends that it has a First Amendment right to alert suspects to the existence of criminal investigations even after a court has found that doing so would risk serious harms, including, in some cases, danger to the lives of individuals. It asks the Court to invalidate two key provisions of the Stored Communications Act (SCA) and thereby prevent the Government from obtaining future orders without any showing that the thousands of instances in which judges have applied these statutory provisions to Microsoft are unconstitutional. In the absence of such a showing, the Court cannot exercise Article III jurisdiction to invalidate the individual orders mentioned in the First Amended Complaint ("FAC"), or grant relief on the theory that a hypothetical future order will be per se unconstitutional. Microsoft has an opportunity for every order (existing or future) to raise its claims for resolution in the concrete context of an actual "Case" or "Controversy,"

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Reply in Support of Motion to Dismiss - 1

as required by the Constitution. Microsoft's response also does little to address the flaws in the FAC regarding its assertion of alleged Fourth Amendment rights belonging to others, for which Microsoft lacks standing. Therefore, the Court should dismiss this case for lack of jurisdiction.

Beyond these jurisdictional hurdles, Microsoft's response fails to establish that it has presented any valid First or Fourth Amendment claim. Section 2705(b) does not, on its own, prohibit any speech, and it is irrefutable that the public has a compelling interest in keeping criminal investigations confidential when a judge finds that there is reason to believe that disclosure will endanger the life or physical safety of a person, result in the destruction of evidence, or cause serious jeopardy to a criminal investigation. This standard is not vague, and the narrowly-tailored scope of nondisclosure – which limits Microsoft only in disclosing the facts of a particular request – ensures that the judicial orders at the core of Microsoft's claims satisfy the First Amendment. Moreover, there is no precedent establishing a Fourth Amendment right to notice in the circumstances in which sections 2703 and 2705(b) may be invoked, and, as the FAC itself establishes, the vast majority of orders involve process seeking information in which Microsoft's users have no Fourth Amendment protected interest. Contrary to Microsoft's contention, the Constitution permits the Government to gather evidence and identify suspects without providing advance warning to the targets of criminal investigations. *See Times Mirror Co. v. U.S.*, 873 F.2d 1210, 1215-18 (9th Cir. 1989).

# ARGUMENT

## I.   Microsoft Lacks Standing to Assert Its Claims.

### A.   Microsoft Has Not Alleged An Article III Injury To First Amendment Interests.

Article III "standing is not dispensed in gross"; rather, Microsoft must separately "demonstrate standing for each claim [it] seeks to press . . . [and] each form of relief sought." *DaimlerChrysler v. Cuno*, 547 U.S. 332, 352 (2006). The injury prong of standing is the judicial doctrine that "assures an actual factual setting" in which "a court may decide the case with some confidence." *Valley Forge Christ. Coll. v. Ams. United*, 454 U.S. 464, 472 (1982). As Defendants demonstrated in their Motion, while Microsoft might theoretically allege a specific, concrete, and particularized injury by reference to an allegedly-unconstitutional court order, a generalized injury – such as the one it claims flows from the application of § 2705(b) in all circumstances – does not satisfy Article III.[1] Microsoft does not contest that the

---

[1] Far from conceding that "secrecy orders . . . actually harm Microsoft," Pls.' Opp. to Mot. to Dismiss ("Opp.") at 4, ECF No. 44, the Government challenged both the "existence" of any such injury, Gov't Mot. to Dismiss ("MTD") at 6, ECF No. 43, as well as whether any purported injury would satisfy Article III. *See id.*

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Reply in Support of Motion to Dismiss - 2

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

orders described in the FAC encompass multiple types of process, adjudicated in disparate factual circumstances, pursuant to different legal principles. *See* MTD at 6-8.[2] Nor does Microsoft focus its response on any particular order it has received. Rather, it seeks to challenge hypothetical future orders that it speculates will be issued with "indefinite" durations, even as it acknowledges receiving orders with "definite time limits" in a "few of the largest federal districts." Opp. at 3-5 & n.10. But a hypothetical case divorced from the specifics of any order is *not* associated with a "particularized" injury that provides a "factual setting" in which this case can be decided, or even a need to "interpret the Constitution . . . in the course of . . . deciding [a] case," the very foundation of the Court's constitutional authority to engage in judicial review.[3] *Cuno*, 547 U.S. at 340.

**B.   Microsoft's Alleged Injury Cannot Be Redressed In This Action.**

For similar reasons, even assuming that Microsoft had alleged an Article III injury, any such injury from existing orders cannot be redressed here. *See* MTD at 8-9 (arguing, *inter alia*, that orders issued by independent judges of this or other courts cannot be lifted by this action). Microsoft's response confirms that redressability is lacking. Microsoft's principal argument that it has established redressability for the "secrecy orders to which [it] has been subject since 2014," Opp. at 3-4, is that a judgment here will prevent "the Government from ... rely[ing] on the statute ... in the future."[4] *Id.* at 6. But Supreme Court precedent precludes such a time-shifting basis of standing: "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court." *Steel Co.*, 523 U.S. 107; *see HealthNow N.Y. v. N.Y.*, 739 F. Supp. 2d 286 (W.D.N.Y. 2010), *aff'd* 448 F. Appx. 79 (2d Cir. 2011) (Article III does not permit "mixing a stated injury [with] redressability of an entirely different injury"). Further, to the extent Microsoft alleges that injuries to third party users can provide jurisdiction, discussed *infra* Part I.E., its assertion likewise improperly mixes past injuries and future redress.

Nor is redressability satisfied by the possibility that this case would "sett[le] some dispute which affects the behavior of the defendant towards the plaintiff." Opp. at 6. The redressability requirement's purpose is to ensure there is a present dispute that can be resolved to avoid the issuance of "an opinion

---

[2] Contrary to Microsoft's suggestion, it does not import a merits analysis into the question of jurisdiction to recognize this fact. *See* Opp. at 4. Rather, it is Microsoft that seeks to evade the "rule that Article III jurisdiction is always an antecedent question," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998), by relegating the prerequisite of standing to a subordinate role in the section of its brief titled "Microsoft Has Stated A Claim." *Id.* at 3.

[3] Microsoft is also wrong in contending that its allegation that the lack of a definite duration constitutes a "single defect" in many orders it has (or may) receive establishes "standing." Absent an inquiry into individual circumstances, Microsoft's allegation can only be adjudicated as an abstract question, which Article III does not permit.

[4] Microsoft acknowledges that it "is not asking this Court to 'release' it from secrecy orders" that form the basis of its purported injury. Opp. at 6; *see* MTD at 8-9.

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Reply in Support of Motion to Dismiss - 3

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937). This Court cannot determine now whether or how a future judicial nondisclosure order will cause a non-speculative injury sufficient to establish Microsoft's standing. Microsoft has not cited *any* case in which a court found jurisdiction to consider, *ex ante* and separate from individualized consideration of the facts, the constitutionality of a statute that provided a court with authority to issue a warrant or orders associated with such a warrant.[5] *See* MTD at 9.

### C.  Microsoft Does Not Meet The Requirements For a Pre-Enforcement Challenge.

Microsoft repeatedly postulates that its claims need not await a redressable Article III injury because it should not be required "to speak first and take [its] chances with the consequences." Opp. at 3 (citing *Ariz. Right to Life PAC* v. *Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003)). But this contention seeks to rely on established doctrine governing a "pre-enforcement challenge," which does not apply here. As the Supreme Court recently reaffirmed, a plaintiff seeking standing for "pre-enforcement review" must: (1) "allege[] an intention to engage in a course of conduct arguably affected with a constitutional interest"; (2) show the conduct to be "proscribed by a statute"; and (3) demonstrate "a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014); *see Bayless*, 320 F.3d at 1006.[6] Most importantly, standing alone, 2705(b) does not prohibit any conduct by Microsoft. Further, the FAC is void of any allegation that Microsoft intends to violate a nondisclosure order issued by a court pursuant to 2705(b), let alone an allegation that Microsoft might be prosecuted (or that contempt would be sought) for doing so. *See San Diego Cty. Gun Rights v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996) ("[A] general threat of prosecution is not enough to confer standing"). The absence of such allegations precludes Microsoft's effort to recast this case as a pre-enforcement challenge. Indeed, because any future nondisclosure order will issue only in the course of a judicial proceeding in which Microsoft can argue, in the specific context of that case, that the

---

[5] Contrary to Microsoft's suggestion, Opp. at 5, neither *U.S. v. Salerno*, 481 U.S. 739 (1987), nor *Berger v. N.Y.*, 388 U.S. 41 (1967), arose in a comparable context: in *Salerno*, the parties sought relief from a particular court order applying the bail statute to them (and, indeed, the Court rejected their "facial" challenge, *see* 481 U.S. at 745), and in *Berger*, the Supreme Court invalidated the actual use of evidence from an unconstitutionally-obtained wiretap.

[6] For similar reasons, a pre-enforcement challenge under the facts – or rather, the absence thereof – presented by Microsoft also raises significant ripeness concerns. Ripeness, which has both Article III and prudential components, requires a Court "to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967); *see Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 809l 811-12 (2003) (emphasizing that where a challenged policy does not "command anyone to do anything or to refrain from doing anything," but instead leaves specific actions to subsequent procedures, jurisdiction may be lacking until a context-specific claim may be raised, and that courts should not review claims in the abstract where "further factual development would . . . advance [the court's] ability to deal with the legal issues presented"). Here, there is no "hardship" to Microsoft of postponing review until a specific context arises. *Abbott Labs*, 387 U.S. at 149.

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Reply in Support of Motion to Dismiss - 4

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

statute should not apply, either on constitutional grounds or otherwise, there is no possible risk of prosecution or contempt at this time, and thus no possible basis for a pre-enforcement challenge.

### D. Microsoft Has Not Alleged A Concrete and Particularized "Economic Injury."

Microsoft's purported injury to a "business interest" in "customer trust" – supposedly attributable to 2703 warrants and 2705(b) nondisclosure orders – is the archetypal "abstract" injury that does not satisfy Article III. *See* MTD at 12. Microsoft also has no response to the Government's observation that any such injury is speculative: as the FAC acknowledges, any effect on user decision-making is as likely attributable to the fact that the Government may obtain a user's information as it is to any lack of notice. *See id*; FAC ¶ 5 (describing link between "government demands for online data" and users' "confidence in [their] privacy").

In its response, Microsoft redefines its injury as "economic," Opp. at 4 (a word that nowhere appears in the FAC), but even this redefinition cannot help: the cases cited for "economic injury" further illustrate the inadequacy of the injury alleged here. For example, in *San Diego Gun Rights*, plaintiffs alleged that a government ban on new versions of certain rifles "caused the price… to increase from 40% to 100%," but the court nevertheless found standing to be lacking. 98 F.3d at 1130. And in *Maya v. Centex*, the plaintiffs alleged that loan defaults led to "foreclosures and short sales that [] resulted in a substantial loss of value to the surrounding homes," through "abandoned houses, ... transient neighborhoods, and [] increased crime." 658 F.3d 1060, 1066 (9th Cir. 2011). The allegations in these cases depict causation and harm far more specifically than does Microsoft's threadbare allegation of an affected "business interest," and thus do not establish standing here.

### E. The Fourth Amendment Rights Of Third Parties Do Not Supply Standing Here.

#### 1. Fourth Amendment Rights Are Purely Personal Rights

Microsoft also has no persuasive response to controlling precedent holding that, as a matter of law, it cannot assert the Fourth Amendment rights of third parties just because they use its services. *See* Opp. at 19 n.13. The principle that "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted," *Alderman v. U.S.*, 394 U.S. 165, 174 (1969), is not limited to a third party's efforts to invoke the exclusionary rule in criminal proceedings. *See, e.g., Ellwest Stereo Theatres v. Werner*, 681 F.2d 1243, 1248 (9th Cir. 1982) (arcade could not assert Fourth Amendment rights of its patrons in facial challenge to local ordinance) (relying on *Alderman* & *Rakas v. Ill.*, 439 U.S. 128, 134 (1978)).[7]

---

[7] 42 U.S.C. § 1988 governs when certain civil rights claims survive the death of the plaintiff. Therefore, when the survivor of an individual killed by an officer brings a Fourth Amendment excessive use of force claim pursuant to 42 U.S.C. § 1983, it is not because of a relaxation of the *Rakas* principle. *See* Br. of *Amici Curiae* at 12 n.12, ECF No. 66-1.

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Reply in Support of Motion to Dismiss - 5

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

Microsoft's stake in the Fourth Amendment interests of its users is much more attenuated than a criminal defendant's interest in preventing the prosecutorial use of evidence obtained from a third party. Standing in the Fourth Amendment context "requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." *Rakas*, 439 U.S. at 140. Like the defendant in *Rakas*, Microsoft "has not had any of [its] Fourth Amendment rights infringed," 439 U.S. at 134, and thus, the *Rakas* principle – albeit often invoked in the context of the exclusionary rule – precludes Microsoft from establishing standing for its Fourth Amendment claim here. *See id.* at 140 ("that Fourth Amendment rights are personal in nature [answers] many of the[] traditional standing inquiries").

### 2.  The Prerequisites For Third-Party Standing Do Not Exist Here.

The *Rakas* principle also bars Microsoft from invoking the doctrine of third-party standing to bring a Fourth Amendment claim on behalf of its users. *See Alderman*, 394 U.S. at 173-74 (indicating that no "special circumstances" justify the vicarious assertion of Fourth Amendment rights, and distinguishing *NAACP v. Alabama*, 357 U.S. 449 (1958) & *Barrows v. Jackson*, 346 U.S. 249 (1953)).[8]  In any event, Microsoft has not demonstrated the requisite elements of third party standing. First, Microsoft cannot independently meet Article III's standing requirements, *see* MTD at 12,[9] and Microsoft's only response is an effort to assert new forms of injury not alleged in the FAC. *See* Opp. at 17:22-18:2.[10] Moreover, the cases relied on by Microsoft demonstrate the comparative weakness of Microsoft's amorphous "business interest" injury here. *See, e.g.*, *Eisenstadt v. Baird*, 405 U.S. 438 (1972) (challenger criminally convicted for act of advocacy in distributing contraceptives); *Craig v. Boren*, 429 U.S. 190 (1976) (vendor directly injured when customers barred from purchasing its goods); *Barrows*, 346 U.S. at 255-56 (injury recognized in monetary damages awarded against challenger).

Second, Microsoft's relationship with its users is not analogous to the "close" relationships

---

[8] *See also U.S. v. Salvucci*, 448 U.S. 83, 86 (1980) ("attempts to vicariously assert violations of the Fourth Amendment rights of others have been repeatedly rejected by this Court"); *Singleton v. Wulff*, 428 U.S. 106, 118 n.7 (1976) (noting that the Court has disallowed third party standing to assert the Fourth Amendment rights of others).

[9] For the same reason, the interest Microsoft seeks to assert is not within the zone of interests protected by the Fourth Amendment. Microsoft cannot rely on a third party's interest for this purpose, since Microsoft cannot demonstrate the elements of third party standing. *See* Opp. at 20 n.14. Permitting assertion of a third party's interest also undermines the purpose of the zone-of-interests limitation by conflating it with the third-party standing doctrine, and thus, has not been permitted outside the D.C. Circuit. *See Corrosion Proof Fittings v. E.P.A.*, 947 F.2d 1201, 1210-11 (5th Cir. 1991) (Canadian company was not within domestic zone of interests of statute and could not invoke interests of an American vendee).

[10] "It is axiomatic that [a] complaint may not be amended by briefs in opposition to a motion to dismiss." *Tietsworth v. Sears*, 720 F.Supp.2d 1123, 1145 (N.D. Cal. 2010). These new allegations of injury are also insufficient because the SCA provides for cost reimbursement to Microsoft when the Government obtains content information. *See* 18 U.S.C. § 2706.

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Reply in Support of Motion to Dismiss - 6

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

where courts have recognized third party standing. Microsoft is not asserting "a confidential relationship... such as that of the doctor and patient" or an attorney and client, *Singleton*, 428 U.S. at 118 n.7, and it is not an association asserting the right of its members, *see Patterson*, 357 U.S. at 458-59, or a recognized "advocate" for individuals' contraceptive rights. *Eisenstadt*, 405 U.S. at 445. Nor does this case present a "unique" situation justifying a relaxation of traditional standing principles.[11] *See Barrows*, 346 U.S. at 257-58.

Rather, Microsoft is a business that provides electronic information services, and speculates no more than that user reactions may negatively impact its business. Unlike in vendor-standing cases, the SCA does not restrict access to Microsoft products. *Compare Craig*, 429 U.S. at 195 (standing recognized for vendors "acting as advocates of the rights of third parties who seek access to their market or function"). Similarly, Microsoft has not claimed status as the type of vendor that users have a right to access. *Compare Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990) (third-party standing permitted where "a restriction" interferes with a "legal entitlement (typically a constitutional entitlement)" to have a relationship). Underscoring the superficial connection between Microsoft and many users is that one need do no more to establish a Microsoft account and obtain an email address than furnish a name and birthdate, and users routinely create such accounts using false information. *See, e.g., U.S. v. Sing*, 2016 WL 54906 at *11 (C.D. Cal. Jan. 4, 2016). Further, courts have recognized that Microsoft's relationship with such users is "defined by the terms of a contract of adhesion," hardly the hallmark of an intimate relationship. *See, e.g., Walsh v. Microsoft*, 63 F. Supp. 3d 1312, 1324-25 (W.D. Wash. 2014).[12] In short, Microsoft cannot claim the type of "close" relationship with users that courts have found sufficient to overcome the rule that a party must assert its own constitutional rights.

Third, Microsoft and amici overstate the difficulty Microsoft users would face in asserting their own Fourth Amendment interests. The rationale of the *Rakas* line of cases limiting the assertion of Fourth Amendment claims to those whose rights have been infringed was not predicated on whether the third party would have another opportunity to raise a challenge. *See Rakas*, 439 U.S. at 134. Also, in many cases, users will have the opportunity to assert their rights after non-disclosure

---

[11] *Contra* Opp. at 18:3-4, *U.S. v. $100,348.00 in U.S. Currency*, 354 F.3d 1110 (9th Cir. 2004), does not say that the "close relationship" requirement "is not formidable." That statement comes from Judge Wardlaw's opinion dissenting from the majority's holding that the plaintiff had first-party standing to raise an Eighth Amendment challenge.

[12] The alleged "trend" in courts to allow communications services providers to assert the rights of their subscribers, ACLU Br. (ECF No. 43) at 13, is limited to First Amendment claims where unique rules of standing apply. *See McVicker v. King*, 266 F.R.D. 92, 95 (W.D. Pa. 2010) (relying on *Enterline v. Pocono Med. Ctr.*, 751 F. Supp. 2d 782, 785 (M.D. Pa. 2008)); *see also in re Verizon Internet Servs.*, 257 F. Supp. 2d 244, 257 (D.D.C. 2003), *rev'd*, 351 F.3d 1229 (D.C. Cir. 2003). Notably, in *McVicker* and *Enterline*, the third parties' desire for anonymity was a unique barrier to asserting their rights.

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Reply in Support of Motion to Dismiss - 7

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

1   ends, for example, in cases in which an indictment results and the search may be challenged. *See id.*

2   Therefore, Microsoft's users do not face the same obstacles as those individuals in *Patterson*, *Enterline*,

3   and *McVicker* to asserting their own rights.

4   **II.   Microsoft Has Not Stated a First Amendment Claim For Relief**.

5       **A.   Microsoft Has Not Met The Requirements Of An Overbreadth Challenge**.

6       Microsoft cannot dispute that it may challenge any individual order issued under 2705(b) to

7   which it is subject, and the law is clear that "the lawfulness of the particular applications of the law

8   should ordinarily be decided first," before proceeding to an "overbreadth challenge." *See* MTD at 14-

9   15 (citing, *e.g.*, *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 485 (1989)). Microsoft's response –

10  an assertion that this doctrine does not apply "in the First Amendment context," quoting *Parker v.*

11  *Levy*, 417 U.S. 733, 759 (1974) – is in error. *See* Opp. at 7. As the very next sentence of *Parker* explains,

12  even in the First Amendment context, courts should not "strike down a statute on its face where there

13  were a substantial number of situations to which it might be validly applied." *Parker*, 417 U.S. at 760.

14  Likewise, it was in the First Amendment context that the Supreme Court instructed that, "for reasons

15  relating both to the proper functioning of courts and to [] efficiency, the lawfulness of the particular

16  application of the law should ordinarily be decided first."[13] *Fox*, 492 U.S. at 485.

17      **B.   Microsoft Does Not Have A First Amendment Right To Disclose Facts It Has Learned From a Government Investigation When Disclosure Will Result In Serious Harm To The Investigation Or To Other Compelling Government Interests.**

18      Microsoft's assertion that it has a First Amendment right to tell users about government

19  investigations, Opp. at 10, when carried to its logical end, would risk lives, jeopardize criminal

20  investigations, and is not the law. Rather, it has long been recognized that the First Amendment right

21  to speak does not extend in full measure to information learned through one's participation in an

22  investigation supervised by the judiciary. The Government's opening brief addressed this principle as

23  applied by the Supreme Court in *Butterworth v. Smith*, 494 U.S. 624 (1990) and the Courts of Appeals.

24  *See* MTD at 15-17 (citing cases). Microsoft does not dispute that the information it wishes to share

25  with its users is so derived. Rather, Microsoft wrongly asserts that any restrictions on speech

---

26  [13] Microsoft cannot demonstrate that any application of the statute is unconstitutional in the abstract, let alone a

27  "substantial number," as an overbreadth challenge requires. MTD at 15 (citing *New York State Club Ass'n, Inc. v. City of N.Y.*, 487 U.S. 1, 14 (1988)). Microsoft's blanket assertion that all indefinite nondisclosure orders "are constitutionally infirm" is not sufficient, because the Government's compelling interests in nondisclosure and the duration of those interests will necessarily vary case-by-case. *See id.* Apart from individual applications, this Court cannot determine whether

28  there exists a compelling interest in avoiding, *e.g.*, "serious[] jeopard[y] [to] an investigation," or whether the Government has presented sufficient evidence to establish an enumerated harm "will result," as Microsoft requests. *See* Opp. at 8.

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Reply in Support of Motion to Dismiss - 8

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

authorized by *Butterworth* are "temporally limited to the period of the proceeding." Opp. at 10-11. But both the Supreme Court and the Ninth Circuit have held the opposite: such nondisclosure requirements may be enforced "as long as necessary," without regard to the conclusion of the proceeding. *See* MTD at 18-19 (citing, *e.g.*, *Douglas Oil v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979); *Times Mirror,* 873 F.2d at 1214-15 (extending grand jury secrecy principles to warrant proceedings)).[14] Therefore, Microsoft cannot claim an absolute First Amendment right to disclose to users the existence of non-public investigations it has learned through its receipt of Section 2703 process.

### C. Even If Nondisclosure Requirements In This Context Implicate The First Amendment, Section 2705(b) Satisfies the Constitutional Standards.

Section 2705(b) allows the Government to obtain a nondisclosure order only after it goes to court and bears the burden of persuading the court that, absent a nondisclosure order, there is "reason to believe" that one of five serious, enumerated harms "will result." This procedure satisfies the constitutional standards the Supreme Court has set forth even for a prior restraint. *See* MTD at 17 (citing *Thomas v. Chicago Park Dist.*, 534 U.S. 316 (2002)). Microsoft acknowledges that these procedures permit the Executive Branch, acting alone, to impose prior restraints tested under the "most serious" First Amendment scrutiny, Opp. at 9 (citing *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976)). Although Microsoft faults the Government for citing the standard for "prior restraints without judicial involvement," it cites no case that suggests the standard would be *higher* here, where a nondisclosure order requires action by the Executive Branch *and* review and a decision by a court.

Judicially-approved 2705(b) orders also satisfy the substantive First Amendment standards as the least-restrictive, narrowly-tailored means of promoting compelling government interests. *See* MTD at 18-19. Numerous precedents establish – and Microsoft does not seriously (and cannot) contest[15] – that the public's interests in avoiding the enumerated harms in 2705(b) are compelling ones.

Section 2705(b) is also narrowly tailored and the least restrictive means of avoiding harm. *See id.* at 18. Notwithstanding Microsoft's claim that "[i]ndefinite secrecy orders . . . by definition [] are not narrowly tailored," Opp. at 12, the Supreme Court has recognized the constitutionality of indefinite

---

[14] As *Times Mirror* makes clear, moreover, the Ninth Circuit has squarely rejected Microsoft's view that nondisclosure orders related to a warrant "are not supported by the same interests," Opp. at 11, as those for a grand jury. *See* 873 F.2d at 1215-16 ["polic[ies] behind grand jury secrecy apply *with equal force* to warrant proceedings") (emphasis added).

[15] *Compare* MTD at 18-20 *with, e.g.*, Opp. at 15 (conceding that "delay of a trial or jeopardy to an investigation may . . . provide a compelling reason to require secrecy"). Although Microsoft asserts this is only true in "rare" cases, Opp. at 15, it cannot possibly know if that is true, and this contention underscores that the Court cannot assess Microsoft's First Amendment claim without improperly reviewing the circumstances underlying the 2705(b) orders of other courts.

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Reply in Support of Motion to Dismiss - 9

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

nondisclosure requirements. *See* MTD at 18-20; *id.* at n.15 & 16 (citing cases).[16] Because such indefinite nondisclosure requirements are permissible and sometimes necessary, 2705(b) must be broad enough to permit their issuance in "appropriate" cases, and thus, the statute addresses narrow tailoring by requiring courts to find that an indefinite period is the "appropriate" duration for nondisclosure.[17] The limited scope of nondisclosure orders – to facts concerning the existence of particular 2703 process related to a user – further confirms the narrow tailoring.

Microsoft's objections to the burden of persuasion established by 2705(b) are also meritless. Microsoft first asserts that the statutory requirement that a court find there is "reason to believe [disclosure] will result in" an enumerated harm is insufficient.  Microsoft contrasts the "good reason to believe" standard used in the context of 18 U.S.C. § 3511. Opp. at 15. But Microsoft omits the remainder of the § 3511 standard: good "reason to believe that disclosure . . . *may result*" in harm (*i.e.*, a "reasonable likelihood," *Doe v. Mukasey*, 549 F.3d 861, 875 (2d Cir. 2008)), a less rigorous test than the "will result" language of 2705(b).[18] And Microsoft's second objection to the persuasive burden – a claim that the statute should require "case-specific facts" – once again puts at issue the decisions made by other courts and ignores the unsurprising fact that a particular harm is common when many investigations share similar operative facts. *See* MTD at 18 & n.13.[19] Nothing more is required, and no flaw exists in the statutory standard. Indeed, Microsoft's attack again underscores that its First Amendment claim cannot be properly reviewed outside the context of a particular order.

## III.    Microsoft's Complaint Fails to State a Fourth Amendment Claim for Relief.

Contrary to Microsoft's claim, the Supreme Court's decision in *City of Los Angeles v. Patel*, 135 S.Ct. 2443, 2451 (2015), did not change the requirement that a facial challenge to a statute under the Fourth Amendment "must establish that a law is unconstitutional in all of its applications." Rather, *Patel* clarified that "when assessing whether a statute meets this standard, the Court has considered only applications of the statute in which it actually authorizes or prohibits conduct." *Id.*; *see Bell v.*

---

[16] Microsoft and amici suggest that "recent [National Security Letter] decisions" illustrate a trend towards requiring "periodic[] review," but those cases reflect Congress's 2015 adoption of a statutory requirement for such review. *Compare* Opp. at 14 *with In re Nat'l Sec. Letters*, No. 16-518, slip op. (D.D.C. July 25, 2016) (cited therein).

[17] Microsoft has not demonstrated that 2705(b) is not narrowly tailored by comparison with other statutes or SCA provisions, *see* Opp. at 13, in which the Government interests involved are different. For example, the provision permitting the Government to delay directly providing notice to a user, § 2703(b)(1)(B), involves Government notice, in which the Government controls the possibility of inadvertent disclosure and effects of failure to renew a court order.

[18] Microsoft faults the Government for its reliance on cases upholding standards that are only similar, *see* Opp. at 15, but Microsoft does not cite to a case addressing, let alone invalidating, a "reason to believe" standard.

[19] Microsoft also ignores the likelihood that many orders are sought in the context of other warrants and proceedings related to an investigation where "case specific facts" are already known to the particular court or established in the affidavit supporting a warrant.

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Reply in Support of Motion to Dismiss - 10

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

*Chicago*, --- F.3d ---, 2016 WL 4525236, at *2 (7th Cir. Aug. 30, 2016) (same, applying *Patel*). Microsoft cannot meet this standard. First, Microsoft concedes that 2705(b) alone cannot violate any Fourth Amendment notice requirement because that section does not govern the provision of notice by the Government. Therefore, the constitutionality of 2705(b) does not turn on any alleged right to notice. Nor can Microsoft cure this deficiency by alleging that 2705(b) "combines with Section 2703" to deprive users of notice, Opp. at 23, because it cannot plausibly allege that nondisclosure is never appropriate in circumstances where, *e.g.*, a threat to life or limb exists. And, as noted, Microsoft lacks standing to challenge 2703 because that section applies only to the Government, not to Microsoft.

### A.  The Fourth Amendment is Not Implicated By Most Applications of § 2703 at Issue.

Microsoft studiously ignores the key fact that, by its own admission, a large majority of 2705(b) orders and 2703 process it challenges relate to non-content information, *see* MTD at n.6, and its users do not have a Fourth Amendment interest in such data in the context of electronic information. *See U.S. v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("no expectation of privacy in [] to/from addresses of [e-mails] or [] IP addresses of [] websites").[20] Thus, none of these orders can support Microsoft's "facial" Fourth Amendment claim. Further, the Government does not concede that users will always have a reasonable expectation of privacy in the content stored with providers. Such an expectation will depend on factors such as the terms of use governing the provider's services, whether the provider itself accesses the content, and whether a user voluntarily provides others with access to the content. *See In re Grand Jury Subpoena*, No. 15-35434, 2016 WL 3745541, *6 (9th Cir. July 13, 2016); *Warshak v. U.S.*, 532 F.3d 521, 527 (6th Cir. 2008). For these reasons, Microsoft has not shown that 2703 can never be constitutionally applied.

### B.  Microsoft Has Not Demonstrated that Its Users Have a Right to Notice That Renders Section 2703 Facially Invalid.

Microsoft cannot establish that 2703 is otherwise facially invalid. None of the authorities relied on by Microsoft (or amici) demonstrate that users have a Fourth Amendment right to notice of 2703 process, even assuming a reasonable expectation of privacy exists in the information sought. Moreover, even if the Fourth Amendment creates a right to notice (to the person from whom property is taken, or to someone else), and even if 2705(b) applied to the Government, no right to notice would exist here because 2705(b) orders are available only in circumstances paralleling recognized Fourth

---

[20] Microsoft contends that the issue of whether users have a protected interest in non-content information is a matter of debate, citing Justice Sotomayor's concurrence in *U.S. v. Jones*, 132 S.Ct. 945, 957 (2012). Opp. at 17 n.12. Regardless of whether that is the case, unless or until the Supreme Court says otherwise, *Forrester* controls on this issue.

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Reply in Support of Motion to Dismiss - 11

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

1  Amendment exceptions, and the user has placed her information in Microsoft's control, in a place

2  known to be accessible to the Government.

3      The knock and announce rule – the supposed foundation for the right to notice that Microsoft

4  and amici seek this Court to adopt – is subject to exceptions that mirror the circumstances set forth

5  in 2705(b).[21] *See* MTD at 22-24; *Wilson*, 514 U.S. at 936; *accord Berger*, 388 U.S. at 59 (noting that defect

6  of eavesdropping statute's failure to provide for notice was not overcome because there was no

7  requirement for some showing of exigent circumstances); *Richards v. Wisc.*, 520 U.S. 385, 394 (1997)

8  (stating that circumstances of felony drug investigations may frequently permit exception to the

9  knock-and-announce requirement). Thus, even if a right to user notice exists, 2703 will not always be

10  unconstitutional when applied because Microsoft is only prevented from providing notice to a user

11  when a judge is satisfied that one or more of the circumstances in 2705(b) is met, circumstances that

    track recognized exceptions to any notice requirement.

12      Even to the extent user notice is required, Microsoft and amici err in characterizing 2705(b)

13  as an "outlier" when compared to other statutes, such as 18 U.S.C. § 3103a. First, unlike those statutes,

14  2705(b) is not a notice provision that applies to the Government. In addition, § 3103a(b) specifically

15  provides that the ordinary delay of notice initially ordered of up to 30 days may be "longer" where a

16  court finds "reasonable cause to believe" that notice will have an adverse result *as defined in section 2705*

17  (excepting "unduly delaying a trial"). Indeed, such delayed notice can be extended for an indefinite

18  "longer period" if the facts of the case justify it. *Id.* § 3103a(c). This provision is very similar to 2705(b)

    in the standard of review, the flexible time period, and the types of facts justifying a court order.

19      Section 2705(b) also compares favorably to 18 U.S.C. § 2518(8)(d), the federal wiretapping law

20  (Title III), which the Supreme Court found constitutional in *U.S. v. Donovan*, 429 U.S. 413, 429 (1977).

21  Significantly, unlike Title III, the SCA is not a surveillance statute authorizing ongoing interceptions,

22  but rather, governs access only to *past*, already-stored information. *See Berger*, 388 U.S. at 60 ("a showing

23  of exigency, in order to avoid notice would appear more important in eavesdropping, with its inherent

24  dangers."). Although Title III notice ordinarily occurs within 90 days, *see* §2518(8)(d), notice may be

---

25  [21] Though not necessary to a decision on this motion, the Government does not agree with amici's recitation of the
26  common law foundation of the knock and announce rule. *See, e.g.*, *Wilson v. Arkansas*, 514 U.S. 927, 934-36 (1995)
    (discussing history of knock and announce rule); G. Robert Blakey, *The Rule of Announcement and Unlawful Entry*, 112 U. Pa.
27  L. Rev. 499, 500-07 (1964)(same). For example, it was well-established at English common law that notice need not be
    provided for a specific warrant to intercept and read postal communications. *See* Ex. 1, The House of Commons, *Report*
28  *from the Secret Committee on the Post-Office* 16 (Aug. 5, 1844) (discussing 16th and 17th century practice for postal warrants,
    noting "[t]he Letters which have been detained and opened are, unless retained by special order, as sometimes happens in
    criminal cases, closed and resealed, without affixing any mark to indicate that they have been so detained and opened....").

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Reply in Support of Motion to Dismiss - 12

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

postponed – without any statutory time limit – "on an ex parte showing of good cause to a judge of competent jurisdiction." *Id.* Section 2705(b), with its more-limited sweep, is consistent with 2518(8)(d) (and thus, per *Donovan*, the Fourth Amendment) –a conclusion reinforced by Congress's intent for 2518(8)(d) to reflect existing search warrant practice, including Federal Criminal Rule 41 and the decisions in *Berger* and *Katz v. U.S.*, 389 U.S. 347 (1967). *See* S. Rep. No. 90-1097, at 2194 (1968). Congress likewise had the Fourth Amendment in mind when writing the SCA, and, in § 2703(b)(1)(A), Congress determined that notice is not required when the Government obtains an SCA warrant using the procedures described in Rule 41. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 558 (1978) (Rule 41 "reflects '[t]he Fourth Amendment's policy against unreasonable searches and seizures'").[22] Like Title III and other statutory provisions from which Microsoft draws comparisons, the SCA therefore does not facially violate the Fourth Amendment rights of Microsoft's users.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss all claims.


Dated:  September 23, 2016

                                                 Respectfully submitted,


BENJAMIN C. MIZER                                ANNETTE L. HAYES
Principal Deputy Assistant                       United States Attorney
Attorney General                                 Western District of Washington


ANTHONY J. COPPOLINO                             HELEN J. BRUNNER
Deputy Director                                  Appellate Chief
Federal Programs Branch
                                                 KERRY KEEFE
                                                 Civil Chief

  */s/ ERIC J. SOSKIN*
ERIC J. SOSKIN, PA Bar #200663
JENNIE L. KNEEDLER
Trial Attorneys
U.S. Department of Justice

---

[22] The case law in Title III and other contexts cited by Microsoft likewise highlights the relevance – which Microsoft and amici ignore – of the routine notice of 2703 warrants to defendants in criminal proceedings, which is a factor supporting reasonableness because defendants can and do raise Fourth Amendment challenges there. *See U.S. v. Chun*, 503 F.2d 533, 537-38 (9th Cir. 1974) (notice beyond Title III's statutory requirements must be provided at appropriate stage before use in criminal proceeding); *cf. In re Sealed Case*, 310 F.3d 717, 741 (FISA Ct. Rev. 2002) (similar notice requirement set forth in 50 U.S.C. § 1806(c) is relevant to reasonableness inquiry). Despite the opportunity for such challenges, Microsoft can point to no case holding that a user has a right to notice of a 2703 warrant (in that context, or under other avenues for relief for users who become aware of a 2703 warrant for user content, *see, e.g.*, 18 U.S.C. §§ 2707, 2708).

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Reply in Support of Motion to Dismiss - 13

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

Civil Division
Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
(202) 353-0533 (telephone)
Eric.Soskin@usdoj.gov

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Reply in Support of Motion to Dismiss - 14

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533

1

2

## CERTIFICATE OF SERVICE

3       I hereby certify that, on this 23rd day of September, I electronically filed Defendants' Motion

4  to Dismiss with the Clerk of the Court using the CM/ECF system which will send notification of

5  such filing to the attorneys of record who are registered as such on the CM/ECF system.

6

7

8  Dated:  September 23, 2016                                  /s/ Eric J. Soskin

9                                                              ERIC J. SOSKIN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Microsoft v. United States Department of Justice*
16-CV-538JLR
Reply in Support of Motion to Dismiss - 15

United States Department of Justice
Federal Programs Branch
20 Mass. Ave. NW, Washington, DC 20530
202-353-0533