The Honorable James L. Robart

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>                Plaintiff,<br><br>   v.<br><br>THE UNITED STATES DEPARTMENT OF JUSTICE, and LORETTA LYNCH, in her official capacity as Attorney General of the United States,<br><br>                Defendants. | No. 2:16-cv-00538-JLR<br><br>MICROSOFT'S SUPPLEMENTAL BRIEF ON MOTION TO DISMISS [DKT. 38] IN RESPONSE TO COURT'S MINUTE ORDER [DKT. 103]<br><br>*Oral Argument Date*:<br>January 23, 2016, 10:00 a.m. |

MICROSOFT'S SUPPLEMENTAL BRIEF ON MOTION TO DISMISS (No. 2:16-cv-00538-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Microsoft files this brief in response to the Court's Order directing the parties to "address whether case law holding that Fourth Amendment rights are personal rights that cannot be vicariously asserted bars ... Microsoft ... from pursuing its Fourth Amendment claim on behalf of its customers and how that case law is to be reconciled with third-party standing doctrine," Minute Order [Dkt. 103] 1:20-2:2, and permitting supplemental briefs. *Id.* 2:17.  As explained below, the leading Supreme Court case holding that "Fourth Amendment rights are personal rights that cannot be vicariously asserted" *expressly* recognizes that third-party standing to assert those rights may be appropriate in "special circumstances."  Under settled Supreme Court authority, this case has the requisite "special circumstances" because Microsoft's customers cannot effectively protect their own Fourth Amendment rights, which the Government violates under a cloak of secrecy.

Microsoft's First Amended Complaint ("FAC") [Dkt. 28] asks the Court to declare unconstitutional two parts of the Electronic Communications Privacy Act ("ECPA") that, together, allow the Government surreptitiously to search the private, confidential documents and emails of Microsoft's customers.  First, Microsoft contends Section 2705(b) violates Microsoft's First Amendment rights by allowing the Government to obtain prior restraints without satisfying settled requirements.  FAC ¶ 6.  Second, to the extent Section 2703 allows the Government to search and seize the *contents* of communications stored in the cloud, Microsoft contends Section 2703 violates its customers' Fourth Amendment rights by failing to require notice.[1]  FAC ¶ 7.

As to Microsoft's second challenge, the Government argues Microsoft lacks standing to assert its customers' Fourth Amendment rights, relying primarily on *Rakas v. Illinois*, 439 U.S. 128, 133 (1978), and *Alderman v. United States*, 394 U.S. 165, 174 (1969).  *See* MTD 10:13-20. Both cases involved criminal defendants who sought to "assert ... an independent constitutional right of their own to exclude relevant and probative evidence because it was seized from another in violation of the Fourth Amendment." *Alderman*, 394 U.S. at 174.  (In *Alderman*, the evidence had been collected by eavesdropping on a third party, allegedly in violation of the third party's

---

[1] Microsoft's customers have privacy interests in the contents of anything they store in the cloud. "Personal email can, and often does, contain all the information once found in the 'papers and effects' mentioned explicitly in the Fourth Amendment." *In re Grand Jury Subpoena*, -- F.3d --, 2016 WL 3745541, at *5 (9th Cir. July 13, 2016).

MICROSOFT'S SUPPLEMENTAL BRIEF ON
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 1

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

rights; in *Rakas*, the evidence came from a search of a third party's car, which yielded ammunition and a rifle.) In declining to find such a right, the Court in *Alderman* reiterated "the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Id.* (citations omitted). The Court recognized that the "general rule" might sometimes give way—although it found no basis to do so on the facts of that case:

> None of the *special circumstances* which prompted *NAACP v. Alabama*, 357 U.S. 449 (1958), and *Barrows v. Jackson*, 346 U.S. 249 (1953), are present here. There is no necessity to exclude evidence against one defendant in order to protect the rights of another. No rights of the victim of an illegal search are at stake when the evidence is offered against some other party. The victim can and very probably will object for himself when and if it becomes important for him to do so.

394 U.S. at 174 (emphasis added). Nine years later, the Court in *Rakas* reiterated that a defendant cannot invoke the exclusionary rule to suppress evidence gathered in violation of a third party's rights. *Rakas*, 439 U.S. at 134. As in *Alderman*, the Court in *Rakas* emphasized the aggrieved party's ability to protect its own Fourth Amendment rights, either by moving to suppress or suing "to recover damages for the violation of his Fourth Amendment rights, or seek[ing] redress under state law for invasion of privacy or trespass." *Id.* (citations omitted). *Alderman* and *Rakas* thus establish a general rule against the vicarious assertion of Fourth Amendment rights, while recognizing that the rule yields in "special circumstances."

According to *Alderman*, the Court's decisions in *NAACP v. Alabama* and *Barrows v. Jackson* provide guidance as to what special circumstances warrant recognition of third-party standing. *Alderman*, 394 U.S. at 174. In *NAACP*, the organization invoked its members' rights under the Fourteenth Amendment in resisting an order requiring it to produce a membership list. The Court acknowledged (as in *Alderman* and *Rakas*) that it "has generally insisted that parties rely only on constitutional rights which are personal to themselves." *NAACP*, 357 U.S. at 459 (citation omitted). But members' rights to conceal their association with the organization would be nullified if they were required to step forward to litigate. *Id.* Thus, *NAACP* involved a special circumstance in which "constitutional rights of persons who are not immediately before the Court could not be effectively vindicated except through an appropriate representative before the Court." *Id.* (citing *Barrows*). *Barrows* likewise recognized that "[o]rdinarily, one may not claim standing

MICROSOFT'S SUPPLEMENTAL BRIEF ON
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 2

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

in this Court to vindicate the constitutional rights of some third party." *Barrows*, 346 U.S. at 255. But the Court found Caucasian property owners had standing to assert the constitutional rights of non-Caucasians to assert the invalidity of a discriminatory restrictive covenant. "[I]t would be difficult if not impossible for the persons whose rights are asserted to present their grievance before any court." *Id*. at 257.  The Supreme Court therefore concluded that "the reasons which underlie our rule denying standing to raise another's rights, which is only a rule of practice, are outweighed by the need to protect ... fundamental rights[.]" *Id.*

Neither *Alderman* nor *Rakas* presented these special circumstances because the parties whose Fourth Amendment rights were at stake *could* vindicate their rights. *Alderman*, 394 U.S. at 174 (third party "can and very probably will object for himself"); *Rakas*, 439 U.S. at 134 (third party can "recover damages for the violation of his Fourth Amendment rights, or seek redress under state law for invasion of privacy or trespass") (citation omitted). So, too, in the other cases the Court cites in its Minute Order. In *California Bankers Assoc. v. Shultz*, 416 U.S. 21 (1974), the ACLU, a bankers association, and a bank sued to invalidate a regulation imposing reporting obligations on cash transactions over $10,000. The Court found the ACLU lacked standing because it failed to allege its "transactions are required to be reported," and the Court did not "think that the California Bankers Association or the ... Bank [could] vicariously assert such Fourth Amendment claims on behalf of bank customers in general." *Id*. at 68-69. Although the Court offered no hint as to the basis for its view, the reason for denying third-party standing was obvious: any depositor who could allege its "transactions are required to be reported" would have standing to challenge the regulation. And in *Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014), the children of a person killed by police in a chase sought to rely on the Fourth Amendment rights not only of their decedent *but also* of a passenger in the decedent's car. The Court found they could not rely on the passenger's rights—which her heirs could assert: "If a suit were brought on behalf of Allen [the passenger] under either § 1983 or state tort law, the risk to Allen would be of central concern." *Id*. at 2022. Similarly, in *Ellwest Stereo Theatres, Inc. v. Wenner*, 681 F.2d 1243 (9th Cir. 1982), a case concerning an ordinance requiring adult video centers to have open booths, the

MICROSOFT'S SUPPLEMENTAL BRIEF ON
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 3

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Ninth Circuit disposed of standing by citing *Rakas* without elaboration—while also finding the Fourth Amendment claim "premature," since no allegedly unconstitutional searches had been conducted. *Id*. at 1248. Unlike the aggrieved parties in *NAACP* and *Barrows*, any *Ellwest* patron eventually subjected to an unlawful search would be able to assert his own rights.[2]

These cases do not undermine *NAACP* and *Barrows* or suggest that—contrary to the reference to those cases in *Alderman*—they do not apply to Fourth Amendment rights. In fact, *NAACP* and *Barrows* have become fixtures in third-party standing jurisprudence. The Supreme Court in *Singleton v. Wulff*, 428 U.S. 106 (1976), relied heavily on *NAACP* and *Barrows* in finding that a physician had standing to assert his patients' constitutional abortion rights, in part because of the impediments to efforts by women to assert those rights on their own behalf. *Singleton*, 428 U.S. at 116-17. And *Singleton*'s analysis of third-party standing in turn became the foundation for *Powers v. Ohio*, 499 U.S. 400 (1991), which distilled the principles in *NAACP*, *Barrows*, and *Singleton* into a test for determining when special circumstances justify third-party standing.[3]

*Powers* therefore stands as the contemporary articulation of the "special circumstances" acknowledged in *Alderman*—and those circumstances unquestionably exist here. The combined effect of Sections 2703 and 2705(b) means the Government may rifle through "the same kind of highly sensitive data one would have in 'papers' at home," *United States v. Cotterman*, 709 F.3d 952, 965 (9th Cir. 2013) (en banc), without the affected Microsoft customer ever knowing the Government had engaged in a search and seizure of her most private data. Not knowing of the intrusion, the customer would have no practical means of protesting or challenging any infringement of her Fourth Amendment rights—especially if (as commonly occurs) the investigation does not result in the customer's indictment. This case thus squarely presents a situation in which the "constitutional rights of persons who are not immediately before the Court

---

[2] This was in fact what defendants argued to the Ninth Circuit in *Ellwest*: "There is no evidence that the customers of Ellwest are incapable of representing their own interests to the [same] extent as third parties whose rights have been asserted by litigants in other cases." *Ellwest Stereo Theatres, Inc. v. Wenner*, Ninth Cir. No. 80-5732, Appellees' Reply (Dec. 1, 1980) at 7 (distinguishing *Ellwest* patrons from members in *NAACP*).

[3] *Powers* allows a litigant like Microsoft to assert another's rights if: "[1] The litigant [has] suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute; [2] the litigant [has] a close relation to the third party; and [3] there [is] some hindrance to the third party's ability to protect his or her own interests." *Powers*, 499 U.S. at 411 (citations omitted); *see also* Opp. [Dkt. 44] 17:6-19.

MICROSOFT'S SUPPLEMENTAL BRIEF ON
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 4

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

could not be effectively vindicated except through an appropriate representative before the Court." *NAACP*, 357 U.S. at 459; *see* Opp. [Dkt. 44] 19:15-20:2. On the facts alleged, the "rule of practice" that generally counsels against allowing assertion of third party constitutional rights must give way to "the need to protect ... fundamental rights[.]" *Barrows*, 346 U.S. at 257.

The Government has never offered a case suggesting a Fourth Amendment exception to the doctrine articulated in *NAACP*, *Barrows*, and their progeny. Nor has it cited a case rejecting *Alderman*'s guidance that circumstances such as those considered in *NAACP* and *Barrows*—i.e., where "it would be difficult if not impossible for the persons whose rights are asserted to present their grievance before any court," *Barrows*, 346 U.S. at 257—could give rise to third-party standing in a proper Fourth Amendment case. In fact, courts do conduct *Powers* analyses to determine whether litigants may bring claims based on infringement of others' Fourth Amendment rights. *See, e.g., Franklin v. Borough of Carteret Police Dep't.*, 2010 WL 4746740, at *3-4 (D. N.J. Nov. 15, 2010) (applying *Powers*, holding parent had standing to bring excessive force claim under Fourth Amendment on behalf of minor child); *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 23-33 (D.D.C. 2010)[4] (applying *Powers*, concluding father lacked standing to pursue Fourth Amendment claim of adult son); *Daly v. Morgenthau*, 1998 WL 851611, at *4 (S.D.N.Y. Dec. 9, 1998) (citing *Rakas* before conducting *Powers* analysis; no standing because "no indication that [the third party] is hindered in her ability to protect her own interests"); *Deraffele v. City of Williamsport,* 2015 WL 5781409, at *6-7 (M.D. Pa. Aug. 19, 2015) (after conducting *Powers* analysis, concluding landlord could not assert tenants' Fourth Amendment rights; "he has not shown that the tenants face a substantial obstacle to asserting their own rights and interests").

Under *Alderman* and *Powers*, special circumstances establish Microsoft's standing to assert its customers' Fourth Amendment rights. *See* Opp. [Dkt. 44] 16:18-20:2. Microsoft asks the Court to deny the Government's Motion to Dismiss.

---

[4] In *Al-Aulaqi*, the Government did *not* argue *Rakas* or *Alderman* barred the father's assertion of his son's Fourth Amendment rights; instead, it argued the *Powers* factors. *See Al-Aulaqi v. Obama*, D.D.C. No. 10-cv-1469, Def. Reply (Oct. 18, 2010) at 5–9.

MICROSOFT'S SUPPLEMENTAL BRIEF ON
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 5

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

DATED this 22nd day of January, 2017.

    Davis Wright Tremaine LLP

    By s/ *Stephen M. Rummage*
        Stephen M. Rummage, WSBA #11168
        Ambika K. Doran, WSBA #38237
        1201 Third Avenue, Suite 2200
        Seattle, WA 98101-3045
        Telephone: 206-757-8136
        Fax: 206-757-7136
        E-mail: steverummage@dwt.com
            ambikadoran@dwt.com

    Laura Handman*
    Davis Wright Tremaine LLP
    1919 Pennsylvania Ave NW #800
    Washington, DC 20006
    Telephone: (202) 973-4200
    Fax: (202) 973-4429
    E-mail: laurahandman@dwt.com

    James M. Garland*
    Alexander A. Berengaut*
    Katharine R. Goodloe*
    Covington and Burling LLP
    One CityCenter
    850 10th St., N.W.
    Washington, DC 20001
    Tel: (202) 662-6000
    Fax: (202) 662-6291
    E-mail: jgarland@cov.com,
    aberengaut@cov.com, kgoodloe@cov.com

    Bradford L. Smith
    David M. Howard
    Jonathan Palmer
    Microsoft Corporation
    One Microsoft Way
    Redmond, WA 98052

    *Admitted *pro hac vice*

    *Attorneys for Microsoft Corporation*

MICROSOFT'S SUPPLEMENTAL BRIEF ON
MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 6

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.

DATED this 22nd day of January, 2017.

        Davis Wright Tremaine LLP
        *Attorneys for Microsoft Corporation*

        By *s/ Stephen M. Rummage*
            Stephen M. Rummage, WSBA #11168
            1201 Third Avenue, Suite 2200
            Seattle, Washington  98101-3045
            Telephone:  (206) 622-3150
            Fax:  (206) 757-7700
            E-mail:  steverummage@dwt.com

MICROSOFT'S SUPPLEMENTAL BRIEF ON MOTION TO DISMISS (No. 2:16-cv-00538-JLR) - 7

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax