UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>                        Plaintiff,<br><br>        v.<br><br>UNITED STATES DEPARTMENT<br>OF JUSTICE,<br><br>                        Defendant. | CASE NO. C16-0538JLR<br><br>ORDER ON MOTION TO<br>DISMISS |

## I.    INTRODUCTION

Before the court is Defendant United States Department of Justice's ("the Government") motion to dismiss Plaintiff Microsoft Corporation's first amended complaint.  (Mot. (Dkt. # 38).)  Microsoft opposes the Government's motion.  (Resp. (Dkt. # 44).)  The court has considered the Government's motion, Microsoft's opposition to the Government's motion (Resp. (Dkt. # 44)), the Government's reply (Reply (Dkt. # 92)), the filings of amici (Amici Br. (Dkt. ## 43, 48, 49, 56, 57, 58, 61, 66, 71)), the

relevant portions of the record, and the applicable law.  In addition, the court heard

argument from the parties on January 23, 2017.  (1/23/17 Min. Entry (Dkt. # 105).)

Being fully advised, the court GRANTS IN PART and DENIES IN PART the

Government's motion for the reasons set forth below.

## II.   BACKGROUND

**A.    Statutory Background**

The Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C.

§ 2510, *et seq.*, "addresses various areas of electronic surveillance, including wiretaps,

tracking devices, stored wire and electronic communications, pen registers, and trap and

trace devices."  *See United States v. Anderson*, No. 2:15-cr-00200-KJD-PAL, 2016 WL

4191045, at *7 (D. Nev. Apr. 27, 2016).  ECPA addresses "electronic communications

services (e.g., the transfer of electronic messages, such as email, between computer users)

and remote computing services (e.g., the provision of offsite computer storage or

processing of data and files)."  *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1103 (9th Cir.

2014).  Under ECPA, an electronic communications service provider ("ECS provider") is

an entity that offers "any service which provides to users thereof the ability to send or

receive wire or electronic communications," 18 U.S.C. § 2510(15), and a remote

computing service provider ("RCS provider") is an entity that provides "to the

public . . . computer storage or processing services by means of an electronic

communications system," 18 U.S.C. § 2711(2).  A subscriber is a person who uses one or

more of those services.  *See, e.g.*, *In re Application of the U.S. for an Order Pursuant to

18 U.S.C. § 2705(b)*, 131 F. Supp. 3d 1266, 1268 (D. Utah 2015).

1    Title II of ECPA—the Stored Communications Act ("the SCA"), 18 U.S.C.

2 § 2701, *et seq.*—governs the government's access to "electronic information stored in

3 third party computers." *In re Zynga*, 750 F.3d at 1104; *see also* Stephen Wm. Smith,

4 *Gagged, Sealed & Delivered: Reforming ECPA's Secret Docket*, 6 HARV. L. & POL'Y

5 REV. 313, 324 (2012) [hereinafter "*Reforming ECPA's Secret Docket*"] ("Title II of the

6 ECPA . . . prescribes requirements and procedures under which the government can

7 obtain court orders (known as § 2703(d) orders) compelling access to stored wire and

8 electronic communications, as well as related subscriber and customer account

9 information."). Two sections of the SCA, 18 U.S.C. § 2703 and 18 U.S.C. § 2705,

10 "regulate relations between a government entity which seeks information; a service

11 provider which holds information; and the subscriber of the service who owns the

12 information and is therefore a target of investigation." *In re Application of the U.S.*, 131

13 F. Supp. 3d at 1268. The information sought from ECS and RCS providers may contain

14 "content" or "non-content" data. *Id.* Content includes items such as emails and

15 documents, while non-content data includes things like email addresses and IP addresses.

16 *See, e.g.*, *Req. for Int'l Judicial Assistance from the Turkish Ministry of Justice*, No.

17 16-mc-80108-JSC, 2016 WL 2957032, at *1 (N.D. Cal. May 23, 2016); *Integral Dev.*

18 *Corp. v. Tolat*, No. C 12-06575 JSW (LB), 2013 WL 1389691, at *1 (N.D. Cal. May 30,

19 2013).

20    Section 2703 of the SCA authorizes the government to acquire a subscriber's

21 information from a service provider when the subscriber is a "target" of the government's

22 information request. *See* 18 U.S.C. § 2703. The provision "establishes a complex

1   scheme pursuant to which a governmental entity can, after fulfilling certain procedural

2   and notice requirements, obtain information from [a service provider] via administrative

3   subpoena or grand jury or trial subpoena." *Crispin v. Christian Audigier, Inc.*, 717 F.

4   Supp. 2d 965, 974-75 (C.D. Cal. 2010) (citing 18 U.S.C. § 2703(b)).  Section 2703

5   requires the government to give notice to subscribers that it has obtained their

6   information from a service provider in some but not all circumstances.  *See* 18 U.S.C.

7   § 2703(a)-(c) (describing various notice requirements for communication contents and

8   records in electronic storage and remote computing services).

9       Section 2705 of the SCA addresses when the government may withhold notice that

10  is otherwise required under Section 2703.  *See* 18 U.S.C. § 2705(a)-(b); *In re Application

11  of the U.S.*, 131 F. Supp. 3d at 1268.  Under Section 2705(a), the government may delay

12  giving notice to the subscriber that the government has collected the subscriber's

13  information if certain requirements are met.  *Id.* at 1267.  Under Section 2705(b), the

14  government may apply for "a preclusion-of-notice order."  *Id.*  Such an order

15  "command[s] a provider of electronic communications service or remote computing

16  service not to notify any person of the existence of a grand jury subpoena [or other

17  acceptable court order under the SCA] which the Government has served on the

18  provider."  *Id.*; *see also Reforming ECPA's Secret Docket* at 325 ("The SCA does

19  authorize the court to issue a gag order (called 'preclusion of notice') to service

20  providers, commanding them not to notify any other person of the existence of the court

21  order.").  A court may issue such a "preclusion-of-notice order" if the court

22  //

determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in (1) endangering the life or physical safety of an individual; (2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

18 U.S.C. § 2705(b).  "The combined effect of [Sections 2703] and 2705(b) is that the subscriber may never receive notice of a warrant to obtain content information from a remote computing service and the government may seek an order under § 2705(b) that restrains the provider indefinitely from notifying the subscriber."  *In re Application of the U.S.*, 131 F. Supp. 3d at 1271.

Since Congress passed the SCA in 1986, the technological landscape has changed considerably.  *See* Orin Kerr, *The Next Generation Communications Privacy Act*, 162 U. PA. L. REV. 373, 375 (2014) ("In recent years, ECPA has become widely perceived as outdated."); *see also id.* at 376 (noting that at the time Congress passed ECPA, "[a]ccess to stored communications was a lesser concern," but "[s]ervice providers now routinely store everything, and they can turn over everything to law enforcement").  As technology changes, the public has vigorously debated the appropriate reach of the government's electronic surveillance of its citizens.  *See, e.g.*, *Reforming ECPA's Secret Docket* at 313-14; Jonathan Manes, *Online Service Providers & Surveillance Law Technology*, 125 Yale L.J. F. 343, 346 (Mar. 3, 2016) ("Over the past two-and-a-half years, we have had the most robust public discussion about surveillance in a generation.").  As former Magistrate Judge Paul S. Grewal noted, "[w]arrants for location data, cell phone records[,] and especially email rule the day." *In*

1    *Matter of Search Warrant for [Redacted]@hotmail.com*, 74 F. Supp. 3d 1184, 1185

2    (N.D. Cal. 2014).  And according to Magistrate Judge Stephen Wm. Smith, the "ECPA

3    docket . . . handles tens of thousands of secret cases every year."  *Reforming ECPA's*

4    *Secret Docket* at 313.

5         The public debate has intensified as people increasingly store their information in

6    the cloud[1] and on devices with significant storage capacity.  *See In re Grand Jury*

7    *Subpoena, JK-15-029*, 828 F.3d 1083, 1090 (9th Cir. 2016) (quoting *United States v.*

8    *Cotterman*, 709 F.3d 952, 964 (9th Cir. 2013)) (noting that "electronic storage devices

9    such as laptops 'contain the most intimate details of our lives:  financial records,

10   confidential business documents, medical records[,] and private emails,'" which "'are

11   expected to be kept private'").  Government surveillance aided by service providers

12   creates unique considerations because of the vast amount of data service providers have

13   about their customers.  For example, "[i]nternet service providers know the websites we

14   have viewed.  Google keeps records of our searches.  Facebook keeps records of our

15   'friends,' our communications, and what we 'like.'"  *Online Service Providers &*

16   *Surveillance Law Technology* at 349.  These developments have led several courts to

17   conclude that certain material stored with providers deserves constitutional protection.

18   *See, e.g.*, *In re Grand Jury Subpoena*, 828 F.3d at 1090 ("[E]mails are to be treated as

19

20   _____

21        [1] The "cloud" is "a metaphor for the ethereal internet."  *In re U.S.'s Application for a Search Warrant to Seize & Search Elec. Devices from Edward Cunnius*, 770 F. Supp. 2d 1138, 1144 n.5 (W.D. Wash. 2011) (internal quotations omitted) (quoting David A. Couillard,

22   *Defogging the Cloud: Applying Fourth Amendment Principles to Evolving Privacy Expectations in Cloud Computing*, 93 MINN. L. REV. 2205, 2216 (2009)).

1  closed, addressed packages for expectation-of-privacy purposes."); *Search of Info.*

2  *Associated with Email Addresses Stored at Premises Controlled by Microsoft Corp.*,

3  --- F. Supp. 3d ---, 2016 WL 5410401, at *8 (D. Kan. Sept. 28, 2016) ("In considering the

4  email context specifically, courts have held an individual enjoys a right to privacy in his

5  or her emails."); *United States v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010) (holding

6  that "a subscriber enjoys a reasonable expectation of privacy in the contents of emails").

7  **B.    This Lawsuit**

8          Against this statutory and technological backdrop, Microsoft[2] filed this suit on

9  April 14, 2016 (Compl. (Dkt. # 1)), and later amended its complaint on June 17, 2016

10  (FAC (Dkt. # 28)).  Microsoft seeks declaratory relief.  (*See id.* ¶¶ 33, 41.)  The gravamen

11  of Microsoft's complaint is that Section 2705(b) is unconstitutional under the First and

12  Fourth Amendments and that Section 2703 is unconstitutional under the Fourth

13  Amendment "to the extent it absolves the government of the obligation to give notice to a

14  customer whose content it obtains by warrant, without regard to the circumstances of the

15  particular case." (*Id.* ¶ 35.)  In Microsoft's view, "the government has increasingly

16  adopted the tactic of obtaining the private digital documents of cloud customers not from

17  the customers themselves, but through legal process directed at online cloud providers

18  like Microsoft." (*Id.* ¶ 4.)  The government then "seeks secrecy orders under 18 U.S.C.

19  § 2705(b) to prevent Microsoft from telling its customers (or anyone else) of the

20  government's demands" for that information.  (*Id.*)  According to Microsoft, "[t]he vast

21

22  _____

[2] Microsoft is both an ECS provider and an RCS provider.  *See Crispin*, 717 F. Supp. 2d at 978 (citing *United States v. Weaver*, 636 F. Supp. 2d 769, 770 (C.D. Ill. 2009)).

1    majority of these secrecy orders relate[] to consumer accounts and prevent Microsoft

2    from telling affected individuals about the government's intrusion into their personal

3    affairs; others prevent Microsoft from telling business customers that the government has

4    searched and seized the emails of individual employees of the customer." (*Id.* ¶ 16.)

5    Microsoft alleges that federal courts have issued "more than 3,250 secrecy orders" over a

6    20-month period ending in May 2016, and that nearly two-thirds of those orders are for

7    an indefinite length of time. (*Id.* ¶ 5.)

8           Microsoft contends that Section 2705(b) is unconstitutional facially and as applied

9    because it violates the First Amendment right of a business to "talk to [the business's]

10   customers and to discuss how the government conducts its investigations." (*Id.* ¶ 1.)

11   Specifically, Microsoft contends that Section 2705(b) is overbroad, imposes

12   impermissible prior restraints on speech, imposes impermissible content-based

13   restrictions on speech, and improperly inhibits the public's right to access search

14   warrants. (*Id.* ¶¶ 23-26.)

15          Microsoft also alleges that Sections 2705(b) and 2703 are unconstitutional facially

16   and as applied because they violate the Fourth Amendment right of "people and

17   businesses . . . to know if the government searches or seizes their property." (*Id.* ¶ 33.)

18   Microsoft contends that the statutes are facially invalid because they allow the

19   government to (1) forgo notifying individuals of searches and seizures, and (2) obtain

20   secrecy orders that "prohibit providers from telling customers when the government has

21   accessed their private information" without constitutionally sufficient proof and without

22   sufficient tailoring. (*Id.* ¶ 35.) Microsoft further alleges that Sections 2703 and 2705(b)

are unconstitutional as applied because "[t]he absence of a government notice obligation, combined with the imposition of secrecy orders on Microsoft, has resulted, and will continue to result, in unconstitutional delay of notice to Microsoft's customers, in violation of their Fourth Amendment rights." (*Id.* ¶ 40.)  Microsoft asserts that it has third-party standing to vindicate its customers' rights to notice of search and seizure under the Fourth Amendment.  (*Id.* ¶¶ 38-39.)

The Government moves to dismiss Microsoft's first amended complaint for lack of standing and failure to state a claim.  (*See* Mot.)

### III.   ANALYSIS

**A.   Legal Standards**

1. <u>Motion to Dismiss Under Rule 12(b)(1)</u>

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'"  *Clapper v. Amnesty Int'l USA*, --- U.S. ---, 133 S. Ct. 1138, 1146 (2013).  The case or controversy requirement demands that a plaintiff have standing.  *See id.*; *see also Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1547 (2016) ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy.").  To establish standing, a plaintiff must demonstrate three elements:  (1) a "concrete, particularized, and actual or imminent" injury that is (2) "fairly traceable to the challenged action" and (3) "redressable by a favorable ruling."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).  These requirements are more succinctly referred to as injury, causation, and redressability.  *Nw. Immigrant Rights*

//

1   *Project v. United States Citizenship & Immigration Servs.*, --- F.R.D. ---, 2016 WL

2   5817078, at *6 (W.D. Wash. Oct. 5, 2016).

3          Special standing considerations apply to a declaratory judgment action.

4   "Declaratory judgment is not a corrective remedy and should not be used to remedy past

5   wrongs." *Williams v. Bank of Am.*, No. 2:12-cv-2513 JAM AC PS, 2013 WL 1907529, at

6   *5-6 (E.D. Cal. May 7, 2013).  Accordingly, when a "plaintiff[] seeks declaratory and

7   injunctive relief only," "there is a further requirement that [the plaintiff] show a very

8   significant possibility of future harm" in addition to the three Article III standing

9   elements.  *See San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir.

10  1996); *see also Canatella v. California*, 304 F.3d 843, 852 (9th Cir. 2002) ("In the

11  particular context of injunctive and declaratory relief, a plaintiff must show that he has

12  suffered or is threatened with a concrete and particularized legal harm . . . coupled with a

13  sufficient likelihood that he will again be wronged in a similar way." (citations and

14  internal quotation marks omitted)); *Sample v. Johnson*, 771 F.2d 1335, 1340 (9th Cir.

15  1985) ("[P]laintiffs must demonstrate a credible threat exists that they will again be

16  subject to the specific injury for which they seek injunctive or declaratory relief."

17  (internal quotations omitted)).  In other words, a plaintiff may not "demonstrate only a

18  past injury." *San Diego Cty. Gun Rights*, 98 F.3d at 1126.

19         "The plaintiff, as the party invoking federal jurisdiction, bears the burden of

20  establishing these elements." *Spokeo*, 136 S. Ct. at 1547.  "Where . . . a case is at the

21  pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element,"

22  *id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)), and "[t]he court analyzes

standing claim by claim," *Antman v. Uber Techs., Inc.*, No. 15-cr-01175-LB, 2015 WL

6123054, at *9 (N.D. Cal. Oct. 19, 2015). "When a motion to dismiss attacks

subject-matter jurisdiction under Rule 12(b)(1) on the face of the complaint, the court

assumes the factual allegations in the complaint are true and draws all reasonable

inferences in the plaintiff's favor." *City of L.A. v. JPMorgan Chase & Co.*, 22 F. Supp.

3d 1047, 1052 (C.D. Cal. 2014). "The jurisdictional question of standing precedes, and

does not require, analysis of the merits" of the plaintiff's claims. *Equity Lifestyle Props.,*

*Inc. v. Cty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2007).

      2.  <u>Motion to Dismiss Under Rule 12(b)(6)</u>

      When considering a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), the court construes the complaint in the light most favorable to the nonmoving

party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.

2005). The court must accept all well-pleaded allegations of material fact as true and

draw all reasonable inferences in favor of the plaintiff. *See Wyler Summit P'ship v.*

*Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus*

*VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

//

**B.    First Amendment Claim**

The Government contends that Microsoft's First Amendment challenge fails on several grounds.  The court addresses each of the Government's arguments in turn.

1.  Standing

The Government first argues that Microsoft lacks standing to challenge Section 2705(b) under the First Amendment because Microsoft fails to identity a concrete and particularized injury or a favorable judgment that would redress Microsoft's alleged injury.  (Mot. at 10-13.)  Specifically, the Government argues that Microsoft has not identified a concrete and particularized injury and contends that a favorable judgment would not redress Microsoft's alleged injury.  (*See id.* at 10-12.)

a.  *Injury in Fact and Likelihood of Future Injury*

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  An injury is particularized when it "affect[s] the plaintiff in a personal and individual way."  *Lujan*, 504 U.S. at 560 n.1.  An injury is concrete when it actually exists.  *See Spokeo*, 136 S. Ct. at 1548 ("A 'concrete' injury must be 'de facto'; that is, it must actually exist.").  In addition, because it seeks declaratory relief, Microsoft must allege a likelihood of future injury.  *See Canatella*, 304 F.3d at 852.

Microsoft alleges that Section 2705(b) impinges on its First Amendment rights because the statute allows court orders that imposes prior restraints and content-based

1    restrictions on speech.  (*See* FAC ¶¶ 24 ("The statute authorizes secrecy orders that

2    prohibit, *ex ante*, providers such as Microsoft from engaging in core protected speech

3    under the First Amendment, i.e., speech about the government's access to customers'

4    sensitive communications and documents and its increased surveillance on the Internet."),

5    25 ("Secrecy orders issued under Section 2705(b) also function as content-based

6    restrictions on speech . . . .").)  Microsoft also asserts that orders issued under Section

7    2705(b) "improperly inhibit the public's right of access to search warrants under both the

8    common law and the First Amendment."  (*Id.* ¶ 26.)  In its response to the Government's

9    motion, Microsoft contends that it has suffered "thousands of concrete, particularized

10   injuries" in the form of "the secrecy orders to which Microsoft has been subject since

11   2014."  (Resp. at 12 (emphasis omitted) (citing FAC ¶ 16).)  Microsoft further argues that

12   "Section 2705(b) also inflicts economic injury on Microsoft by eroding customer

13   confidence in its cloud services."  (*Id.* at 13 (citing FAC ¶¶ 5, 39)); *see also San Diego*

14   *Cty. Gun Rights*, 98 F.3d at 1130 ("Economic injury is clearly a sufficient basis for

15   standing.").  Microsoft contends that the Government's arguments regarding the injury

16   element are misplaced because the arguments "preview the Government's flawed merits

17   argument that Section 2705(b) passes constitutional muster, just because some 2705(b)

18   orders must be constitutional."  (Resp. at 13.)

19        The court finds that Microsoft has sufficiently alleged an injury-in-fact and a

20   likelihood of future injury.  Microsoft alleges "an invasion of" its "legally protected

21   interest" in speaking about government investigations due to indefinite nondisclosure

22

1    orders issued pursuant to Section 2705(b).[3]  (FAC ¶¶ 1 ("[Section 2705(b)]

2    violates . . . the First Amendment, which enshrines Microsoft's rights to talk to its

3    customers and to discuss how the government conducts its investigations . . . ."); 5

4    (alleging that non-disclosure orders "have impaired Microsoft's right to be transparent

5    with its customers, a right guaranteed by the First Amendment"); 24; 32-33.)  The court

6    concludes that Section 2705(b) orders that indefinitely prevent Microsoft from speaking

7    about government investigations implicate Microsoft's First Amendment rights.

8             First Amendment rights must be balanced against "the substantial burden openness

9    [may] impose on government investigations."  *Times Mirror Co. v. United States*, 873

10   F.2d 1210, 1217 (9th Cir. 1989) (holding that the First Amendment did not guarantee

11   public access to warrant applications while a pre-indictment investigation was ongoing,

12   but declining to decide whether there was such a right post-indictment); *see also In re*

13   *§ 2703(d)*, 787 F. Supp. 2d 430, 438 (E.D. Va. 2011) (noting that First Amendment

14   interests may have to "yield to the investigatory process" under certain circumstances).

15   In at least some circumstances, however, the Government's interest in keeping

16   investigations secret dissipates after an investigation concludes and at that point, First

17   Amendment rights may outweigh the Government interest in secrecy.  *See In re Sealing*

18   *& Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876 (S.D. Tex. 2008); *In*

19   *Matter of Search Warrant*, 74 F. Supp. 3d at 1186 ("If the court were dealing with a

20

21             ─────────────────
         [3] In arguing that Microsoft has failed to state a First Amendment claim, the Government
22   argues that Microsoft does not have an "absolute right" to speak about the Government's
     investigations.  The court addresses that argument *infra* § III.C.3.a.

1   grand jury subpoena, with its historical presumption of secrecy, perhaps an infinite period

2   of Microsoft silence would be appropriate.  But in the absence of such a historical

3   presumption, the First Amendment rights of both Microsoft and the public, to say nothing

4   of the rights of the target, must be given at least some consideration.").  When the

5   government's concern dissipates, the First Amendment's protection of speech about

6   governmental activity—including criminal investigations—warrants consideration.  *See*

7   *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1034 (1991) ("There is no question that

8   speech critical of the exercise of the State's power lies at the very center of the First

9   Amendment."); *Landmark Commc'ns., Inc. v. Virginia*, 435 U.S. 829, 838 (1978)

10   ("[T]here is practically universal agreement that a major purpose of [the First]

11   Amendment was to protect the free discussion of governmental affairs.").

12       Accordingly, the court concludes that Microsoft has adequately alleged an injury

13   to a "legally protected interest."  For example, the Southern District of Texas considered

14   whether "electronic surveillance court orders may properly be kept secret, by sealing and

15   non-disclosure provisions, for an indefinite period beyond the underlying criminal

16   investigation."  *Id.* at 877.  The court concluded that "setting a fixed expiration date on

17   sealing and non-disclosure of electronic surveillance orders is not merely better practice,

18   but required by . . . the First Amendment prohibition against prior restraint of speech."

19   *Id.* at 878.  In a case involving grand jury proceedings, the Supreme Court similarly held

20   that a "Florida law [that] prohibit[ed] a grand jury witness from disclosing his own

21   testimony after the term of the grand jury has ended . . . violates the First Amendment to

22   the United States Constitution."  *Butterworth v. Smith*, 494 U.S. 624, 626 (1990).  And,

1    finally, the Ninth Circuit Court of Appeals decided that there is no First Amendment right

2    to access warrant application materials during an ongoing investigation pre-indictment,

3    but expressly left open the question of whether the public has such a right after an

4    indictment issues.  *Times Mirror Co.*, 873 F.2d at 1217; *see also United States v. Bus. of*

5    *Custer Battlefield Museum & Store*, 658 F.3d 1188, 1194-95 (9th Cir. 2011) (stating that

6    the Ninth Circuit had "expressly reserved whether the public has a constitutional right of

7    access after an investigation has been terminated").  These cases either necessarily imply

8    or suggest that indefinite non-disclosure orders that extend beyond the life of an ongoing

9    investigation implicate First Amendment rights.

10           In addition to alleging an injury to a legally protected interest, Microsoft

11    adequately alleges that this "invasion" is "particularized" because the injury Microsoft

12    complains of "affect[s] [Microsoft] in a personal and individual way."  *Lujan*, 504 U.S. at

13    560 n.1.  Microsoft's alleged injury is also concrete because Microsoft alleges that it has

14    personally been subjected to thousands of indefinite non-disclosure orders that implicate

15    its First Amendment Rights.  (*See, e.g.*, FAC ¶ 5); *see also Spokeo*, 136 S. Ct. at 1548

16    ("A 'concrete' injury must be 'de facto'; that is, it must actually exist.")  For these

17    reasons, the court concludes that Microsoft has adequately alleged an injury-in-fact.

18           The Government makes several arguments to demonstrate that Microsoft has not

19    alleged a First Amendment injury, but those arguments flow from the same premises:

20    that the nondisclosure orders to which Microsoft is subject under Section 2705(b) contain

21    different terms, were issued according to the specific context in which they arose, and

22    require individualized consideration of the context in which each order was issued.  (*See*

1   Mot. at 11.)  Essentially, the Government argues that Microsoft alleges a generalized

2   grievance that cannot confer standing.  (*See* Reply at 2-3.)

3        The court is unpersuaded.  A generalized grievance is an "asserted harm" that is

4   "shared in substantially equal measure by all or a large class of citizens."  *Warth*, 422

5   U.S. at 499.  Accordingly, a generalized grievance presents "abstract questions of wide

6   public significance."  *Valley Forge*, 454 U.S. at 474-75.  Here, however, Microsoft

7   alleges that it has been subjected to thousands of nondisclosure orders that Microsoft

8   asserts violate its First Amendment rights.  (*See* Compl. ¶ 5.)  Microsoft reasonably

9   believes that it is likely to be subject to similar orders in the future.  (*Id.* ¶ 33.)  Although

10  the privacy issues underpinning these nondisclosure orders may be of widespread public

11  interest, Microsoft seeks to vindicate its own First Amendment rights.  Whether or not the

12  orders were issued under varying circumstances or the ultimate issues in this case may

13  have to be resolved "using legal tests that are context[-] and fact-specific" (Mot. at 11),

14  Microsoft has alleged a concrete and particularized First Amendment injury.

15       In addition, the Government's arguments assail the merits of Microsoft's First

16  Amendment claim, not Microsoft's standing.  (*See* Mot. at 10-11.)  For example, the

17  Government argues that Microsoft has not "identif[ied] any particular order that this

18  [c]ourt could analyze to determine the existence, nature, and extent of injury."  (*Id.* at 10.)

19  The Government further argues that the Government obtains the nondisclosure orders via

20  different procedures, which means the court can "derive[] . . . no common legal

21  principle" by which to analyze the orders under the First Amendment.  (*Id.* at 10-11.)  At

22  this stage, however, Microsoft is not required to provide evidence to support its claims.  It

1  must only allege that it has suffered an injury in fact, *City of L.A.*, 22 F. Supp. 3d at 1052,

2  and the court finds that Microsoft has adequately done so.

3        Microsoft also sufficiently alleges a likelihood of similar harm in the future.  *See*

4  *Canatella*, 304 F.3d at 854.  Specifically, Microsoft asserts that without a declaration that

5  Section 2705(b) is unconstitutional insofar as it permits indefinite nondisclosure orders,

6  "the government will continue to seek, and courts will continue to issue, secrecy orders

7  that impermissibly restrict the First Amendment rights of Microsoft and similarly situated

8  providers."  (FAC ¶ 33.)  Microsoft bolsters its prediction by alleging that over a

9  20-month period preceding this lawsuit, the Government sought and obtained 3,250

10  orders–at least 450[4] of which accompanied search warrants—that contained indefinite

11  nondisclosure provisions.  (*Id.* ¶¶ 5, 32.)  In addition, Microsoft alleges that in this

12  District alone, it has received at least 63 such orders since September 2014.  (*Id.* ¶ 16.)

13  Because these orders have been frequent and issued recently, the Government will likely

14  continue to seek and obtain them.  Accordingly, Microsoft's "fears" of similar injuries in

15  the future are not "merely speculative."[5]  *Mendia v. Garcia*, 165 F. Supp. 3d 861, 895

16  (N.D. Cal. 2016).

17  _____

18      [4] In different places in its first amended complaint, Microsoft alleges that either 450 or 650 nondisclosure orders accompanied search warrants.  (*Compare* FAC ¶ 5, *with id.* ¶ 32.)

19      [5] At oral argument, Microsoft styled its challenge to the constitutionality of Section

20  2705(b) as a kind of pre-enforcement challenge.  A pre-enforcement challenge raises ripeness questions.  *See ProtectMarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 839 (9th Cir. 2014). Ripeness is a jurisdictional consideration because it implicates Article III's case or controversy requirement.  *See Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 980 (9th Cir.

21  2011).  However, due to the overwhelming importance of the rights protected by the First Amendment, courts relax the usual standing principles and apply a three-part test to determine

22  whether a plaintiff has established standing to pursue a First Amendment claim when the

1    For the foregoing reasons, the court concludes that Microsoft has adequately

2    alleged an injury and a likelihood of similar future injury for the purposes of establishing

3    standing to pursue its First Amendment claim.

4         *b. Causation*

5         "To show causation, the plaintiff must demonstrate a causal connection between

6    the injury and the conduct complained of—the injury has to be fairly traceable to the

7    challenged action of the defendant, and not the result of the independent action of some

8    third party not before the court." *Salmon Spawning & Recovery All. v. Gutierrez,* 545

9    F.3d 1220, 1227 (9th Cir. 2008). "Although the traceability of a plaintiff's harm to the

10   defendant's actions need not rise to the level of proximate causation, Article III does

11   require proof of a substantial likelihood that the defendant's conduct caused plaintiff's

12   injury in fact." *Native Village of Kivalina v. ExxonMobil Corp.*, 663 F. Supp. 2d 863,

13   877 (N.D. Cal. 2009) (internal quotation marks omitted).

14        Neither party substantively addresses the causation element of the standing

15   inquiry. (*See* Mot.; Resp.) However, the court has an independent duty to ensure that it

16   has subject matter jurisdiction over this action. *See Arbaugh v. Y&H Corp.*, 546 U.S.

17   500, 514 (2006). Microsoft alleges that indefinite nondisclosure orders issued pursuant to

18

19   ───────────────

plaintiff has not yet suffered an actual injury. *See Alaska Right to Life Political Action Comm. v.*
20   *Feldman*, 504 F.3d 840, 851 (9th Cir. 2007); *see also Wolfson v. Brammer*, 616 F.3d 1045, 1058
     (9th Cir. 2010). Despite this characterization, however, the court finds for the reasons noted
21   above that Microsoft need not allege facts regarding the three elements necessary to mount a
     pre-enforcement challenge. *See Brammer*, 616 F.3d at 1058. Because Microsoft has alleged a
     past injury, it need only allege a likelihood of similar injury in the future in this action for
22   declaratory relief. *See, e.g.*, *Canatella*, 304 F.3d at 852.

1   Section 2705(b) prevent Microsoft from engaging in protected speech.  (*See generally*

2   FAC.)  This alleged injury—the curtailing of Microsoft's speech—is fairly traceable to

3   the conduct complained of—indefinite nondisclosure orders issued pursuant to Section

4   2705(b).  Accordingly, the court finds that Microsoft has sufficiently alleged causation.

5                   c.  *Redressability*

6          A plaintiff establishes redressability by demonstrating "a 'substantial likelihood'

7   that the requested relief will remedy the alleged injury in fact."  *Vermont Agency of Nat.*

8   *Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000).  "[A] plaintiff satisfies the

9   redressability requirement when he shows that a favorable decision will relieve a discrete

10  injury[, but he] need not show that a favorable decision will relieve his *every* injury."

11  *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (plurality opinion).  "In the context of

12  declaratory relief, a plaintiff demonstrates redressability if the court's statement would

13  require the defendant to act in any way that would redress past injuries or prevent future

14  harm."  *Viet. Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 205 (N.D. Cal. 2012) (internal

15  quotation marks omitted); *accord Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

16  108 (1998) ("If respondent had alleged a continuing violation or the imminence of a

17  future violation, the injunctive relief requested would remedy that alleged harm.").  A

18  plaintiff is entitled to a presumption of redressability where he "seeks declaratory relief

19  against the type of government action that indisputably caused him injury."  *Mayfield v.*

20  *United States*, 599 F.3d 964, 971 (9th Cir. 2010) (determining whether redressability

21  requirement was met in a declaratory judgment action involving the constitutionality of

22  the Foreign Intelligence Surveillance Act ("FISA")).

1    The Government argues that even if the court declared Section 2705(b)

2    unconstitutional, that declaration would not redress Microsoft's injury.  (*See* Mot. at

3    12-13.)  The Government contends that "[a] favorable judgment in this case would not

4    release Microsoft from those individual [nondisclosure] orders, so its alleged injury

5    would not be remedied and redressability is therefore lacking."  (*Id.* at 12.)  Microsoft

6    responds that it "is not asking this [c]ourt to 'release' it from secrecy orders."  (Resp. at

7    15.)  Rather, Microsoft "seeks a declaration that Section 2705(b) violates the First

8    Amendment, relief that would prevent the Government from continuing to rely on the

9    statute to restrain Microsoft's speech in the future."  (*Id.*)  The Government views

10   Microsoft's response as an attempt to "time-shift" the basis for its standing by seeking

11   redress that would prevent future injuries rather than remedy past injuries.  (Mot. at 3.)

12       The declaratory relief Microsoft seeks would not remedy its past injuries, but it

13   would "prevent likely future injuries" in the form of additional indefinite nondisclosure

14   orders.  *Mayfield*, 599 F.3d at 972.  Although Microsoft alleges a past injury—being

15   subjected to thousands of indefinite nondisclosure orders since 2014—that past injury

16   strengthens Microsoft's allegation that it faces a substantial likelihood of the same kind

17   of harm in the future.  (FAC ¶ 33.)  Microsoft alleges that without a declaration from the

18   court regarding Section 2705(b)'s constitutionality, "the [G]overnment will continue to

19   seek, and courts will continue to issue, secrecy orders that impermissibly restrict the First

20   Amendment rights of Microsoft."  (*Id.*)  Thus, a declaration that Section 2705(b) is

21   unconstitutional because it permits courts to issue indefinite nondisclosure orders would

22   //

redress Microsoft's future injuries.  In the context of declaratory relief, such allegations suffice.  *See Viet. Veterans of Am.*, 288 F.R.D. at 205.

2.  <u>Prudential Considerations</u>

The Government next argues that "comity grounds" support dismissing Microsoft's First Amendment claims because "[i]t is a settled principle that a challenge to an order of a coordinate court may not be heard by a different court."[6]  (Mot. at 16 (citing *Lapin v. Shulton*, 333 F.2d 169, 172 (9th Cir. 1964); *Treadaway v. Acad. of Motion Picture Arts & Scis.*, 783 F.2d 1418, 1422 (9th Cir. 1986)).)  Microsoft responds that this argument fails because "Microsoft is not bringing a collateral attack on other courts' orders; rather, it seeks a judgment that will be binding on the Government when it seeks secrecy orders in other courts."  (Resp. at 15 n.2.)

The cases the Government cites establish that when a party seeks to modify or revoke an injunction or final order, the party must seek relief from the court that issued the order.  *See Lapin*, 333 F.2d at 170 ("[T]he present proceedings to secure dissolution of an injunction on the grounds here asserted should have been brought in the issuing court, the District Court of Minnesota."); *Treadaway*, 783 F.2d at 1422 ("When a court entertains an independent action for relief from the final order of another court, it interferes with and usurps the power of the rendering court just as much as it would if it

---

[6] The Government also argues that Microsoft's Fourth Amendment claims should be dismissed on prudential grounds because those claims do not fall within the Fourth Amendment's zone of interests.  However, the court does not address this argument or the Government's arguments that Microsoft has failed to state a Fourth Amendment claim because the court concludes that Microsoft may not pursue such claims due to Supreme Court and Ninth Circuit precedent.  *See infra* § III.C.

1   were reviewing that court's equitable decree.").  "[F]or a nonissuing court to entertain an

2   action for such relief would be seriously to interfere with, and substantially to usurp, the

3   inherent power of the issuing court." *Lapin*, 333 F.2d at 172.  Accordingly,

4   "considerations of comity and orderly administration of justice demand that the

5   nonrendering court . . . decline jurisdiction." *Id.*

6          Here, however, Microsoft does not seek to have this court invalidate other courts'

7   orders.  Rather, Microsoft asks the court to determine whether Section 2705(b) is

8   constitutional insofar as it permits future courts to indefinitely prevent disclosure of the

9   circumstances of government investigations.  For this reason, the comity concerns that

10  the Ninth Circuit addressed in *Lapin* and *Treadaway* do not apply, and the court declines

11  to dismiss Microsoft's First Amendment claim on this basis.

12         3.  Stating a First Amendment Claim

13         The Government also argues that Microsoft fails to state a First Amendment claim

14  for which relief may be granted.  The court now analyzes the Government's arguments in

15  favor of dismissal.

16         *a.  Prior Restraints and Content-Based Regulations*

17  The Government first contends that Microsoft has no absolute right to discuss the

18  Government's requests for information or the substance of any nondisclosure orders to

19  which Microsoft is bound.  (*See* Mot. at 19; Reply at 8-9.)  As Microsoft acknowledges

20  (FAC ¶ 28), First Amendment rights are not absolute, *see Neb. Press Ass'n v. Stuart*, 427

21  U.S. 539, 570 (1976).  However, as the court explained above, Microsoft alleges that

22  indefinite nondisclosure orders implicate its First Amendment rights because the orders

1   impinge on its right to speak about governmental affairs and the public's right to access

2   search warrants.  *See supra* § III.B.1.a; (FAC ¶¶ 24-26.)  Microsoft also alleges that the

3   orders categorically bar Microsoft from speaking about the existence of the orders and

4   therefore constitute content-based prior restraints.  (FAC ¶¶ 25, 28-30.)

5   "The First Amendment reflects 'a profound national commitment to the principle

6   that debate on public issues should be uninhibited, robust, and wide-open.'"  *Snyder v.*

7   *Phelps*, 562 U.S. 443, 452 (2011) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270

8   (1964)).  "[S]peech on public issues occupies the highest rung of the hierarchy of First

9   Amendment values, and is entitled to special protection."  *Connick v. Myers*, 461 U.S.

10  138, 145 (1983).  For these reasons, prior restraints of and content-based restrictions on

11  speech regarding matters of public concern are often impermissible.

12  "The term prior restraint is used to describe administrative and judicial orders

13  forbidding certain communications when issued in advance of the time that such

14  communications are to occur."  *Alexander v. United States*, 509 U.S. 544, 550 (1993)

15  (internal quotation marks and emphasis omitted).  Prior restraints are "the most serious

16  and the least tolerable infringement on First Amendment rights."  *Neb. Press Ass'n*, 427

17  U.S. at 559.  Although prior restraints are not unconstitutional per se, there is a heavy

18  presumption against their constitutionality.  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215,

19  225 (1990).  Accordingly, the Government bears the burden of "showing justification for

20  the imposition of such a restraint."  *Capital Cities Media, Inc. v. Toole*, 463 U.S. 1303,

21  1305 (1983).

22  *//*

1    Similarly, "[c]ontent-based laws—those that target speech based on its

2    communicative content—are presumptively unconstitutional and may be justified only if

3    the government proves that they are narrowly tailored to serve compelling state

4    interests." *Reed v. Town of Gilbert, Ariz.*, --- U.S. ---, 135 S. Ct. 2218, 2226 (2015).

5    Content-based restrictions are subject to strict scrutiny, *id.*, and are presumptively invalid,

6    *United States v. Alvarez*, --- U.S. ---, 132 S. Ct. 2537, 2544 (2012).  A regulation of

7    speech "is content-based if either the underlying purpose of the regulation is to suppress

8    particular ideas or if the regulation, by its very terms, singles out particular content for

9    differential treatment." *Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009) (en

10   banc) (internal citation omitted).

11       The Government argues that even if the nondisclosure orders constitute a prior

12   restraint, "the substantive basis and procedural safeguards provided by [S]ection 2705(b)

13   are sufficient to satisfy even the most searching First Amendment inquiry imposed in the

14   prior restraint context."  (Mot. at 21 (citing *Freedman v. Maryland*, 380 U.S. 51 (1965)).)

15   The Government also argues that Microsoft has not "demonstrated any likelihood that the

16   judicially-approved 2705(b) orders to which it is subject would fail the substantive First

17   Amendment requirements for content-based restrictions on speech."  (*Id.*)  Microsoft

18   counters that it has adequately alleged that the indefinite orders are both prior restraints

19   and content-based regulations and that the statute fails to satisfy strict scrutiny.  (Resp. at

20   20; *see also* FAC ¶¶ 24-25.)

21       The court begins its analysis by determining whether Microsoft has adequately

22   stated a claim that the Section 2705(b) orders at issue violate the First Amendment as

1    impermissible prior restraints.  Section 2705(b) allows for indefinite nondisclosure

2    orders, which restrain Microsoft from speaking about government investigations without

3    any time limit on that restraint.  For this reason, at least two other district courts have

4    concluded that indefinite nondisclosure orders pursuant to Section 2705(b) constitute

5    prior restraints on speech.  *See Matter of Grand Jury Subpoena for:*

6    *[Redacted]@yahoo.com*, 79 F. Supp. 3d 1091, 1091 (N.D. Cal. 2015) ("[A]n indefinite

7    order would amount to an undue prior restraint of Yahoo!'s First Amendment right to

8    inform the public of its role in searching and seizing its information."); *In re Sealing*, 562

9    F. Supp. 2d at 878, 881 (holding that an indefinite nondisclosure order would violate "the

10   First Amendment prohibition against prior restraint of speech" and stating that

11   "indefinitely sealed means permanently sealed"); *see also In re Application of the U.S.*,

12   131 F. Supp. 3d at 1270-71 (concluding that under Section 2705(b), "notice by the

13   provider to the subscriber may be *indefinitely* restrained," and "[g]overnment restraint of

14   an innocent provider from fulfilling contractual notice and privacy obligations raises

15   concerns different than direct government notice to an investigation target").

16          Nonetheless, the Government contends that even if certain Section 2705(b) orders

17   impose prior restraints on speech, Section 2705(b) contains sufficient procedural

18   safeguards.  (Mot. at 21.)  "Where expression is conditioned on governmental permission,

19   such as a licensing system for movies, the First Amendment generally requires

20   procedural protections to guard against impermissible censorship."  *John Doe, Inc. v.*

21   *Mukasey*, 549 F.3d 861, 871 (2d Cir. 2008) (citing *Freedman*, 380 U.S. at 58).  The

22   required procedural protections are:  (1) "any restraint prior to judicial review can be

1    imposed only for a specified brief period during which the status quo must be

2    maintained"; (2) "expeditious judicial review of that decision must be available"; and (3)

3    "the censor must bear the burden of going to court to suppress the speech and must bear

4    the burden of proof once in court." *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 321 (2002)

5    (quoting *FW/PBS*, 493 U.S. at 227). However, the indefinite nondisclosure orders that

6    Section 2705(b) allows are not administrative prior restraints imposed by a licensing

7    scheme because Section 2705(b) itself does not impose the prior restraint; rather, the

8    statute allows a court to issue an order imposing a prior restraint on speech. *See* 18

9    U.S.C. § 2705(b). Accordingly, the orders at issue here are more analogous to permanent

10   injunctions preventing speech from taking place before it occurs. *See, e.g.*, *Alexander*,

11   509 U.S. at 550 (1993) ("Temporary restraining orders and permanent injunctions—*i.e.*,

12   court orders that actually forbid speech activities—are classic examples of prior

13   restraints."); *Oakley, Inc. v. McWilliams*, 879 F. Supp. 2d 1087, 1089-90 (C.D. Cal.

14   2012). For this reason, the *Freedman* procedural safeguards do not appear to apply in

15   this context.

16          In any event, even if the procedural safeguards outlined in *Freedman* are met, the

17   Government must show that the statute in question meets strict scrutiny.[7] *See In re Nat'l*

18

19          [7] At oral argument, the Government argued for the first time that the speech at issue here
     is subject to lesser scrutiny because the speech does not address matters of public concern. Even
20   if the Government had properly presented this theory, the court disagrees with the Government's
     characterization. *See Snyder*, 562 U.S. at 452 (describing matters of public concern as matters
21   related to political, social, or other concerns to the community); *First Nat'l Bank of Boston v.
     Bellotti*, 432 U.S. 765, 777 (1978) ("The inherent worth of the speech in terms of its capacity for
22   informing the public does not depend upon the identity of its source, whether corporation,
     association, union, or individual.").

1  *Sec. Letter*, 930 F. Supp. 2d 1064, 1071 (N.D. Cal. 2013) (holding that the Government

2  must "meet the heightened justifications for sustaining prior-restraints announced in

3  *Freedman v. Maryland*" and that the restraint "must be narrowly tailored to serve a

4  compelling government interest"), 1074 ("Simply because the government chose to meet

5  the *Freedman* safeguards in issuing and seeking to compel the [National Security Letter]

6  at issue here, does not foreclose Petitioner's ability to challenge the constitutionality of

7  the statute's provisions."); *Admiral Theatre v. City of Chi.*, 832 F. Supp. 1195, 1203

8  (N.D. Ill. 1993) (noting that even if procedural safeguards are met "the system is still

9  subject to 'least restrictive means' scrutiny to determine its constitutionality").  Microsoft

10  alleges that the indefinite nondisclosure orders are prior restraints because they prohibit

11  Microsoft from engaging in protected speech before Microsoft actually engages in that

12  speech.  (FAC ¶ 24.)  Microsoft further alleges that the orders are not narrowly tailored to

13  serve the government's interest in conducting sensitive investigations because Microsoft

14  continues to be restrained from speaking even after "secrecy is no longer required to

15  satisfy" the government's interest.  (*Id.* ¶ 28; *see also id.* ¶ 6.)  Specifically, Microsoft

16

17          As the Government points out (MTD at 21; Reply at 10), the Second Circuit has held in
   the National Security Letter context that "the nondisclosure requirement of subsection 2709(c) is

18  not a typical prior restraint or a typical content-based restriction warranting the most rigorous
   First Amendment scrutiny."  *John Doe*, 549 F.3d at 877.  However, the court is not persuaded to

19  apply the same logic here.  First, the Second Circuit based its conclusion in large part on the
   national security context in which Section 2709(c) operated.  *See generally id.*  Although Section

20  2705(b) made be utilized in national security investigations, nothing indicates that national
   security investigations are the sole use or purpose of nondisclosure orders under Section 2705(b).

21  Second, the statutory provision at issue in *John Doe* imposed temporal limits on the
   nondisclosure orders.  *Id.* at 877.  Such temporal limitations are not required under Section

22  2705(b), and according to Microsoft's amended complaint, are frequently absent from orders
   issued pursuant to that statute.  (*See* FAC ¶ 33.)

1    contends that for purposes of issuing an indefinite nondisclosure order under Section

2    2705(b), "the assessment of adverse consequences need not be based on the specific facts

3    of the investigation" and "the assessment is made only at the time the government applies

4    for the secrecy order." (*Id.* ¶ 6 (emphasis omitted).)  For these reasons, Microsoft's

5    complaint contains sufficient facts that—taken as true and viewed in the light most

6    favorable to Microsoft—state a claim to relief that is plausible on its face. *See Iqbal*, 556

7    U.S. at 678.

8        In addition, Microsoft alleges that Section 2705(b) orders preclude Microsoft from

9    speaking about an entire topic—government surveillance and investigations. (*See* FAC

10   ¶¶ 16, 25.)  Microsoft states that of the more than 6,000 demands for customer

11   information that is has received, a majority of the demands are coupled with orders

12   "forbidding Microsoft from telling the affected customers that the government was

13   looking at their information." (*Id.* ¶ 16.)  This prohibition amounts to a content-based

14   restriction on speech, which, like a prior restraint, is subject to strict scrutiny. *See Reed*,

15   135 S. Ct. at 2226.

16       Microsoft further alleges that three parts of Section 2705(b) fail strict scrutiny

17   review:  (1) that Section 2705(b) "allows a court to issue secrecy orders of a prolonged

18   duration (FAC ¶ 28), (2) that "reason to believe standard" in Section 2705(b) "fails to

19   require that a secrecy order be the least restrictive means available" in a particular case

20   (*id.* ¶ 29), and (3) that Section 2705(b) allows an indefinite nondisclosure order "in the

21   absence of any case-specific compelling interest," is "substantially broader than

22   necessary," and "provides no meaningful constraints, (*id.* ¶ 30).  The court concludes that

1  Microsoft has alleged sufficient facts that when taken as true state a claim that certain

2  provisions of Section 2705(b) fail strict scrutiny review and violate the First Amendment.

3  However, even if a lesser standard of review applies to Microsoft's First

4  Amendment claim, Microsoft's allegations support the reasonable inference that

5  indefinite nondisclosure orders impermissibly burden Microsoft's First Amendment

6  rights. *See, e.g.*, *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 757

7  (1985) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), and describing the

8  balancing test that is applied in First Amendment cases involving matters of private

9  concern); *In re § 2703(d)*, 787 F. Supp. 2d at 438 (describing a balancing approach for

10  evaluating First Amendment rights in the context of government investigations).  For

11  example, Microsoft alleges that indefinite nondisclosure orders continue to burden its

12  First Amendment rights after the government's interest in keeping investigations secret

13  dissipates.  (FAC ¶¶ 28, 32.)  In addition, Microsoft alleges that courts do not have

14  occasion to revisit the indefinite orders unless Microsoft challenges the individual orders

15  in court.  (*Id.* ¶ 19).  Accepting these allegations as true, Microsoft's First Amendment

16  rights may outweigh the state's interest such that indefinite disclosure orders

17  impermissibly burden Microsoft's rights.  Accordingly, Microsoft's complaint contains

18  sufficient factual allegations to support a First Amendment claim.

19  For these reasons, the court concludes Microsoft has adequately alleged a facially

20  plausible First Amendment claim.  *See Iqbal*, 556 U.S. at 678.

21  //

22  //

1       *b. Overbreadth Doctrine*

2      The Government also argues that Microsoft fails to state a First Amendment

3    overbreadth claim because "as a party subject to numerous [S]ection 2705(b) orders,

4    Microsoft is wrong to suggest that it may seek invalidation of that section pursuant to the

5    'overbreadth doctrine.'"[8] (Mot. at 18.)  In addition, the Government contends that the

6    overbreadth challenge should be dismissed because "the only fact alleged by Microsoft to

7    support its facial challenge is the number of purportedly 'indefinite' orders, . . . which

8    says nothing about whether the application has been applied constitutionally in those

9    instances." (*Id.* at 19.)  Microsoft responds that it can assert an overbreadth challenge

10   even though "it bases its allegations on the thousands of unconstitutional secrecy orders

11   that stifle its own speech."  (Resp. at 17 (emphasis omitted).)  Microsoft contends that it

12   challenges three aspects of Section 2705(b) on First Amendment grounds, that "[i]f any

13   one of these provisions is invalid, the statute is unconstitutional on its face," and that it

14   has thus adequately stated an overbreadth claim.  (*Id.*)

15     "The First Amendment doctrine of overbreadth is an exception to [the] normal rule

16   regarding standards for facial challenges." *Virginia v. Hicks*, 539 U.S. 113, 118 (2003).

17

18      [8] The Government's briefing contests Microsoft's overbreadth challenge on Rule 12(b)(6) grounds.  (*See* Mot. at 18-19.)  At oral argument, however, counsel for the Government framed its challenge to this claim as an attack on subject matter jurisdiction under Rule 12(b)(1).

19   Although courts typically view the overbreadth doctrine as relaxing prudential limits on standing, *see United States v. Elcom Ltd.*, 203 F. Supp. 2d 1111, 1132 (N.D. Cal. 2002), that

20   view of the doctrine is inapplicable where, as here, the plaintiff asserts an overbreadth challenge to a statute that has also been applied to the plaintiff, *see, e.g.*, *Fox*, 492 U.S. at 484.  In addition, courts generally evaluate a challenge to prudential standing under Rule 12(b)(6).  *See Cetacean*

21   *Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004); *Elizabeth Retail Props., LLC v. KeyBank Nat'l Ass'n*, 83 F. Supp. 3d 972, 985-86 (D. Or. 2015) ("While constitutional standing is

22   evaluated under Rule 12(b)(1), prudential standing is evaluated under 12(b)(6).").

1    Generally, "[i]n a facial challenge on overbreadth grounds, the challenger contends that

2    the statute at issue is invalid because it is so broadly written that it infringes unacceptably

3    on the First Amendment rights of third parties."  *Elcom*, 203 F. Supp. 2d at 1132.

4    However, the overbreadth doctrine may "be invoked in the unusual situation . . . where

5    the plaintiff has standing to challenge all the applications of the statute he contends are

6    unlawful, but his challenge to some of them . . . will fail unless the doctrine of

7    overbreadth is invoked."[9]  *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484

8    (1989) (emphasis omitted).  As the Ninth Circuit has pointed out, "[t]echnically, the

9    overbreadth doctrine does not apply if the parties challenging the statute engage in the

10   allegedly protected expression[, but this technicality] does not mean that plaintiffs cannot

11   challenge an ordinance on its face . . . if the ordinance restricts their own constitutionally

12   protected conduct."  *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 949 (9th Cir.

13   1997).  "[T]hus, whether the 'overbreadth doctrine' applies to [a plaintiff's] First

14   Amendment challenge is more of a technical academic point than a practical concern."

15   *Id.*  In any event, "[i]t is not the usual judicial practice . . . to proceed to an overbreadth

16   issue unnecessarily—that is, before it is determined that the statute would be valid as

17

18

19   ────────────────
        [9] Microsoft states in its response to the Government's motion to dismiss that it "has third-
20   party standing to assert the First Amendment rights of its customers, who receive no notice and
     therefore cannot exercise their own First Amendment rights to speak out about government
21   scrutiny."  (Resp. at 19 n.7.)  However, besides asserting an overbreadth challenge and the
     public's right to access warrant information, Microsoft does not allege that it has third-party
22   standing to assert its customers' First Amendment rights and makes no substantive argument on
     these points.  (*See* FAC; Resp.)

1   applied." *Fox*, 492 U.S. at 484-85.  Accordingly, "the lawfulness of the particular

2   application of the law should ordinarily be decided first."[10]  *Id.* at 485.

3       "For a statute to be facially invalid on overbreadth grounds, it must be

4   substantially overbroad." *Acosta v. City of Costa Mesa*, 694 F.3d 960, 970 (9th Cir.

5   2012).  "A statute is substantially overbroad if a substantial number of its applications are

6   unconstitutional, judged in relation to the statute's legitimate sweep." *United States v.*

7   *Perelman*, 695 F.3d 866, 870 (9th Cir. 2012) (internal quotation marks omitted).  "The

8   first step in overbreadth analysis is to construe the challenged statute; it is impossible to

9   determine whether a statute reaches too far without first knowing what the statute

10  covers." *United States v. Williams*, 553 U.S. 285, 293 (2008).

11      The court rejects the Government's argument that Microsoft may not proceed with

12  an overbreadth challenge.  Although a plaintiff generally brings an overbreadth challenge

13  to assert that a law violates the First Amendment rights of parties that are not before the

14  court, a plaintiff may nevertheless assert an overbreadth challenge to a law that the

15  plaintiff contends also violates its own First Amendment rights.[11]  *See Fox*, 492 U.S. at

16

17      [10] An as-applied challenge "contends that the law is unconstitutional as applied to the
    litigant's particular speech activity, even though the law may be capable of valid application to

18  others." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998).  "A paradigmatic
    as-applied attack . . . challenges only one of the rules in a statute, a subset of the statute's
    applications, or the application of the statute to a specific factual circumstance, under the

19  assumption that a court can 'separate valid from invalid subrules or applications.'" *Hoye v. City*
    *of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011) (quoting Richard H. Fallon, Jr., *As-Applied and*

20  *Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321, 1334 (2000)).  "[T]he
    substantive legal tests used in the two challenges are invariant." *Id.* (internal quotation marks

21  omitted).

22      [11] Further, Microsoft contends that indefinite nondisclosure orders under Section 2705(b)
    impinge on the public's right of access to court documents.  (*See* FAC ¶ 26 (stating that orders

484; *Nunez*, 114 F.3d at 949.  In addition, Microsoft alleges that "a substantial number"

of Section 2705(b)'s applications are unconstitutional compared to Section 2705(b)'s

"legitimate sweep."  *See Perelman*, 696 F.3d at 870; (FAC ¶¶ 23, 27-31.)   Specifically,

Microsoft alleges that Section 2705(b)'s "overbreadth manifests itself in at least three

ways":  (1) by permitting nondisclosure orders "for such period as the court deems

appropriate"; (2) by permitting a court to issue a nondisclosure order when the court has

"reason to believe" notification would result in one of five outcomes listed in Section

2705(b); and (3) by allowing a court to issue a nondisclosure order when notification to

the target would "otherwise seriously jeopardiz[e] an investigation or unduly delay[] a

trial."  (FAC ¶¶ 27-31.)  Contrary to the Government's characterization, these allegations

adequately support Microsoft's claim that Section 2705(b) is unconstitutionally

overbroad.[12]

---

issued under 2705(b) "improperly inhibit the public's right of access to search warrants under
both the common law and the First Amendment").)  Thus, as to at least one of the First
Amendment rights Microsoft asserts, Microsoft alleges that Section 2705(b) is "so broadly
written that it infringes unacceptably on the First Amendment rights of third parties."  *Elcom
Ltd.*, 203 F. Supp. 2d at 1132; *see also Times Mirror Co.*, 873 F.2d at 1217 (holding that there is
no First Amendment right of public access to warrant materials before an indictment issues);
*Custer Battlefield Museum & Store*, 658 F.3d at 1194-95 (stating that the court "expressly
reserved" the issue of "whether the public has a constitutional right of access after an
investigation has been terminated").

[12] At this stage of the litigation, Microsoft need not present evidence of unconstitutional
applications of Section 2705(b)—it must only allege "a claim to relief that is plausible on its
face."  *Twombly*, 550 U.S. at 570; *see also Comite de Jornaleros de Redondo Beach v. City of
Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011) (stating on review of a district court's grant
of summary judgment that "[t]he party challenging the law need not necessarily introduce
admissible evidence of overbreadth, but generally must at least 'describe the instances of
arguable overbreadth of the contested law'" (quoting *Wash. State Grange v. Wash. State
Republican Party*, 552 U.S. 442, 449 n.6 (2008))); *Martinez v. City of Rio Rancho*, --- F. Supp.
3d ---, 2016 WL 3919491, at *10 (D. N.M. July 20, 2016) ("The plaintiff bears the burden of

### c.  Other First Amendment Theories

The Government also argues that Microsoft's "other possible First Amendment legal theories" fail.  (MOT. at 24.)  Specifically, the Government contends that "Microsoft may challenge the continued need for secrecy at any time" and "lacks standing to raise the claims of" third parties (*id.*), that Section 2705(b)'s "reason to believe" standard is sufficient (*id.*), and that Section 2705(b) is constitutional because the Government has sufficiently important interests in avoiding the list of harms under which the Government can seek a nondisclosure order (*id.* at 25).

The court rejects the Government's ancillary arguments.  First, although Microsoft may challenge whether any given order should subject Microsoft to continued secrecy, that ability does not prevent Microsoft from bringing a constitutional challenge to the statute under which the orders may be issued.  *See, e.g.*, *In re Sealing*, 562 F. Supp. 2d at 878, 881 (concluding that indefinite nondisclosure orders under 2705(b) may be unconstitutional); *[Redacted]@yahoo.com*, 79 F. Supp. 3d 1091 (same).  Further, Microsoft has standing to assert its First Amendment claims because Microsoft alleges that it has suffered a First Amendment injury and will likely suffer similar injuries in the future.  *See supra* § III.B.1.a.  Microsoft therefore need not show third-party standing as to its First Amendment claim.  Finally, the Government's arguments that the "reason to

demonstrating substantial overbreadth exists from the text of the statute and the facts of the case.").

Further, because the court is not deciding the constitutionality of Section 2705(b) as-applied to Microsoft, it is of no moment that the court ordinarily decides an as-applied challenge before deciding an overbreadth challenge.  (*See* FAC ¶ 32); *Serafine v. Branaman*, 810 F.3d 354, 364 (5th Cir. 2016).

1  believe" standard that Microsoft contends is unconstitutional and that it has compelling

2  interests sufficient to justify indefinite nondisclosure orders under Section 2705(b) are

3  not properly before the court at this stage of litigation.  For these reasons, the court rejects

4  Microsoft's ancillary arguments to dismiss Microsoft's First Amendment claims.

5          4.  As-Applied Challenge

6          The Government's final argument against Microsoft's First Amendment claim

7  assails Microsoft's as-applied challenge on the basis that Microsoft has not pleaded

8  sufficiently particular facts to support such a challenge.  (Mot. at 28-29.)  Specifically,

9  the Government asserts that "Microsoft has not provided specific facts about any instance

10  of the application of [S]ections 2703 and 2705(b) in support of its claims 'as applied to

11  Microsoft'" and "provides no information about any particular instance or order."  (*Id.* at

12  29.)  Microsoft counters that "[t]he distinction between facial and as-applied challenges

13  'goes to the breadth of the remedy employed by the [c]ourt, not what must be pleaded in

14  a complaint.'"  (Resp. at 25 (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S.

15  310, 331 (2010)).)

16          A plaintiff asserting an as-applied challenge must allege sufficient facts to

17  demonstrate a statute's "unconstitutionality as applied to [the plaintiff's] activities."

18  *Pickup v. Brown*, No. 2:12-cv-02497-KJM-EFB, 2016 WL 4192406, at *4 (E.D. Cal.

19  Aug. 9, 2016).  "[A]n as-applied challenge requires an allegation that a law is

20  unconstitutional as applied to a particular plaintiff's speech activity, even though it may

21  be valid as applied to others."  *Venice Justice Comm. v. City of L.A.*, --- F. Supp. 3d ---,

22  2016 WL 4724557, at *4 (C.D. Cal. Sept. 9, 2016).

1    Although the Government is correct that "'[a]n as-applied challenge goes to the

2    nature of the application rather than the nature of the law itself'" (Mot. at 29 (quoting

3    *Desert Outdoor Advert. v. Oakland*, 506 F.3d 798, 805 (9th Cir. 2007))), that observation

4    does not warrant dismissal of Microsoft's as-applied challenge.  Microsoft alleges in its

5    complaint that Section 2705(b) has been unconstitutionally applied to Microsoft because

6    in a 20-month period ending in May 2016, courts have issued more than 450 indefinite

7    nondisclosure orders accompanying a warrant.  (FAC ¶ 32.)  Each order allegedly

8    prevents Microsoft from speaking about the government investigations it is required to

9    participate in.  (*Id.*)  In addition, Microsoft alleges that all of those orders were issued

10   under Section 2705(b)'s "reason to believe standard," which Microsoft contends does not

11   meet strict scrutiny, and that "it appears that a substantial number of the orders may have

12   relied on the . . . catchcall provision" that Microsoft also asserts is unconstitutional.  (*Id.*

13   ¶¶ 29, 32.)  The court finds that Microsoft has sufficiently stated an as-applied challenge

14   because Microsoft alleges that Section 2705(b) has been unconstitutionally applied to

15   Microsoft's speech with acts that—taken as true—support a plausible claim for relief.

16   **C.    Fourth Amendment Claim**

17       The Government argues that the court must dismiss Microsoft's Fourth

18   Amendment claims because Microsoft cannot assert the Fourth Amendment rights of its

19   users.[13]  (Mot. at 14.)  Specifically, the Government contends that Fourth Amendment

20   _____

21   [13] The Government frames this issue as one of standing.  (Mot. at 14 ("Microsoft's
     inability to bring a claim on behalf of its users is properly viewed as an absence of the personal
     injury requirement for Article III standing.").)  However, the Supreme Court has held that

22   "definition of [Fourth Amendment] rights is more properly placed within the purview of
     substantive Fourth Amendment law than within that of standing."  *Rakas v. Illinois*, 439 U.S.

1    rights are personal rights that a third party cannot assert.  (*Id.*)  Microsoft counters by

2    stating that it meets the test for third-party standing developed in *Powers v. Ohio*, 499

3    U.S. 400 (1991),[14] which Microsoft contends allows third-party standing "where the

4    absent party is hindered from protecting its Fourth Amendment interests."  (Resp. at 28

5    n.13.)  Because Microsoft addressed the Government's argument only in a footnote, the

6    court invited the parties to file supplemental briefing on this particular issue in advance of

7    oral argument.  (*See* 1/19/17 Order (Dkt. # 103); Msft. Supp. Br. (Dkt. # 104).)

8            In its supplemental brief, Microsoft concedes that two Supreme Court cases,

9    *Alderman v. United States*, 394 U.S. 165 (1969), and *Rakas v. Illinois*, 439 U.S. 128

10   (1978), establish a general rule against a third party vicariously asserting the Fourth

11   Amendment rights of another person, but Microsoft argues that this general rule yields in

12   "special circumstances," such as where a person cannot assert his own Fourth

13

14   ─────────────

15   128, 140 (1978); *see also Minnesota v. Carter*, 525 U.S. 83, 88 (1998) ("Central to our analysis
     was the idea that in determining whether a defendant is able to show the violation of his (and not
     someone else's) Fourth Amendment rights, the definition of those rights is more properly placed

16   within the purview of substantive Fourth Amendment law than within that of standing." (internal
     quotation marks omitted)).  On the other hand, the Ninth Circuit continues to refer to the analysis

17   as addressing standing.  *See, e.g.*, *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371
     (9th Cir. 1998) ("Regardless of whether Appellants have standing to assert a Fourth Amendment

18   claim based on Douglas's death, they each may assert a Fourteenth Amendment claim based on
     the related deprivation of their liberty interest arising out of their relationship with Douglas.");

19   *Ellwest Stereo Theatres, Inc. v. Wenner*, 681 F.2d 1243, 1248 (9th Cir. 1982) ("Ellwest has no
     standing to assert the [F]ourth [A]mendment rights of its customers.").  Whether the analysis is

20   viewed as one of substantive law or standing, however, does not impact the court's subsequent
     analysis.

21         [14] In *Powers*, the Supreme Court held that a plaintiff has standing to vindicate violations
     of a third party's constitutional rights when the plaintiff demonstrates (1) an injury in fact, (2) a

22   close relationship with the third party, and (3) a hindrance to the third party's ability to protect its
     own legal interests.  499 U.S. at 411.

1   Amendment rights.[15]  (Msft. Supp. Br. at 3.)  Microsoft argues that even in the context of

2   the Fourth Amendment, third-party standing jurisprudence allows a plaintiff to bring suit

3   on another person's behalf where the person could not "'effectively vindicate[]'" his

4   rights "'except through an appropriate representative before the Court.'"  (*Id.* at 6

5   (quoting *N.A.A.C.P. v. Alabama*, 357 U.S. 449, 459 (1958).)  Microsoft contends that

6   *Alderman* explicitly contemplates this outcome because in that case, the Court concluded

7   that no "special circumstances" warranted allowing the plaintiff to assert the Fourth

8   Amendment rights of a party not before the Court.  (*See id.* at 3-4.)  Finally, Microsoft

9   argues that "courts do conduct *Powers* analyses to determine whether litigants may bring

10   claims based on infringement of others' Fourth Amendment rights."  (*Id.* at 6.)

11          Having reviewed this area of Fourth Amendment law, the court concludes that the

12   Supreme Court and the Ninth Circuit have routinely held in a variety of circumstances

13   that a plaintiff may not assert the Fourth Amendment rights of another person.  *See, e.g.*,

14   *Alderman*, 394 U.S. at 174 (stating the "general rule that Fourth Amendment rights are

15   personal rights which, like some other constitutional rights, may not be vicariously

16   asserted"); *Rakas*, 439 U.S. at 134.  In *Alderman*, the Supreme Court unequivocally

17   stated that "Fourth Amendment rights are personal rights which, like some other

18   constitutional rights, may not be vicariously asserted."  394 U.S. at 174.  Based on this

19   principle, the Supreme Court concluded that a third party may not invoke the

20   exclusionary rule "because it is proper to permit only defendants whose Fourth

21

22   _____
      [15] The Government did not file a supplemental brief.  (*See* Dkt.)

1   Amendment rights have been violated to benefit from the rule's protections." *Rakas*, 439

2   U.S. at 134; *see also United States v. Salvucci*, 448 U.S. 83, 95 (1980) ("[T]he values of

3   the Fourth Amendment are preserved by a rule which limits the availability of the

4   exclusionary rule to defendants who have been subjected to a violation of their Fourth

5   Amendment rights.").  Specifically, the Supreme Court held that "[a] person who is

6   aggrieved by an illegal search and seizure only through the introduction of damaging

7   evidence secured by a search of a third person's premises or property has not had any of

8   his Fourth Amendment rights infringed." *Id.* at 134.  In fashioning this rule, the Supreme

9   Court noted that "[t]here is no reason to think that a party whose rights have been

10  infringed will not, if evidence is used against him, have ample motivation to move to

11  suppress it." *Id.*; *see also Alderman*, 394 U.S. at 174 ("None of the special circumstances

12  which prompted *NAACP v. Alabama* . . . and *Barrows v. Jackson* . . . are present here.").

13  For this reason, third parties cannot benefit from the exclusionary rule when the third

14  party's Fourth Amendment rights have not been violated.  *See id.*

15          Courts also apply this rule outside of the exclusionary rule context.  For example,

16  the Supreme Court and the Ninth Circuit have prevented plaintiffs in cases brought under

17  42 U.S.C. § 1983 from invoking another person's Fourth Amendment rights.  In *Plumhoff*

18  *v. Rickard*, the Supreme Court refused to allow the respondent, who was driving a car, to

19  show that the number of shots fired in a police interaction was constitutionally excessive

20  due to the presence of a passenger in the front seat.  --- U.S. ---, 134 S. Ct. 2012, 2022

21  (2014).  The Court based its decision on the fact that "Fourth Amendment rights are

22  personal rights which . . . may not be vicariously asserted" and concluded that the

1    passenger's "presence in the car [could not] enhance [the respondent's] Fourth

2    Amendment rights." *Id.*  The Ninth Circuit has also held that "the general rule is that

3    only the person whose Fourth Amendment rights were violated can sue to vindicate those

4    rights." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998)

5    (noting an exception to that general rule based on a statute that allowed "the survivors of

6    an individual killed as a result of an officer's excessive use of force [to] assert a Fourth

7    Amendment claim on that individual's behalf if the relevant state's law authorizes a

8    survival action" (citing 42 U.S.C. § 1988(a))); *see also Mabe v. San Bernardino Cty.,*

9    *Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1111 (9th Cir. 2001) (citing *United States v.*

10   *Taketa*, 923 F.2d 665, 670 (9th Cir. 1991)) ("[The plaintiff] has no standing to claim a

11   violation of [the plaintiff's daughter's] Fourth Amendment rights.").

12       As Microsoft points out, a "general rule" often has exceptions and courts have

13   found "special circumstances" to give rise to third-party standing.  (*See* Msft. Supp. Br. at

14   3-4); *Alderman*, 394 U.S. at 174.  However, the Supreme Court and Ninth Circuit have

15   also adhered to the principle that a third party may not sue to vindicate another person's

16   Fourth Amendment rights in cases that did not involve the exclusionary rule or Section

17   1983.  For example, in a case involving facts similar to those here, bank customers, a

18   bank, and a bankers' association filed suit to challenge the constitutionality of the Bank

19   Secrecy Act of 1970.  *Cal. Bankers Ass'n v. Shultz*, 416 U.S. 21, 25 (1974).  "Under the

20   Act, the Secretary of the Treasury [was] authorized to prescribe by regulation certain

21   recordkeeping and reporting requirements for banks and other financial institutions in the

22   country" to combat "the unavailability of foreign and domestic bank records of customers

1    thought to be engaged in activities entailing criminal or civil liability." *Id.* at 26. Among

2    other claims, the plaintiffs asserted a Fourth Amendment claim that the financial

3    transaction details the Act required banks to give to the Government amounted to an

4    unreasonable search. *Id.* at 64. The Supreme Court did not allow "the California

5    Bankers Association or the Security National Bank [to] vicariously assert such Fourth

6    Amendment claims on behalf of bank customers in general." *Id.* at 69.

7           The Ninth Circuit also held that a threat of "dragnet searches" and "spying" did

8    not threaten a theater's privacy interests under the Fourth Amendment, but rather "the

9    interests of its patrons." *Ellwest*, 681 F.2d at 1248. The Court held that because "Fourth

10    [A]mendment rights are personal rights . . . which may not be vicariously asserted,"

11    "Ellwest ha[d] no standing to assert the [F]ourth [A]mendment rights of its customers."

12    *Id.* Other federal courts have reached similar conclusions. *See, e.g.*, *Daniels v. Southfort*,

13    6 F.3d 482, 484 (7th Cir. 1993) (holding that the plaintiff "lacks standing to complain

14    about injuries to his friends" because "Fourth Amendment rights cannot be asserted

15    vicariously" in a case involving a Fourth Amendment challenge to Chicago Police

16    Department harassment against the plaintiff and "his friends"); *Keller v. Finks*, No.

17    13-03117, 2014 WL 1283211, at *6 (C.D. Ill. Mar. 31, 2014) (citing *Salvucci*, 448 U.S. at

18    86-87) (stating that "[t]he rule against third-party standing is especially strong in the

19    context of the Fourth Amendment" and holding that "the rule against third-party standing

20    in the context of the Fourth Amendment bars Plaintiff's claim"); *Haitian Refugee Ctr. v.*

21    *Gracey*, 809 F.2d 794, 809 (D.C. Cir. 1987) (summarizing "[t]he Supreme Court's

22    rejection of litigants' attempts to raise the [F]ourth [A]mendment rights of third parties");

1    *but see Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 532-33 (8th Cir. 2005)

2    (holding that a school had associational standing to assert the Fourth Amendment rights

3    of its students and distinguishing this case from cases that involve the exclusionary rule).

4    Taken together, these cases embody a particularly narrow view of third-party standing in

5    the Fourth Amendment realm.[16]

6         Microsoft argues that in all of these cases, the person to whom the Fourth

7    Amendment right belonged could go to court to vindicate his own right, whereas

8    Microsoft contends that its customers cannot do so here.  (*See* Msft. Supp. Br. at 2-5.)

9    On this basis, Microsoft encourages the court to apply the three-part *Powers* test and

10   conclude that it has standing to pursue these Fourth Amendment claims.  (*Id.* at 5-6); *see*

11   *also supra* n.18.  Specifically, Microsoft contends that this case involves "special

12   circumstances" similar to those present in *N.A.A.C.P.* and *Barrows v. Jackson*, 346 U.S.

13   249 (1953).  (*Id.* at 6.)  In those cases, the Supreme Court allowed an organization to

14   assert its members' rights and white property owners to assert the Fourteenth Amendment

15   rights of property owners of color.  *See N.A.A.C.P.*, 357 U.S. at 459 (allowing the

16   N.A.A.C.P. associational standing to assert the constitutional rights of its members to

17   resist an order that required the N.A.A.C.P. to release its membership list); *Barrows*, 346

18   //

19

20         [16] The general policies behind prudential limits on standing further support this
     conclusion.  The Supreme Court instructs that "[f]ederal courts must hesitate before resolving a
21   controversy, even one within their constitutional power to resolve, on the basis of the rights of
     third persons not parties to the litigation."  *Singleton v. Wulff*, 428 U.S. 106, 114 (1976).  The
     Supreme Court cautions courts not to "adjudicate such rights unnecessarily" and indicates that
22   "third parties themselves usually will be the best proponents of their own rights."  *Id.* at 113-14.

1    U.S. at 255 (allowing white residents standing to assert the constitutional rights of other

2    people to invalidate a racially discriminatory restrictive covenant).

3    　　　　In addition, Microsoft cites four cases in which federal courts applied the *Powers*

4    test to determine whether a plaintiff had third-party standing to assert a Fourth

5    Amendment claim.  (*See* Msft. Supp. Br. at 6); *DeRaffele v. City of Williamsport*, No.

6    4:14-cv-01849, 2015 WL 5781409, at *7 (M.D. Pa. Aug. 19, 2015) (applying the *Powers*

7    test and concluding that the plaintiff lacked standing to assert his tenants' First, Fourth,

8    Fifth, and Fourteenth Amendment rights because "he ha[d] not shown that the tenants

9    face[d] a substantial obstacle to asserting their own rights and interests"); *Al-Aulaqi v.*

10   *Obama*, 727 F. Supp. 2d 1, 24 (D.D.C. 2010) (applying *Powers* to a Fourth Amendment

11   claim and concluding that the plaintiff could not "show that a parent suffers an injury in

12   fact if his adult child is threatened with a future extrajudicial killing"); *Franklin v.*

13   *Borough of Carteret Police Dep't*, No. 10-1467 (JLL), 2010 WL 4746740, at *4 (D.N.J.

14   Nov. 15, 2010) (applying *Powers* to a Fourth Amendment claim and determining that the

15   plaintiff had third-party standing); *Daly v. Morgenthau*, No. 98 CIV. 3299(LMM), 1998

16   WL 851611, at *4 (S.D.N.Y. Dec. 9, 1998) (citing both *Rakas* and *Powers* and finding

17   that "there is no indication that" the person not before the court was "hindered in her

18   ability to protect her own interests").  These cases are not binding on the court.

19   Moreover, the court finds them unpersuasive in light of the Supreme Court's and the

20   Ninth Circuit's broad language and the wide range of applications in which those Courts

21   have applied the principle against third-party standing in the Fourth Amendment context.

22   //

1    Indeed, the cases Microsoft cites do not directly address the Supreme Court and Ninth

2    Circuit case law that the court examines above.

3           Based on the foregoing analysis, the court concludes that Microsoft may not bring

4    a claim to vindicate its customers' Fourth Amendment rights.  Although the Supreme

5    Court and the Ninth Circuit routinely employ the third-party standing doctrine to cases

6    involving constitutional rights, that doctrine is in tension with Fourth Amendment

7    jurisprudence.  Indeed, the court has identified only one non-binding case in which a

8    court has employed the *Powers* test to allow third-party standing when the party bringing

9    suit seeks to vindicate another person's Fourth Amendment rights.  *See Franklin*, 2010

10   WL 4746740, at *3-4 (holding that a parent had standing to bring an excessive force

11   claim on the parent's minor child's behalf).  On the other hand, the court has not

12   identified any binding case law or compelling rationale to limit the Supreme Court's and

13   Ninth Circuit's general holdings that Fourth Amendment rights are personal rights to

14   cases involving the exclusionary rule or to Section 1983 suits.

15          The court acknowledges the difficult situation this doctrine creates for customers

16   subject to government searches and seizures under Sections 2703 and 2705(b).  As

17   Microsoft alleges, the indefinite nondisclosure orders allowed under Section 2705(b)

18   mean that some customers may never know that the government has obtained information

19   in which those customers have a reasonable expectation of privacy.  (FAC ¶¶ 7 ("Section

20   2703 allows the government to search and seize customers' private information without

21   providing any notice to the customer, while Section 2705(b) permits the government to

22   obtain an order gagging the cloud services provider based upon a constitutionally

insufficient showing."), 35 ("The interaction of these provisions means the government

can access a customer's most sensitive information without the customer having any way

to learn about, or challenge, the government's intrusion.").)  For this reason, some of

Microsoft's customers will be practically unable to vindicate their own Fourth

Amendment rights.  (*Id.* ¶ 38 ("[C]ustomers lack sufficient knowledge to challenge

government action because of the government's tactic of operating behind a veil of

secrecy.")); *see also Reforming ECPA's Secret Docket* at 328 ("[T]he suppression

remedy is no consolation to the law-abiding citizen who is never charged with a crime

and who never learns, even after the fact, that her emails and phone records have been

obtained and reviewed by the government.").  This conundrum, however, is not unique to

this case; it is also true of the victim of an unreasonable search in a stranger's home.  *See*

*Alderman*, 394 U.S. at 134.  The source of the court's conclusion is thus the product of

established and binding precedent, which precludes the court from allowing Microsoft to

vindicate Fourth Amendment rights that belong to its customers.  This court cannot

faithfully reconcile the broad language of those cases and Microsoft's theory of Fourth

Amendment standing on the facts of this case; that task is more properly left to higher

courts.[17]

---

[17] A court should freely give leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, a court need not grant leave to amend where amendment would be futile. *Miller v. Rykoff–Sexton, Inc*., 845 F.2d 209, 214 (9th Cir. 1988).  A proposed amendment is futile if it would not state a "cognizable legal theory" or "sufficient facts."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Because of the binding authority regarding third-party standing in the Fourth Amendment context, which the court addressed in detail *supra*, the court concludes that any amendment of Microsoft's Fourth Amendment claim on behalf of its customers would be futile.  For this reason, the court declines to grant Microsoft leave to amend this claim.

1

## IV.   CONCLUSION

2          For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART

3   the Government's motion to dismiss (Dkt. # 38).

4          Dated this 8th day of February, 2017.

5

6

7   _____

8   JAMES L. ROBART
    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22